1   Jason S. Hartley (CA Bar No. 192514)
    STUEVE SIEGEL HANSON LLP
2   550 West C Street, Suite 1750
    San Diego, CA 92101
3   Phone: (619) 400-5822
    Fax: (619) 400-5832
4   hartley@stuevesiegel.com

5   Attorneys for Plaintiffs
6   [See Additional Counsel on Signature
    Page]

7

8                **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  COACHELLA SELF STORAGE, LLC; | CASE NO. SACV15-718 JVS (DFMx) |
| 11  JAMES PILCHER; SUSAN PILCHER; | **PLAINTIFFS' CONSOLIDATED** |
| MARTIN WELLS and SUSAN WELLS | **OPPOSITION TO DEFENDANTS'** |
| 12  as trustees of the MARTIN & SUSAN | **MOTIONS TO CHANGE VENUE** |
| WELLS REVOCABLE TRUST; and | |
| 13  CHARLES SERRANO and BARBARA | |
| SLOAN as trustees of the CHARLES | Date:        September 1, 2015 |
| 14  SERRANO AND BARBARA SLOAN | Time:        9:00 a.m. |
| 2012 REVOCABLE TRUST, on behalf | Courtroom: Courtroom 10C-Santa Ana |
| 15  of themselves and all others similarly | Judge:       Hon. James V. Selna |
| situated, | |
| 16 | |
| 17       Plaintiffs, | |
| 18  v. | |
| 19  UNION PACIFIC RAILROAD | |
| COMPANY, successor to SOUTHERN | |
| 20  PACIFIC TRANSPORTATION | |
| COMPANY; SFPP, L.P., previously | |
| 21  known as SANTA FE PACIFIC | |
| PIPELINES, INC., previously known as | |
| 22  SOUTHERN PACIFIC PIPELINES, | |
| INC.; KINDER MORGAN | |
| 23  OPERATING L.P. "D"; and KINDER | |
| 24  MORGAN G.P., INC., | |
| 25       Defendants. | |

26

27

28

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................... 1

II.  PROCEDURAL HISTORY ....................................................................... 2

   A.   Central District of California Lawsuits ............................................3

   B.   Northern District of California Lawsuits ..........................................3

   C.   JPML ..............................................................................................4

III. ARGUMENT AND AUTHORITIES ......................................................... 4

   A.   Applicable Legal Standards ............................................................4

   B.   The Central District is the Most Convenient Forum...........................7

    1.   Location Where the Relevant Agreements Were Negotiated and Executed ...........................................................................................7

    2.   The State that is Most Familiar with the Governing Law.............................8

    3.   The Plaintiffs' Choice of Forum .......................................................8

    4.   The Respective Parties' Contacts with the Forum .......................................9

    5.   The Contacts Relating to the Plaintiffs' Causes of Action in the Chosen Forum ...................................................................................11

    6.   The Differences in Costs of Litigation in the Two Forums ........................12

    7.   The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses ........................................................13

    8.   The Ease of Access to Sources of Proof .....................................................14

    9.   Other Considerations ......................................................................15

IV. CONCLUSION........................................................................................ 16

i

# TABLE OF AUTHORITIES

## Cases

*Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142 (E.D. Cal. 2010) ...............5

*Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622 (9th Cir. 1991) ...............4, 5

*Aurora Corp. of Am. v. Fellowes, Inc.*, No. CV07-8306-GHK(AJWX),
   2008 WL 709198 (C.D. Cal. Feb. 27, 2008) ......................................................16

*Cadenasso v. Metropolitan Life Ins. Co.*, No. 13-cv-05491-JST,
   2014 WL 1510853 (N.D. Cal. Apr. 15, 2014).....................................................5, 6

*Capitol Records, Inc. v. Optical Recording Corp.*,
   810 F. Supp. 1350 (S.D.N.Y. 1992) .....................................................................15

*De Los Santos v. Panda Exp., Inc.*, No. C 10-01370 SBA,
   2011 WL 2560213 (N.D. Cal. June 28, 2011) ......................................... 9, 13, 14

*DMP Corp. v. Fruehauf Corp.*, 617 F. Supp. 76 (W.D.N.C. 1985) .........................6

*Ex-Im Plastics, Inc. v. Miwon Am., Inc.*, No. CV 96-5710 JGD RCX,
   1996 WL 928189 (C.D. Cal. Oct. 28, 1996) .......................................................16

*Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*,
   745 F. Supp. 993 (S.D.N.Y. 1990) ......................................................................15

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ..................................................................6

*Hypro, Inc. v. Seeger-Wanner Corp.*, 292 F. Supp. 342 (D. Minn. 1968) ..............16

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ................................6

*London & Hull Mar. Ins. Co. v. Eagle Pac. Ins. Co.*, No. C 96-01512 CW
   1996 WL 479013 (N.D. Cal. Aug. 14, 1996).......................................................6

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) ........................................................9

*Oliver & Tate Enters., Inc. v. Foundations Worldwide, Inc.*,
   No. CV 13-0183-RGK (SH), 2013 WL 4446827 (C.D. Cal. June 18, 2013) ........5

*Pacesetter Systs., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982)....................4

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

*Patent Mgmt. Found., LLC v. Analog Devices, Inc., No. 10-3630 SBA,*
   2010 WL 197831 (N.D. Cal. Jan. 20, 2011) .........................................6

*Riva v. Pepsico, Inc.*, No. 14CV340 JM JMA, 2014 WL 1729023
   (S.D. Cal. Apr. 30, 2014) ..................................................................7, 15

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ...........................6

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ...........................................6

*Ward v. Follett Corp.*, 158 F.R.D. 645 (N.D. Cal. 1994) ........................5

**Statutes**

28 U.S.C. § 1404 ................................................................... 4, 5, 7

28 U.S.C. § 1407 .....................................................................4, 10

**Rules**

Fed. R. Civ. P. 45 .......................................................................14

iii

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

Plaintiffs Coachella Self Storage, LLC, James Pilcher, Susan Pilcher, Martin Wells and Susan Wells as trustees of the Martin & Susan Wells Revocable Trust, and Charles Serrano and Barbara Sloan as trustees of the Charles Serrano and Barbara Sloan 2012 Revocable Trust ("Plaintiffs"), file this Consolidated Opposition to Defendant Union Pacific Railroad Company's ("Union Pacific" or the "Railroad"), Motion to Change Venue (Doc. No. 31) and Defendants SFPP, L.P., Kinder Morgan Operating L.P. "D", and Kinder Morgan G.P., Inc.'s (collectively, "SFPP" or the "Pipeline") (all defendants collectively, "Defendants") Motion to Transfer Venue and Joinder in Motion to Change Venue (Doc. No. 40) (collectively, Doc. Nos. 31 and 40, "Motions to Transfer").

## I.   **INTRODUCTION**

Ironically, on one hand, Defendants strenuously opposed Plaintiffs' motion before the Judicial Panel on Multidistrict Litigation ("JPML") to centralize the related federal lawsuits, which would have conserved resources and prevented inconsistent rulings from different courts, but on the other hand, Defendants argue to this Court, in their Motions to Transfer, that duplicative lawsuits "waste resources" and risk "conflicting results." Doc. Nos. 31-1 at 1 & 40-1 at 1. Defendants' contradicting positions raise red flags. But setting aside whatever motivation Defendants had for fighting against centralization of the related actions in the Central District while arguing the California actions should proceed in one court to avoid the same risks centralization would have prevented, Plaintiffs agree that the related California federal actions should proceed in one California federal court—this Court. Why? Because the Central District of California is undeniably the most convenient forum for the parties and witnesses and proceeding in this Court is in the best interests of justice.

1

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

Somewhat surprisingly, in their Motions to Transfer, both Defendants appear to go out of their way to hide the elephant in the room—that SFPP is headquartered in Orange. In fact, SFPP's headquarters are only 2.5 miles from the Central District courthouse. Simply due to SFPP's close proximity, the Central District likely holds far more documents and witnesses compared to the Northern District, where no Defendant is based.

Moreover, despite Defendants' protestations that the Northern District is more convenient, Defendants have each initiated other lawsuits against each other in courts within the Central District for over a decade. In fact, two of these currently pending lawsuits involve some of the same issues and evidence relevant to this case. The converse is not true—Defendants are not involved in lawsuits against each other in the Northern District.

Additionally, plaintiffs' counsel in all four related actions pending in California agree that this Court is well suited to proceed with this litigation. Also, because of this Court's swift approach to scheduling, this case has progressed further than the first-filed case in the Northern District. Other reasons, discussed below, further show that the convenience of the parties and witnesses and the interests of justice strongly favor the Central District.

For the reasons stated herein, Defendants' Motions to Transfer should be denied.

## II.  **PROCEDURAL HISTORY**

As explained below, four lawsuits have been filed in California federal courts: two in the Central District and two in the Northern District. Only 12 days separated the original filing in the Central and Northern Districts and only three months separate the first and last filed lawsuits.

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

**A.     Central District of California Lawsuits**

This lawsuit was filed on May 5, 2015 against Defendants and is premised on Union Pacific granting purported easements underneath its railroad right-of-way to SFPP to construct and maintain a pipeline. *See* Doc. No. 1. Essentially, the present action alleges that Union Pacific did not own sufficient property interests in the subsurface adjacent to its railroad tracks in California to grant easements to SFPP, yet Union Pacific did so and nevertheless collected rent payments from SFPP. *See generally* Doc. No. 34. Plaintiffs contend that they and the class are the rightful owners of the subsurface beneath Union Pacific's tracks and that Defendants are trespassing on and have been unjustly enriched by the use of Plaintiffs' and the proposed class members' properties. *See generally id.*

On June 18, 2015, a second class action lawsuit was initiated in the Central District of California against Defendants. *See Richard Bagdasarian Inc. v. SFPP, L.P., et al.*, Case No. 8:15-cv-00986 (C.D. Cal.) ("*Richard Bagdasarian* Action"). The *Richard Bagdasarian* Action involves similar issues as the current case, which is why it was transferred to this Court. *See Richard Bagdasarian* Action Doc. No. 21.

**B.     Northern District of California Lawsuits**

Two other related lawsuits against the same Defendants and involving similar factual allegations and issues were filed in the Northern District of California on April 23, 2015 and July 1, 2015. *See Rivera, et al. v. Union Pacific Railroad Co., et al.*, No. 3:15-cv-01842 (N.D. Cal.) ("*Rivera* Action"); *Elpidio, et al. v. Union Pacific Railroad Co., et al.*, Case No. 3:15-cv-03071 (N.D. Cal.) ("*Elpidio* Action"). Both the *Rivera* and *Elpidio* Actions are proceeding before Chief Judge Phyllis Hamilton.

3

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

**C.     JPML**

On June 3 2015, due to the growing number of related class action lawsuits against Defendants, and well before Defendants filed these Motions to Transfer, Plaintiffs filed a motion under 28 U.S.C. § 1407 requesting that the related actions be centralized in the Central District. *See In re SFPP, L.P. Property Rights Litigation*, MDL No. 2647 (J.P.M.L.) at Doc. No. 1. Plaintiffs from the *Richard Bagdasarian* and *Elpidio* Actions agreed that the Central District is the most convenient forum. *See id.* at Doc. Nos. 1, 28, & 36. The plaintiffs in the *Rivera* Action argued any federal district court in California would be appropriate, including the Central District. *See id.* at Doc. No. 15 at 7.

On the other side, Defendants argued against centralization. *See id.* Doc. Nos. 17 & 19. Moreover, if the JPML was going to centralize the actions, Defendants requested that the related actions be centralized in the Northern District of California or the District of Arizona—not the Central District. *See id.* On August 10, 2015, the JPML denied transfer. *See id.* at Doc. No. 41.

## III.    ARGUMENT AND AUTHORITIES

Defendants seek to transfer this lawsuit under 28 U.S.C. § 1404 and the first-to-file rule to the Northern District. As explained further below, transfer under either standard is inappropriate in this lawsuit.

**A.     Applicable Legal Standards**

The first-to-file rule generally provides that a later filed case should be transferred "when a complaint involving the same parties and issues has already been filed in another district." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). The first-to-file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Systs., Inc. v. Medtronic, Inc.*, 678 F.2d

4

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

93, 95-96 (9th Cir. 1982). "The most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade*, 946 F.2d at 628; *see also Oliver & Tate Enters., Inc. v. Foundations Worldwide, Inc.*, No. CV 13-0183-RGK (SH), 2013 WL 4446827 (C.D. Cal. June 18, 2013) (declining to apply discretionary first-to-file rule due to equitable considerations).

Plaintiffs acknowledge the *Rivera* Action was filed before the current action and the parties and issues are essentially the same. But as for convenience and fairness issues, even authority cited by Defendants recognizes "[a] court may also relax the 'first-to-file' rule if the balance of convenience weighs in favor of the later-filed action." *Cadenasso v. Metropolitan Life Ins. Co.*, No. 13-cv-05491-JST, 2014 WL 1510853, at *4 (N.D. Cal. Apr. 15, 2014) (quoting *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994)); Doc. No. 31-1 at 7-8; *see also Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010) ("The doctrine is discretionary and, accordingly, the court may disregard it in the interests of equity").

While the Ninth Circuit noted that the respective convenience of the two courts normally "should be addressed to the court in the first filed action" rather than the court in the later-filed action, the Ninth Circuit observed that "[i]n appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses." *Alltrade*, 946 F.2d at 628; *see also Cadenasso*, 2014 WL 1510853, at *4. Accordingly, the test for analyzing the convenience of the parties and witnesses is subsumed within the test for transfer under 28 U.S.C. § 1404.

Section 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division

5

to which all parties have consented." 28 U.S.C. § 1404(a). Courts considering transfer engage in a two-step analysis. First, courts determine whether the action could have been brought in the target district. *Cadenasso*, 2014 WL 1510853, at *3 (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)). Second, courts undertake an "individualized, case-by-case consideration of convenience and fairness." *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964))).

The convenience and fairness analysis considers the convenience of the parties, the convenience of the witnesses, and the interests of justice, as understood through the following eight factors: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.* (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). According to *London & Hull Mar. Ins. Co. v. Eagle Pac. Ins. Co.*, cited by Union Pacific, "[t]he movant bears the burden of establishing a strong argument that an action should be transferred 'by showing more than a bare balance of convenience in his favor and that a transfer does more than merely shift the inconvenience.'" No. C 96-01512 CW, 1996 WL 479013, at *3 (N.D. Cal. Aug. 14, 1996) (quoting *DMP Corp. v. Fruehauf Corp.*, 617 F. Supp. 76, 77 (W.D.N.C. 1985) (citing 1 Moore's Federal Practice ¶ 0.145[5])). "The motion may be denied if the increased convenience to one party is offset by the added inconvenience to the other party." *Id.*

6

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

Because Plaintiffs concede that the first step of the two-part § 1404 test is satisfied, the only relevant inquiry for this Court is whether transfer pursuant to § 1404 or the first-to-file rule weighs in favor of the convenience of the parties and witnesses and the interests of justice. Because the convenience factors weigh against transfer, this Court should exercise its discretion and decline to apply the first-to-file rule and deny transfer under § 1404.

**B.    The Central District is the Most Convenient Forum**

As detailed below, most factors strongly weigh in favor of litigating this dispute in the Central District. *See, e.g.*, *Riva v. Pepsico, Inc.*, No. 14CV340 JM JMA, 2014 WL 1729023, at *3 (S.D. Cal. Apr. 30, 2014) (declining to follow the first-to-file rule in class action context due to: (1) the relative inconvenience for the parties and witnesses; (2) the slight progression of the case status of the other related cases as a case management conference had been set in those cases; (3) the limited participation of California class representatives, which meant no single California judicial district had a paramount interest; and (4) the first-to-file rule should not award the winner of the race to the courthouse).

**1.    Location Where the Relevant Agreements Were Negotiated and Executed**

In its Motion, Union Pacific points to contract and settlement negotiations that allegedly took place in San Francisco relating to a now-settled lawsuit in San Francisco between it and SFPP. *See* Doc. No. 31-1 at 9-10. In fact, Union Pacific even mentions "the subsequent litigation" that ultimately put Plaintiffs "on notice of their claims." *Id.* at 9. Of course, Union Pacific makes no mention that the "subsequent litigation" was filed by Union Pacific in 2004 in Los Angeles. *Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*, Case No. BC319170 (Los Angeles Sup. Ct.). Indeed, Union Pacific is silent about the 250-day trial that took place in

7

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

Los Angeles that included hordes of witnesses for both Defendants and eventually led to the California Court of Appeal decision that spawned this lawsuit. *See Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*, 231 Cal. App. 4th 134, 180 Cal. Rptr. 3d 173 (2014), reh'g denied (Dec. 5, 2014), review denied (Jan. 21, 2015).

Besides the lawsuit filed by Union Pacific against SFPP in 2004 in Los Angeles, which is still ongoing, on February 23, 2015, SFPP filed a declaratory judgment action against Union Pacific—also in Los Angeles. *SFPP, LP v. Union Pac. R.R. Co.*, Case No. BC573396 (Los Angeles Sup. Ct.). Like the 2004 case, the 2015 declaratory judgment action involves the same issue of Union Pacific's ownership interests in the property beneath its right-of-way. *See id.* Given the location of documents and witnesses in the Central District, it is not surprising that the parties chose to file lawsuits against one another in courts within the Central District regarding issues directly relevant to this lawsuit.

The first factor therefore weighs in favor of the Central District due to the protracted lawsuits in state courts within the Central District between Defendants that involve issues and evidence that are relevant to the current case.

### 2.   The State that is Most Familiar with the Governing Law

California is the state most familiar with the state tort law and possibly the federal law considering the California state appellate court in Los Angeles was the court that determined Union Pacific did not have sufficient ownership interests in the subsurface of its right-of-way. *See Union Pac. R.R. Co.*, 231 Cal. App. 4th at 208. At worst, this factor is neutral as between two federal Districts in California.

### 3.   The Plaintiffs' Choice of Forum

In its Motion, Union Pacific mis-cites the deference afforded a plaintiff's choice of forum. Specifically, Union Pacific asserts "[w]hile it is true that courts consider a plaintiff's choice of forum as weighing against transfer, ***no such***

8

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

*deference is owed* 'when an individual brings a derivative suit *or represents a class.*'" Doc. No. 31-1 at 10 (first emphasis added, second emphasis in original) (purporting to cite *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). But Union Pacific only provides this Court half of the Ninth Circuit's quote from *Lou*, which does not state that *no deference* is given to the plaintiff's forum choice but rather *less deference* is given. The full quote states: "[a]lthough great weight is generally accorded plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, *the named plaintiff's choice of forum is given less weight*." *Lou*, 834 F.2d at 739 (emphasis added) (internal citation omitted). Setting aside Union Pacific's misdirection in citing *Lou*, Plaintiffs' choice of forum—the Central District—should clearly be given some weight in this Court's analysis, and thus, favors denying transfer.

### 4.   The Respective Parties' Contacts with the Forum

As pointed out in the opening paragraph, neither Defendant even acknowledges that SFPP is headquartered in Orange, just 2.5 miles from the courthouse in this case. *See* Doc. No. 34 at ¶¶ 2 & 19. That fact alone strongly favors the Central District over the Northern District, as all other Defendants maintain out-of-state headquarters. *See id.* at ¶¶ 18 & 20-21; *see also De Los Santos v. Panda Exp., Inc.*, No. C 10-01370 SBA, 2011 WL 2560213, at *3 (N.D. Cal. June 28, 2011) (finding the Central District is the more convenient forum because the defendant's headquarters was in Rosemead).

Additionally, Union Pacific tries to make much of the convenience of San Francisco for two "key" witnesses, even though one lives somewhere in the "Bay Area" and the other is nearly ninety miles away in Sacramento, which is in the Eastern District. *See* Doc. No. 31-1 at 11.

9

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

As for Plaintiffs and the members of the class ("[a]ll landowners who own land in fee adjacent to and underlying the railroad easement under which the pipeline is located within the State of California"), they are located in every federal district in California. *Id.* at ¶ 59; *see In Re: SFPP, L.P. Property Rights Litigation*, Case No. MDL 2647 (JPML) at Doc. No. 17-6.[1] In fact, according to an exhibit attached to Union Pacific's Response in Opposition to Motion for Consolidation and Transfer of Related Actions to Central District of California Pursuant to Rule 28 U.S.C. § 1407, most of SFPP's pipeline runs through the Eastern District, the second most in the Central District; the third most in the Southern District; and the least amount in the Northern District. *See In Re: SFPP, L.P. Property Rights Litigation*, Case No. MDL 2647 (JPML) at Doc. No. 17-6. Moreover, contrary to Union Pacific's estimates of the amount of pipeline located in Northern and Southern California, even a cursory comparison of the counties in Union Pacific's own chart shows a nearly 50-50 division of the pipeline between Northern California and Central California. *See id.*; *see also* Doc. No. 31-1 at 10.

Furthermore, Union Pacific speculates that more of the pipeline runs through "urbanized areas" in "Northern California" compared to "Central District['s]" "Riverside County" containing "rural areas," which according to Union Pacific means there are "more class members" in the Northern District. Doc. No. 31-1 at 10. But even this argument is strained: Union Pacific replaces the "Northern District" with "Northern California" to presumably lump in some of the pipeline located in the Eastern District. *See id.* Then instead of using the "Central District," Union Pacific focuses on a single county in the Central District, "Riverside County." *See id.* So, instead of comparing the "urbanized areas" in the Central

---

[1] For the Court's convenience, Doc. No. 17-6 from *In Re: SFPP, L.P. Property Rights Litigation*, Case No. MDL 2647 (JPML) is attached hereto as Appendix A.

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

District, such as the pipeline located in Los Angeles County or Orange County, Union Pacific cherry picks the "rural areas" of Riverside County to compare with all of "Northern California" to reach its speculative conclusion that more class members are in the North. *See id.*

In fact, the plaintiffs in the *Elpidio* Action (pending in the Northern District), found that there are likely more class members in the Los Angeles area compared to the San Francisco area considering the Los Angeles area has nearly triple the population of the San Francisco area and is spread out nearly 10 times the size as the San Francisco metropolitan area. *See In Re: SFPP, L.P. Property Rights Litigation*, Case No. MDL 2647 (JPML) at Doc. No. 36 at 9.

Additionally, three of the four groups of plaintiffs argued to the JPML that the Central District is the most convenient forum. *See In Re: SFPP, L.P. Property Rights Litigation*, Case No. MDL 2647 (JPML) at Doc. Nos. 1, 28, & 36. The plaintiffs in the *Elpidio* Action argued the Central District was the most convenient forum because: "one of the Defendants has its main office in the Central District, a substantial segment of the pipeline is located in the Central District, and a large number of putative class members resides in the Central District." *Id.* at Doc. No. 36 at 2. The other plaintiff group, which includes the *Rivera* Action, stated that "any of the federal district courts in California would be an appropriate location," including the Central District. *See id.* at Doc. No. 15 at 7.

Considering SFPP maintains its headquarters in the Central District, the contacts of the parties' factor weighs strongly in favor of the Central District.

### 5. The Contacts Relating to the Plaintiffs' Causes of Action in the Chosen Forum

Considering this action relates to Plaintiffs' and the class members' land in California, California has the most contacts with Plaintiffs' claims. As mentioned

11

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

above, the Central District of California contains more miles of pipeline than the Northern District of California. *See In Re: SFPP, L.P. Property Rights Litigation*, Case No. MDL 2647 (JPML) at Doc. No. 17-6. Thus, if anything, this factor should weigh in favor of the Central District.

### 6.    The Differences in Costs of Litigation in the Two Forums

As Benjamin Franklin first wrote, "time is money." For all civil cases, the median time from filing to disposition in the Central District for the 12-month period ending on December 31, 2014 was 5.5 months.[2] The Central District's median time from filing to disposition is the shortest of any District in the Ninth Circuit and is top five nationally.[3] From filing to trial, the civil cases in the Central District are on average about a half a year ahead of the civil cases filed in the Northern District.[4] The efficiency of the Central District, and particularly this Court, will greatly reduce the costs associated with the litigation.

Furthermore, costs associated with discovery and trial will likely be reduced due to the close proximity of SFPP's headquarters to the Central District courthouse. As a basic matter, witnesses located at SFPP's headquarters only have a short 2.5 mile commute to the Central District courthouse compared to the over 400 mile hike to the Northern District courthouse. Also, costs related to document production, depositions, and subpoenas should be reduced if the lawsuit and the

---

[2]   United States District Courts—National Judicial Caseload Profile, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2014/12/31-3 (last visited August 17, 2015).

[3]   United States District Courts—National Judicial Caseload Profile, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2014/12/31-3 (last visited August 17, 2015).

[4]   United States District Courts—National Judicial Caseload Profile, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2014/12/31-3 (last visited August 17, 2015).

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

discovery are located in the district where SFPP is headquartered. *See, e.g.*, *De Los Santos*, 2011 WL 2560213, at *3 ("While technological advancements may lower discovery costs, the fact remains that it will be more convenient to litigate in a forum closest to the location of the relevant evidence.") (citing *Patent Mgmt. Found., LLC v. Analog Devices, Inc.*, No. C 10–3630 SBA, 2010 WL 197831, at *4 (N.D. Cal. Jan. 20, 2011) ("the possibility that documents can be produced electronically does not alter the conclusion that the cost of litigation will likely be less if the case were venued in the forum where the evidence is located.")).

Finally, considering many of the issues relevant to this lawsuit have been litigated for over 11 years and in a 250-day trial by SFPP and Union Pacific in Los Angeles, costs associated with obtaining and viewing trial exhibits and other filings in Los Angeles should be less, or at least more convenient, if the lawsuit remains in the Central District.

This factor also leans toward the Central District.

### 7.   The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

Federal Rule of Civil Procedure 45(c) dictates the place of compliance for a subpoena:

(1) For a Trial, Hearing, or Deposition. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

(2) For Other Discovery. A subpoena may command:

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and (B) inspection of premises at the premises to be inspected.

Fed. R. Civ. P. 45(c).

In the Central District, any non-party witnesses and documents located at or near SFPP's headquarters are within 100 miles from this Court, which will limit disputes relating to noticing depositions or subpoenas. *Compare* Fed. R. Civ. P. 45(c)(1)(A) & (2)(A) *with* Fed. R. Civ. P. 45(c)(1)(B)(2) (adding an additional requirement of "and would not incur substantial expense" if the witness is outside the 100-mile limitation and not a party or a party's officer).

Furthermore, an action to enforce a subpoena or seek protection from a subpoena relating to documents or witnesses located in Orange must occur in "the court for the district where compliance is required." *See* Fed. R. Civ. P. 45(d). Wherever the lawsuit proceeds, enforcement of subpoenas or protection from subpoenas relating to witnesses and documents at SFPP's headquarters must occur in the Central District. *See id.*

Thus, this factor also weighs in favor of the Central District.

### 8.   The Ease of Access to Sources of Proof

As explained earlier, ease of access to sources of proof is much greater in the Central District. SFPP's headquarters in Orange is a likely source of documents and witnesses. *See, e.g.*, *De Los Santos*, 2011 WL 2560213, at *3 (finding the defendant's headquarters to be a source of potential witnesses and documents). Furthermore, evidence, witnesses, and transcripts can likely be accessed at the Los Angeles County court where Defendants participated in the lengthy trial and still continue to litigate.

14

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

Consequently, the ease of access to sources of proof greatly favors the Central District.

### 9. Other Considerations

In addition to the above, other equitable considerations weigh in favor of the Central District over the Northern District. For example, in regards to the first-to-file rule, some courts have held that the "date of filing is less important when the competing actions are filed within a short period of time." *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350 (S.D.N.Y. 1992) (citing *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*, 745 F. Supp. 993, 996 (S.D.N.Y. 1990)). In *Capitol Records*, the court exercised its "discretion in rejecting the application of the first-filed rule" because "[o]nly twenty days elapsed between the filing of the two complaints and no discovery or other pretrial proceedings had occurred in either forum at that time." *Id.*

Here, only 12 days separate the filings of the *Rivera* Action and the current lawsuit. Moreover, like *Capitol Records*, no discovery or other pretrial proceedings have occurred in either forum; however, an initial case management conference has been set in this action for October 19, 2015, whereas all Rule 26(f) deadlines have been indefinitely suspended in the *Rivera* Action. *Compare* Doc. No. 28 *with Rivera* Action Doc. No. 40. This Court will hold a hearing on Defendants' motions to dismiss on September 1, a month before any hearing in the *Rivera* Action. *See Rivera* Action Doc. No. 45. Thus, this case is on pace to progress further than the *Rivera* Action. *See, e.g.*, *Riva*, 2014 WL 1729023, at *3 (The "litigation in the Northern District appears to have progressed beyond the status of the present case. The Northern District cases have already been consolidated before Judge Chen and the cases are set for a Case Management Conference on May 29, 2014.").

15

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

Furthermore, in the class action context, the best interests of the class must be considered as opposed to which set of lawyers won the race to the courthouse. *See id.* ("the first[-]to-file rule was not adopted to award the winner of the race to the courthouse with the status of class counsel"). "[T]he first-filed rule is not intended to create a race to the courthouse." *Aurora Corp. of Am. v. Fellowes, Inc.*, No. CV07-8306-GHK(AJWX), 2008 WL 709198, at *1 (C.D. Cal. Feb. 27, 2008) (citing *Hypro, Inc. v. Seeger-Wanner Corp.*, 292 F. Supp. 342 (D. Minn. 1968)); *see also Ex-Im Plastics, Inc. v. Miwon Am., Inc.*, No. CV 96-5710 JGD RCX, 1996 WL 928189, at *4 (C.D. Cal. Oct. 28, 1996). Considering the short time difference in filing, a comparison of the progress between this action and the *Rivera* Action, and whether proceeding in the Central District versus the Northern District is in the best interests of the class, for the reasons stated above, this Court should apply a flexible approach to the first-to-file rule and ultimately decline to apply the rule and deny transfer under § 1404.

## IV.   **CONCLUSION**

As explained herein, Defendants' Motions to Transfer (Doc. Nos. 31 & 40) are without merit, accordingly, Plaintiffs respectfully request that this Court deny Defendants' Motions to Transfer. Plaintiffs further respectfully request all other relief that the Court deems just and proper.

DATED:  August 17, 2015                Respectfully submitted,


                                        /s/ Jason S. Hartley
                                        Jason S. Hartley
                                        STUEVE SIEGEL HANSON LLP
                                        550 West C Street, Suite 1750
                                        San Diego, CA 92101
                                        Phone: (619) 400-5822
                                        Fax: (619) 400-5832
                                        *hartley@stuevesiegel.com*

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE

Norman E. Siegel
Barrett J. Vahle
Ethan M. Lange
(*pro hac vice forthcoming*)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
*siegel@stuevesiegel.com*
*vahle@stuevesiegel.com*
*lange@stuevesiegel.com*

Thomas S. Stewart
Elizabeth G. McCulley
(*pro hac vice forthcoming*)
STEWART, WALD & MCCULLEY, LLC
9200 Ward Parkway, Suite 550
Kansas City, Missouri 64114
Phone: (816) 303-1500
Fax: (816) 527-8068
*stewart@swm.legal*
*mcculley@swm.legal*

Steven M. Wald
(*pro hac vice forthcoming*)
STEWART, WALD & MCCULLEY, LLC
100 North Broadway, Suite 1580
St. Louis, Missouri 63102
Phone: (314) 720-6190
Fax: (314) 899-2925
*wald@swm.legal*

*Attorneys for Plaintiffs*

17

PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTIONS TO CHANGE VENUE