Norman E. Siegel
*siegel@stuevesiegel.com*
Barrett J. Vahle
*vahle@stuevesiegel.com*
Ethan M. Lange
*lange@stuevesiegel.com*
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Phone: (816) 714-7100
Fax: (816) 714-7101

Plaintiffs' Co-Lead and Liaison Counsel

Thomas S. Stewart
*stewart@swm.legal*
Elizabeth G. McCulley
*mcculley@swm.legal*
STEWART, WALD & MCCULLEY, LLC
9200 Ward Parkway, Suite 550
Kansas City, Missouri 64114
Phone: (816) 303-1500
Fax: (816) 527-8068

Plaintiffs' Co-Lead Counsel

*[See Additional Counsel on Signature Page]*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SFPP Right-of-Way Claims | CASE NO. SACV 15-00718 JVS (DFMx)<br><br>**CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**<br><br>Date: January 21, 2016<br>Time: 8:00 a.m.<br>Courtroom: 10C - Santa Ana<br>Judge: Hon. James V. Selna |

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................1

II.    STANDARD OF REVIEW.....................................................................2

III.   ARGUMENT AND AUTHORITIES ....................................................2

    A.    Plaintiffs Own Land Adjoining and Underneath the Right-of-Way ..............................................................................................2

        1.    Plaintiffs Adequately Plead Ownership of the Subsurface ..........2

        2.    Defendants' Arguments Outside the Pleading Standard Are Inappropriate and, in Any Event, Are Incorrect ...................4

    B.    Plaintiffs' Quiet Title and Ejectment Claims are Sufficiently Pled......10

        1.    Plaintiffs Allege Facts Supporting Ownership of Subsurface......................................................................................10

        2.    Kinder Morgan's Motion to Strike Quiet Title Class Allegations is Meritless .............................................................11

    C.    Plaintiffs' Inverse Condemnation Claim Should Not Be Dismissed ...............................................................................13

    D.    Plaintiffs' Requested Relief under Their UCL Claim is Proper ..........15

        1.    Plaintiffs' UCL Claim is Sufficiently Pled.................................15

        2.    Kinder Morgan's Motion to Strike Should Be Denied as Procedurally Defective and Substantively Meritless.................20

    E.    Plaintiffs' Accounting Claim is Properly Pled .....................................22

    F.    Alternatively, Plaintiffs Request Leave to Amend ...............................24

IV.   CONCLUSION .....................................................................................24

# TABLE OF AUTHORITIES

<u>Cases</u>

*Albizo v. Wachovia Mortg.*, No. 2:11-CV-02991 KJN, 2012 WL 1413996
 (E.D. Cal. Apr. 20, 2012) ....................................................................5, 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................2, 4

*Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal. 3d 862 (1985) ....14, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)......................................2, 4, 17

*Besneatte v. Gorudin*, 16 Cal. App. 4th 1277 (1993) ...............................................6, 8

*Breidert v. S. Pac. Co.*, 61 Cal. 2d 659 (1964) ........................................................15

*Buford v. United States*, 103 Fed. Cl. 522 (2012) ...................................................7

*Bunch v. Indian Palms Vacation Club Owners Ass'n, Inc.*, No. EDCV
 11-01963-VAP, 2013 WL 2155383 (C.D. Cal. May 16, 2013)..........................11

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028
 (C.D. Cal. 2002) .....................................................................................21

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006)....................16

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000) ...................18

*Couch v. Morgan Stanley & Co. Inc.*, No. 14-CV-0010, 2014 WL 1577463
 (E.D. Cal. Apr. 18, 2014) ...........................................................................19

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993) .........................................12

*Faus v. Nelson*, 241 Cal. App. 2d 320 (1966) .........................................................5, 7

*Freeman v. Affiliated Prop. Craftsmen*, 266 Cal. App. 2d 723 (1968) ................7, 11

*Frye v. Sibbitt*, 145 Neb. 600 (1945) .......................................................................23

*Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ........................5, 6

*Great Northern Ry. Co. v. United States*, 315 U.S. 262 (1942) ................................3

*Grocers' Fruit Growing Union v. Kern Cnty. Land Co.*, 150 Cal. 466 (1907).........24

*Howerton v. Earthgrains Baking Cos., Inc.*, No. 1:13-CV-1397 AWI SMS,
     2014 WL 2767399 (E.D. Cal. June 18, 2014)....................................................4

*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007).............20

*In re Toyota Motor Unintended Acceleration Marketing, Sales Practices, &
     Products Liability Litig.*, 790 F. Supp. 2d 1152 (C.D. Cal. 2011) ........................2

*In re Toyota Motor Unintended Acceleration Marketing, Sales Practices, &
     Products Liability Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) ......................21

*In re UTStarcom, Inc. Secs. Litig.*, 617 F. Supp. 2d 964 (N.D. Cal. 2009)..............12

*In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609 (N.D. Cal. 2007) ........................13

*Jordan-Benel v. Universal City Studios, Inc.*, No. CV-14-5577-MWF MRWX,
     2015 WL 3888149 (C.D. Cal. June 24, 2015)........................................................4

*Juarez v. Arcadia Fin., Ltd.*, 152 Cal. App. 4th 889 (2007)...............................17, 18

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)............passim

*Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060 (C.D. Cal. 2008)...................................5

*Lovesy v. Armed Forces Benefit Association*, No. C 07-2745 SBA,
     2008 WL 696991 (N.D. Cal. Mar. 13, 2008) .................................................21, 22

*Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007) ................18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................2

*Luxpro Corp. v. Apple Inc.*, No. C 10-3058 JSW, 2011 WL 3566616
     (N.D. Cal. Aug. 12, 2011) .....................................................................16, 18, 19

*Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440 (2005).....................................16

*Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. __ 134 S. Ct. 1257
     (2014)....................................................................................................................3

*McPherson v. Empire Gas & Fuel Co.*, 122 Cal. App. 466 (1932) .........................23

*Millyard v. Faus*, 268 Cal. App. 2d 76 (1968) ......................................................5, 10

*Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943 (9th Cir. 2009),
   *rev'd on other grounds*, 614 F.3d 1070 (9th Cir. 2010) (en banc)....................4, 5

*Neff v. Ernst*, 48 Cal. 2d 628 (1957) ..........................................................................7

*Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) .........12

*Old Republic Ins. Co. v. Superior Court*, 66 Cal. App. 4th 128 (1998)....................23

*Pac. Bell Tel. Co. v. S. Cal. Edison Co.*, 208 Cal. App. 4th 1400 (2012) ................15

*Patel v. Southern Cal. Water Co.*, 97 Cal. App. 4th 841 (2002) .........................13, 14

*Peninsula Props. Co. v. Cnty. of Santa Cruz*, 34 Cal. 2d 626 (1950) ......................24

*People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102 (2003) ...18,19

*Quigley v. Am. Claims Servs., Inc.*, No. 13-cv-1766-KJM-EFB,
   2015 WL 1258563 (E.D. Cal. Mar. 18, 2015).................................................16, 17

*Red Mountain, LLC v. Fallbrook Public Utility Dist.*, 143 Cal. App. 4th 333
   (2006).......................................................................................................................22

*Redlands v. Nickerson*, 188 Cal. App. 2d 118 (1961) ............................................5, 9

*Regan v. Qwest Commc'ns*, No. 2:01-766, 2010 WL 3941471 (E.D. Cal. 2010).......5

*S. Shore Land Co. v. Petersen*, 226 Cal. App. 2d 725 (1964) ..................................11

*Safwenberg v. Marquez*, 50 Cal. App. 3d 301 (1975) .....................................6, 7, 8, 9

*SEC v. Sands*, 902 F. Supp. 1149 (C.D. Cal. 1995) .................................................12

*Severy v. Central Pac. R.R.*, 51 Cal. 194 (Cal. 1875)..........................................5, 10

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393
   (2010).......................................................................................................................13

*SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176 (S.D. Cal. 2012).............19

*Sutton v. United States*, 107 Fed. Cl. 436 (2012) ...................................................7, 8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ...................................................5

*Trew v. Volvo Cars of N. Am., LLC*, No. CIV-S-051379 DFLPAN,
      2006 WL 306904 (E.D. Cal. Feb. 8, 2006) ....................................20

*Twain Harte Homeowners Assn. v. Patterson*, 193 Cal. App. 3d 184 (1987) ..........13

*Union Pacific R.R. Co. v. Santa Fe Pacific Pipelines, Inc.*, 231 Cal. App. 4th 134
      (2014) ...........................................................................................3

*United States v. S. Pac. Transp. Co.*, 543 F. 2d 676 (9th Cir. 1976) .......................13

*United States v. Union Pacific R.R. Co.*, 353 U.S. 112 (1957) ..................................3

*Vargas v. HSBC Bank USA, N.A.*, No. 11-CV-2729 BEN RBB, 2012 WL 3957994
      (S.D. Cal. Sept. 10, 2012)........................................................................12

*Waldo v. Eli Lilly & Co.*, No. CIV. S-13-0789 LKK, 2013 WL 5554623
      (E.D. Cal. Oct. 8, 2013) ..........................................................................4

*Warden v. S. Pasadena Realty & Imp. Co.*, 178 Cal. 440 (1918) .............................9

*White v. Lyons*, 42 Cal. 279 (1871) .........................................................................23

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010)............12, 20, 21

Statutes

Cal. Civ. Code § 831........................................................................................................7

Cal. Civ. Code § 1112......................................................................................................7

Cal. Pub. Util. Code § 611 ............................................................................................13

Cal. Pub. Util. Code § 615 ............................................................................................15

Cal. Bus. and Prof. Code § 17200 .................................................................................2

Rules

Fed. R. Civ. P. 12(d) .......................................................................................................4

Fed. R. Evid. 301 ............................................................................................................5

Plaintiffs Martin Wells and Susan Wells as trustees of the Martin and Susan Wells Revocable Trust, and Sandra L. Hinshaw as trustee of the Sandra L. Hinshaw Living Trust ("Plaintiffs") respectfully submit this Consolidated Opposition to Defendant Union Pacific Railroad Company's ("Union Pacific" or the "Railroad") Motion to Dismiss (Doc. 107) and SFPP, L.P., Kinder Morgan Operating L.P. "D", and Kinder Morgan G.P., Inc.'s (collectively, "Kinder Morgan" or the "Pipeline") Motion to Dismiss and Motion to Strike (Doc. 108) (collectively, the "Motions") Plaintiffs' Consolidated Class Action Complaint (Doc. 104) ("Complaint" or "Compl.").

## I. INTRODUCTION

Plaintiffs own the property beneath Union Pacific's right-of-way where Kinder Morgan's pipeline is located and have pled facts supporting their ownership. Because they cannot attack Plaintiffs' factual allegations under Rule 12, Defendants resort to summary judgment arguments, including urging that Plaintiffs should, at the pleading stage, be required to produce their chains of title to prove their ownership of the subsurface. While Plaintiffs' title history may be an appropriate subject of discovery, it is not a proper inquiry under the applicable pleading standards for a motion to dismiss. Other than this premature argument for dismissal under a Rule 56 standard, Defendants do not challenge Plaintiffs' claims for declaratory judgment, trespass, or quasi contract. Further, only Union Pacific challenges Plaintiffs' inverse condemnation and ejectment claims; they will proceed in any event as to Kinder Morgan. As for their quiet title and ejectment claims, Plaintiffs have adequately alleged facts supporting each cause of action. Plaintiffs' inverse condemnation claim is likewise sufficiently stated; however, its viability against Union Pacific might be limited if Union Pacific conclusively admits—as it suggests in its brief—that the construction, operation, and maintenance of the pipeline in its subsurface was not for legitimate railroad purposes. The Court should also reject Defendants' attempt to distort Plaintiffs' request for "restitution" for

Defendants' violations of California Business and Professions Code § 17200 ("UCL") as seeking non-restitutionary disgorgement. Finally considering the dominant-servient estate relationship between Plaintiffs and Defendants and the lengthy history of Defendants' wrongful conduct, an accounting is appropriate.

## II.    STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact that when taken as true "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *In re Toyota Motor Unintended Acceleration Marketing, Sales Practices, & Products Liability Litig.*, 790 F. Supp. 2d 1152, 1164 (C.D. Cal. 2011). General factual allegations of injury suffice at the pleadings stage because courts must "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 1164-65 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

## III.   ARGUMENT AND AUTHORITIES

## A.    Plaintiffs Own Land Adjoining and Underneath the Right-of-Way

### 1.    Plaintiffs Adequately Plead Ownership of the Subsurface

Defendants argue that Plaintiffs fail to adequately allege an ownership interest in the subsurface of the right-of-way. *See* Doc. 108-1 at 4-5 (Kinder Morgan erroneously states that Plaintiffs merely allege they own land "adjacent" to the right-of-way); Doc. 107-1 at 4 (Union Pacific argues Plaintiffs have no standing because they have no ownership interest in the right-of-way). Not so. Plaintiffs plead ample facts supporting their ownership interest of the subsurface of the right-of-way. *See, e.g.*, Compl. ¶¶ 51-53, 69, 89 & 111-12.

A proper starting point to the question of ownership is the fact that California has conclusively determined that Union Pacific had no legal right to construct or operate a pipeline in the subsurface of its rights-of-way with respect to lands granted under any federal Congressional Act. *Union Pacific R.R. Co. v. Santa Fe Pacific Pipelines, Inc.*, 231 Cal. App. 4th 134, 146-47 (2014); *see also Great Northern Ry. Co. v. United States*, 315 U.S. 262, 273-75 (1942) (no subsurface ownership conveyed to railroads under the 1875 Act); *United States v. Union Pacific R.R. Co.*, 353 U.S. 112, 126-28 (1957) (Union Pacific enjoined from extracting oil and gas from the subsurface of rights-of-way acquired under the pre-1871 Acts). "Since the [Congressional] acts alone did not provide the Railroad with sufficient property rights to rent the subsurface to the Pipeline, in some instances the Railroad may be seeking to collect rent for the use of property owned by others—either private third parties or the federal government (or its grantees)." *Santa Fe Pacific Pipelines*, 231 Cal. App. 4th at 208.

Plaintiffs contend that they are these private third party owners or grantees of the federal government. *See* Compl. at ¶¶ 21 & 52 (Plaintiffs allege that they, and the class members, are "successors in title to what were once public lands through which the Railroad rights-of-way now pass" (*i.e.*, the grantees who took from the federal government) or are "fee owners of property that is burdened by a surface easement for railroad purposes only" (*i.e.*, the "private third parties")). Specifically, Plaintiffs have alleged the history of the Congressional acts and the nature of the rights given (and not given) to the railroads under those acts. *See id.* at ¶¶ 12-55; *see also Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. ___, 134 S. Ct. 1257 (2014); *Union Pac. R.R. Co.*, 353 U.S. at 126-28. Plaintiffs have alleged that they own the land adjoining and underlying the right-of-way, which contains the pipeline. *Id.* at ¶¶ 68, 69, 73, 111, 121, 126 & 131. Plaintiffs have alleged that no one in their chain of title retained or separately conveyed the interest in the right-of-

way. *Id.* at ¶ 53.[1] Further, Plaintiffs alleged that a portion of the remaining railroad right-of-way was granted by easement to the railroads to use the surface only for railroad purposes. *See* Compl. ¶ 23. Plaintiffs whose estates are burdened by a surface easement for the railroad are successors to the ancestors in title who granted only that surface easement. *Id.* ¶¶ 21 & 53. Read together, these allegations of ownership in the subsurface are sufficient "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## 2. Defendants' Arguments Outside the Pleading Standard Are Inappropriate and, in Any Event, Are Incorrect

Defendants' arguments seek to inject factual and evidentiary issues well beyond the scope of a motion to dismiss, such as their contention that Plaintiffs are required to allege or attach their chains of title to their pleading. *See* Fed. R. Civ. P. 12(d). To the extent the Court converts Defendants' Motions into motions for summary judgment under Fed. R. Civ. P. 12(d), Plaintiffs respectfully request that such motions be deferred until after discovery so that Plaintiffs will be "given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

The pleading stage is not about "whether a plaintiff will ultimately prevail," but whether she is entitled to offer evidence to support her claims. *See Mohamed v.*

---

[1] The fact that Plaintiffs made these allegations "upon information and belief" is irrelevant. *Jordan-Benel v. Universal City Studios, Inc.*, No. CV-14-5577-MWF MRWX, 2015 WL 3888149, at *12 (C.D. Cal. June 24, 2015); *see also Waldo v. Eli Lilly & Co.*, No. CIV. S-13-0789 LKK, 2013 WL 5554623, at *5 (E.D. Cal. Oct. 8, 2013) (under *Twombly* and *Iqbal*, "There is no general bar to pleading upon information and belief. . . . [T]he proper inquiry remains whether the plaintiff has presented a non-conclusory factual allegation. If so, the court may assume the allegation's veracity and then determine whether it plausibly gives rise to an entitlement to relief."); *Howerton v. Earthgrains Baking Cos., Inc.*, No. 1:13-CV-1397 AWI SMS, 2014 WL 2767399, at *3 (E.D. Cal. June 18, 2014) ("Objections as to sufficiency of allegations based on 'information and belief' often speak more to the requirements of summary judgment.").

*Jeppesen Dataplan, Inc.*, 579 F.3d 943, 960 (9th Cir. 2009), *rev'd on other grounds*, 614 F.3d 1070 (9th Cir. 2010) (en banc). Yet Defendants' arguments are premised on decisions made *after* discovery and development of evidence.[2] *Regan v. Qwest Communications* was a ruling on a motion for class certification. *Millyard v. Faus*, *Faus v. Nelson*, *Redlands v. Nickerson*, and *Severy v. Central Pacific Railroad* were appeals following trial. Citations to cases where plaintiffs failed to prove title after trial on the merits do not support dismissal at the pleading stage, before evidence has been developed.

Defendants also erroneously contend Plaintiffs cannot rely (and do not invoke) the centerline presumption and are otherwise required to plead their chains of title to prove what the grantor owned and what the grantee received. *See* Docs. 107-1 at 4-6 & 108-1 at 4-7. As discussed below, California evidentiary rules recognize a "centerline presumption." The centerline presumption may be rebutted in some circumstances; at that point, the burden shifts to plaintiff to establish title to the centerline of the right-of-way. However, the presumption is a rule of evidence, and the standard for recovery if the presumption is rebutted is also evidentiary in nature. *See, e.g.*, Fed. R. Evid. 301.

Evidentiary standards should not be applied at the pleading stage. *See, e.g.*, *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1085 n. 33 (C.D. Cal. 2008) ("such presumption is an evidentiary one applicable at the summary judgment stage; it is not a pleading requirement that a plaintiff must overcome in the context of a motion to dismiss"). Similarly, "the district court should not [convert] an evidentiary presumption applicable to the order of proof into a heightened standard for pleading." *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)

---

[2] *Regan v. Qwest Commc'ns*, No. 2:01-766, 2010 WL 3941471 (E.D. Cal. 2010); *Millyard v. Faus*, 268 Cal. App. 2d 76 (1968); *Faus v. Nelson*, 241 Cal. App. 2d 320 (1966); *Redlands v. Nickerson*, 188 Cal. App. 2d 118 (1961); *Severy v. Central Pac. R.R.*, 51 Cal. 194 (Cal. 1875).

(citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002)); *Albizo v. Wachovia Mortg.*, No. 2:11-CV-02991 KJN, 2012 WL 1413996, at *9 (E.D. Cal. Apr. 20, 2012) ("while defendants' 'presumption' argument might be compelling as part of a motion for summary judgment, is not well-taken at this procedural posture"). Evidentiary rules are not pleading standards, and the Court need only determine at this stage if Plaintiffs have sufficiently pled facts that plausibly give rise to their claims. As shown above, Plaintiffs have met their burden.

Defendants' arguments on the application of the centerline presumption illustrate that they are conflating the applicable pleading standard with the ultimate merits. Plaintiffs have *pled* ownership, and readily acknowledge they must ultimately *prove* ownership of the subsurface in the right-of-way by either: (1) relying on the centerline presumption (*see, e.g.*, *Safwenberg v. Marquez*, 50 Cal. App. 3d 301, 306 (1975)); or (2) chain of title evidence (*see, e.g.*, *Besneatte v. Gorudin*, 16 Cal. App. 4th 1277, 1280-81 (1993)). Thus, Defendants' argument concerning the application of the centerline presumption is misplaced on a motion to dismiss because, even if the centerline presumption did not apply, a fact question would arise implicating chain of title evidence. In other words, apart from the inaccurate recitation of what Plaintiffs actually pled, Defendants are attacking the mode and sufficiency of proof that Plaintiffs will ultimately have to put before the Court on the merits, an issue that is not now before the Court.

Moreover, although premature in the first instance, Defendants' treatment of the centerline presumption is also wrong. California's recognition of the centerline presumption is borne out of the public policy against "strips and gores." "The policy behind the law is to avoid ownership in land in strips and gores by attaching the underlying fees of streets, both active and abandoned, to the adjoining lots." *Safwenberg*, 50 Cal. App. 3d at 306, *cited with approval in Besneatte*, 16 Cal. App. 4th at 1280-81. California's centerline rules are in accord with those of the vast majority of states. The standard justification for the doctrine is two-fold. First, it

1   promotes efficient use of land by keeping the title to both parts unified because
2   rarely would the grantor find a way to devote a small and narrow retained strip of
3   land to productive use. Second, including the strip comports with the parties'
4   probable intent.

5       California evidentiary rules therefore recognize a "centerline presumption."
6   Civil Code section 831 provides: "An owner of land bounded by a road or street is
7   presumed to own to the center of the way, but the contrary may be shown." Civil
8   Code section 1112 similarly provides: "A transfer of land, bounded by a highway,
9   passes the title of the person whose estate is transferred to the soil of the highway in
10  front to the center thereof, unless a different intent appears from the grant." These
11  rules are applied to owners of land bounded by railway easements, who are
12  presumed to own to the center of the easement. *See, e.g.*, *Faus v. Nelson*, 241 Cal.
13  App. 2d 320, 324 (1966) (citing Cal. Civ. Code §§ 831 & 1112); *see also Freeman*
14  *v. Affiliated Prop. Craftsmen*, 266 Cal. App. 2d 723, 729 (1968) (holding the
15  centerline rule applies to railroad corridors); *accord Sutton v. United States*, 107
16  Fed. Cl. 436, 441 (2012) (same); *Buford v. United States*, 103 Fed. Cl. 522, 528
17  (2012) (conveyances carry title in fee to the centerline of the easement as to
18  subsurface minerals and reversionary rights to the surface).

19      When "property is sold by reference to a recorded map, the grantee is
20  presumed to take to the center of the street or streets shown on the map as bordering
21  the property, even if the street shown on the map appears to have been vacated or
22  abandoned." *Neff v. Ernst*, 48 Cal. 2d 628, 635 (1957). "The presumption continues
23  to apply in the absence of a clear expression in the deed not to convey title to the
24  center line." *Id*. If a deed contains a metes and bounds description that conflicts with
25  the lot number description in the deed, the court will allow extrinsic evidence to
26  determine the parties' intent. *Safwenberg,* 50 Cal. App. 3d at 306-07. However, if
27  the deed describes the property by lot and block number, and does not contain a
28  metes and bounds description, title to the underlying fee of streets dedicated by the

1   subdivision map is vested in the abutting lot owners as a matter of law and there is

2   no ambiguity in the deed. *Id.* at 308-09.

3       The named plaintiffs in this case each have deeds that on their face give rise

4   to the centerline presumption as a matter of law, as neither contain metes and

5   bounds descriptions. However, even without the benefit of the centerline

6   presumption, and even if they had metes and bounds descriptions, Plaintiffs can still

7   prevail on their claims by ultimately showing through chain of title evidence that

8   they own the right-of-way—an inquiry well beyond what is required at the pleading

9   stage. This is exactly what was done in *Besneatte* and *Sutton*, and, if necessary,

10  Plaintiffs are prepared to do the same thing here. *See Besneatte*, 16 Cal. App. 4th at

11  1281 (despite metes and bounds language in deeds, due to chain of title evidence the

12  court found that the original landowner had not intended to retain any ownership

13  interest in the strip of land, and further that "the use of metes and bounds is not

14  determinative of the grantor's intent" and the successors-in-title retained fee simple

15  interests in the land); *Sutton*, 107 Fed. Cl. at 442 (despite metes and bounds

16  language in deeds, "[w]here plaintiffs have produced chain of title evidence showing

17  that their predecessors held fee title to the railroad corridor, and defendant has

18  produced no evidence that the corridor had ever been conveyed to anyone else,

19  plaintiffs have demonstrated a property interest in the corridor.").

20      Plaintiff Hinshaw's deed, which Defendants fail to even mention (likely

21  because the centerline presumption obviously applies) conveys: "Lot 49, Tract No.

22  12458 in the County of San Bernardino, State of California, as per plot recorded in

23  Book 172 of Maps, pages 36 and 37, Records of said County." Compl. Ex. C.

24  Plaintiff Hinshaw's second deed is functionally the same, except it refers to "Lot

25  50." *See id.* Ex. D. California law holds that these types of deeds give rise to the

26  centerline presumption. *See, e.g.*, *Safwenberg*, 50 Cal. App. 3d at 306-07.

27      Similarly, Plaintiff Wells's deeds contain "Section/Township/Range"

28  descriptions and, contrary to Defendants' position, no metes and bounds

8

descriptions. The relevant part of the deed for the Wells's Riverside parcel conveys: "All that portion of the East half of the Northwest quarter of Section 14, Township 2 South, Range 3 West, San Bernardino Base and Meridian, in the County of Riverside, State of California, as shown by United States Government Survey, lying Northeasterly of the Northeasterly line of the 200 foot right of way of the Southern Pacific Railroad Company." Compl. Ex. A. The relevant part of the deed for the Wells's San Bernardino parcel conveys: "The South ½ of the Southwest ¼ of Section 11, Township 2 South Range 3 West, San Bernardino, State of California, according to Government Township plat filed October 5, 1876, lying northeasterly of the right of way of the Southern Pacific Railroad, as it now exists." *Id.* Ex. B.

Defendants seize upon the mere mention of the railroad in the Wells's deeds, as if such language converts these descriptions into metes and bounds descriptions. Docs. 107-1 at 5-6 & 108-1 at 6. But, as Defendants' own case illustrates, these are not metes and bounds descriptions. In citing *Warden v. S. Pasadena Realty & Imp. Co.*, 178 Cal. 440, 442 (1918), Kinder Morgan reveals only a portion of the relevant facts, noting only that the deed provides "the southerly line of Foothill street." Doc. 108-1 at 6. Kinder Morgan fails to disclose that the whole legal description was metes and bounds, that is, with specific descriptions of each line that makes up the boundary with lines containing a distance (metes) along a recognizable physical feature back to the point of beginning. *Warden*, 178 Cal. at 442. This is nothing like the Wells's deeds, which contain a mere reference to the railroad right-of-way that does nothing to describe the distances of the lines comprising the parcel.

Similarly, Defendants cite *City of Redlands v. Nickerson*, 188 Cal. App. 2d 118, 126-27 (1961), and mention only the part of the deed containing the language "along said Northerly line of West State Street" and ignore the salient fact that the Court repeatedly stated a "metes and bounds" description appeared in the deed, which was why the centerline presumption did not apply. Docs. 107-1 at 5 & 108-1 at 6; *Nickerson*, 188 Cal. App. 2d 118, 125-28. Again, the Wells's deeds, by

contrast, do not contain any such distances, and thus, are not metes and bounds descriptions. *Accord Severy v. Cent. Pac. R.R. Co.*, 51 Cal. 194, 197 (1875) (cited by Defendants, but this case once again contains a metes and bounds description— "along the easterly line of Sacramento street one hundred and fifty feet").

In sum, Defendants' argument should be rejected because: (1) Plaintiffs adequately pled ownership in the subsurface; (2) the deeds do not contain metes and bounds descriptions, and thus, the centerline presumption applies; and (3) even if the centerline presumption did not apply, Plaintiffs have alleged ownership and would be entitled to prove their claim with chain of title evidence. As to the third point, considering Defendants' insistence that evidentiary support be required, if this Court converts Defendants' Motions into motions under Rule 56 or requires Plaintiffs to amend, Plaintiffs are prepared to provide chains of title and an affidavit of a title expert who reviewed the chain of title evidence and will opine that the deeds do not contain metes and bounds language and that no predecessor in interest in the chains of title reserved the fee in or underneath the railroad right-of-way. Such an exercise is, however, wholly unnecessary at the pleading stage.

**B.     Plaintiffs' Quiet Title and Ejectment Claims are Sufficiently Pled**

**1.     Plaintiffs Allege Facts Supporting Ownership of Subsurface**

Union Pacific incorrectly argues that Plaintiffs' quiet title and ejectment claims are based "solely on a purported weakness in Union Pacific's title." Doc. 107-1 at 7. In *Millyard v. Faus*, the court of appeal explained that because the plaintiffs' own title was defective, the plaintiffs' assertions that defendants lacked good title were irrelevant. 268 Cal. App. 2d 76 (1968). Unlike the plaintiffs in *Millyard* and contrary to Union Pacific's mischaracterization of the allegations here, Plaintiffs specifically plead they "are the fee title holders of the land under the Railroad's right-of way . . . [and their] fee ownership is burdened only by a limited easement for the use of the surface for railroad purposes only." Compl. ¶¶ 111 & 121. Additionally, Plaintiffs state factual allegations supporting their claim of fee

ownership of the subsurface. *Id.* at ¶¶ 51-53. These allegations of fee ownership of the disputed subsurface are more than sufficient to satisfy Plaintiffs' pleading requirements. *See, e.g.*, *Bunch v. Indian Palms Vacation Club Owners Ass'n, Inc.*, No. EDCV 11-01963-VAP, 2013 WL 2155383, at *5 (C.D. Cal. May 16, 2013) (pleading fee ownership sufficient in quiet title action); *see also Freeman v. Affiliated Prop. Craftsmen*, 266 Cal. App. 2d 723, 734-35 (1968) (quieting title to the centerline of the former railway easement); *S. Shore Land Co. v. Petersen*, 226 Cal. App. 2d 725, 737 (1964) (pleading fee ownership is sufficient against general demurrer in lawsuit involving quiet title and ejectment claims).

Moreover, in support of its arguments against Plaintiffs' quiet title and ejectment claims, Union Pacific states: "Plaintiffs concede that *they* and their 'predecessors in title did not retain rights in the subsurface of the rights-of-way.'" Doc. 107-1 at 8 (emphasis added). But nowhere in Plaintiffs' Complaint do they "concede" that they did not retain rights in the subsurface. Instead, Plaintiffs allege that their "predecessors in title did not retain rights in the subsurface," because those rights were granted and conveyed to Plaintiffs, who are currently the fee owners of the subsurface. Compl. ¶ 53. Thus, Union Pacific's mischaracterization of Plaintiffs' allegations as conceding they did not retain an interest in the subsurface is expressly contrary to the factual allegations actually contained in the Complaint. Nevertheless, if Union Pacific's "weakness" of title argument is premised on Defendants' earlier arguments that Plaintiffs do not adequately plead that they own the subsurface, for the reasons detailed above, these arguments are without merit. *See supra* § III.A. The same is true as it relates to Kinder Morgan's faulty contention that Plaintiffs have not pled an ownership interest in the subsurface. *See id.*

**2.    Kinder Morgan's Motion to Strike Quiet Title Class Allegations is Meritless**

Kinder Morgan also contends Plaintiffs cannot proceed with their quiet title claims on a class-wide basis because quiet title allegations must be verified. Doc.

108-1 at 8-9. As a preliminary matter, Plaintiffs disagree that California state court pleading requirements apply in federal court, and only filed verifications of their quiet title allegations to moot the issue at the pleading stage. *See, e.g.*, *Vargas v. HSBC Bank USA, N.A.*, No. 11-CV-2729 BEN RBB, 2012 WL 3957994, at *10 (S.D. Cal. Sept. 10, 2012) (rejecting the defendants' contention that the quiet title complaint must be verified, because the pleading requirements of California's state courts do not apply in federal court.).

But more importantly, Kinder Morgan fails to cite a single case supporting its contention that striking class allegations is proper where unnamed class members have not verified their quiet title allegations in the complaint. On a motion to strike, the Court must first decide the threshold question of "whether Rule 12(f) authorizes [it] to strike [the matters at issue] at all." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Two rules guide the Court's discretion. First, "[m]otions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003) (same). The Court should therefore refrain from deciding "disputed or substantial questions of law on a motion to strike." *SEC v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995). Second, the Court should deny motions to strike unless (1) the matters at issue have "no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit," *In re UTStarcom, Inc. Secs. Litig.*, 617 F. Supp. 2d 964, 969 (N.D. Cal. 2009) (citations omitted); and (2) "the expenditure of time and money that must arise from litigating spurious issues" justifies "dispensing with those issues prior to trial." *Whittlestone*, 618 F.3d at 976 (quoting *Fantasy*, 984 F.2d at 1527). Kinder Morgan has not—and cannot—satisfy either criterion.

First, Kinder Morgan cannot establish that these class claims have "no logical

CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

connection to the controversy." Under Kinder Morgan's view, where absent class members would be required to verify their quiet title claims, there could never be a class action regarding claims to quiet title. But such cases do exist, and there is no reason to think a state procedural requirement would bar application of Rule 23 here. *See, e.g.*, *United States v. S. Pac. Transp. Co.*, 543 F. 2d 676, 680 (9th Cir. 1976) (noting the class certified under Rule 23(b)(1)(B) properly alleged claims to quiet title); *see also Twain Harte Homeowners Assn. v. Patterson*, 193 Cal. App. 3d 184, 187-88 (1987) (permitting homeowners association, without any title interest, to represent member homeowners regarding quiet title claims); *cf. Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-99 (2010) (holding that only Congress can create exceptions to Rule 23's requirements, and thus, states cannot limit Rule 23's scope).

Second, Kinder Morgan has not established an imperative to address this issue at the pleading stage. In that regard, Kinder Morgan's motion to strike is a premature attempt to raise class certification issues at the pleading stage and is thus procedurally improper. *See In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 614-15 (N.D. Cal. 2007) (denying a motion to strike class allegations where there had been no answer, discovery had not yet commenced, and no motion for class certification had been filed).

## C.   Plaintiffs' Inverse Condemnation Claim Should Not Be Dismissed

Union Pacific contends that Plaintiffs' inverse condemnation claim requires Union Pacific to have been granted the power to condemn property necessary to carry out the regulated activities of the railroad. Doc. 107-1 at 8 (citing Cal. Pub. Util. Code § 611). Union Pacific argues that Plaintiffs' Complaint is devoid of allegations "that the particular use of [the] subsurface rights was necessary for the construction or maintenance of Union Pacific's railroad," which means Plaintiffs' inverse condemnation claim fails as to Union Pacific. *Id.* at 10.

Union Pacific cites but fails to discuss the most analogous case. Doc. 107-1 at

10. In *Patel v. Southern Cal. Water Co.*, 97 Cal. App. 4th 841 (2002), the water company held an easement permitting it the rights of passage across private property to operate and maintain its water supply facilities that were located on adjacent land. 97 Cal. App. 4th at 843. The water company later entered into a lease with two cell phone companies, allowing them to install wireless communications equipment on the water company's property. *Id.* But in order to get to their leased property, the cell phone companies used the water company's easement to cross the private property. *Id.* The private landowners later sued for inverse condemnation alleging that the water and wireless companies' actions exceeded the scope of the easement. *Id.* The trial court ruled "the actions of the water company and wireless companies constituted a 'mere trespass,' rather than acts sufficient to establish a claim for inverse condemnation." *Id*. at 844. On appeal, the appellate court recognized that the water company held the power of eminent domain to acquire private property for a variety of water-related activities. *Id.* However, the court reasoned that the water company's condemnation powers were limited to providing water to surrounding areas "not to make money by going into the property management business and renting out its land—indeed, in this case it appears to have rented out what it didn't even have." *Id.* Because the water company did not have the power of eminent domain in this instance, ultimately, the court of appeal affirmed the trial court's finding that the private landowners could not maintain a claim for inverse condemnation against the water company. *Id.* at 845-46. Notably, the California appellate court specifically explained that it was not deciding whether the wireless companies have the power of eminent domain. *Id.* ("We need not decide here whether wireless companies such as Cox and Nextel have the power of eminent domain for purposes of providing cell phone services").

If *Patel* is good law, and if Union Pacific concedes that its use of Plaintiffs' subsurface property was not for railroad purposes (a concession perhaps implicit in its argument but not express), then it is fair to analogize its conduct to the water

company's in *Patel*. *But see Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal. 3d 862, 866-67 (1985) ("A landowner whose property has been invaded by a public entity that lacks eminent domain power suffers no less a taking merely because the defendant was not authorized to take. . . . [P]laintiffs' inverse condemnation action may be maintained although defendant lacks eminent domain power."). But discovery may establish this concession, and thus, dismissal of Plaintiffs' inverse condemnation claim as to Union Pacific at the pleading stage is inappropriate.

Further, Union Pacific acted jointly with Kinder Morgan, especially as sister subsidiaries, in depriving Plaintiffs of their property rights, and Plaintiffs have alleged facts showing that Kinder Morgan's taking of Plaintiffs' property was "necessary for the construction and maintenance of its pipeline" pursuant to Cal. Pub. Util. Code § 615. Compl. ¶¶ 24-27 & 132-39. Thus, even if Union Pacific is not liable for inverse condemnation because it did not have the statutory authority to condemn property for the construction and operation of the pipeline that is the cause of Plaintiffs' and the Class's property damage, it is still liable as a joint actor with Kinder Morgan, who undoubtedly has the statutory authority to condemn property for this purpose. *See* Compl. ¶ 132; Cal. Pub. Util. Code § 615 ("A pipeline corporation may condemn any property necessary for the construction and maintenance of its pipeline."); *Pac. Bell Tel. Co. v. S. Cal. Edison Co.*, 208 Cal. App. 4th 1400, 1405 (2012) (stating that a private party that jointly participates in a constitutional taking is a proper party-defendant to inverse condemnation action) (citing *Breidert v. S. Pac. Co.*, 61 Cal. 2d 659, 662 (1964)). Accordingly, Plaintiffs' inverse condemnation claim should not be dismissed as to Union Pacific.

**D.     Plaintiffs' Requested Relief under Their UCL Claim is Proper**

**1.     Plaintiffs' UCL Claim is Sufficiently Pled**

Under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

1134, 1144 (2003). Consistent with *Korea Supply*, Plaintiffs are requesting an award of "*restitution* of property and benefits, in which they have a vested ownership interest, that were unfairly and/or unlawfully obtained by Defendants." Compl. ¶ 165 (emphasis added). As a basis for such request of restitution, Plaintiffs allege that Defendants' unfair and unlawful business practices, which are set forth in detail in the Complaint, "deprive[] Plaintiffs of their legal rights in and to the subsurface real property and withhold[] rents from the Plaintiffs who are the lawful owners of that property." *Id*. ¶ 162. These allegations are crystal clear: Plaintiffs seek nothing but restitution, such as rents in which they have a vested ownership interest, and injunctive relief. *Id*.

Nor does Defendants' argument have any support in case law. As an initial matter, "in the context of the UCL, 'restitution' is limited to the return of property or funds in which the plaintiff has an ownership interest (or is claiming through someone with an ownership interest)." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (2005). Cases cited by Defendants recognize that restitution damages for profits and benefits are recoverable under the UCL: "under the UCL, 'an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest.'" *Quigley v. Am. Claims Servs., Inc.*, No. 13-cv-1766-KJM-EFB, 2015 WL 1258563, at *6 (E.D. Cal. Mar. 18, 2015) (quoting *Korea Supply*, 29 Cal. 4th at 1148); *see also Luxpro Corp. v. Apple Inc.*, No. C 10-3058 JSW, 2011 WL 3566616, at *7 (N.D. Cal. Aug. 12, 2011) ("disgorgement of profits is allowed in Section 17200 claims only to the extent it constitutes restitution, *i.e.*, profits unfairly obtained to the extent they represent money in which the plaintiff has an ownership interest") (citing *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 699 (2006) (a plaintiff can seek money or property as restitution where such "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession") (citation

1  omitted)).

2      Simply put, Plaintiffs can recover restitution damages for benefits and profits

3  under the UCL as long as Plaintiffs can prove an ownership interest in the benefits

4  or profits. Such tracing proof, of course, is not required at the pleading stage, despite

5  Defendants' citation to *Quigley*, where the Eastern District of California granted

6  *summary judgment* finding that the plaintiff was not entitled to restitution under the

7  UCL because she "presented no evidence of an ownership interest" in any of the

8  funds she was seeking to recover from the defendants. 2015 WL 1258563, at *6; *see*

9  *also* Docs. 107-1 at 11-12 & 108-1 at 10. At this stage, Plaintiffs have properly pled

10  a claim for restitution damages and are required to do no more. *See Twombly*, 550

11  U.S. at 555 (the court must, at the pleading stage, "assum[e] that all the allegations

12  in the complaint are true (even if doubtful in fact)").

13      Stepping outside Plaintiffs' pleading, both Defendants argue that Plaintiffs'

14  restitution request amounts to nonrestitutionary disgorgement. *See* Docs. 107-1 at

15  11-12 & 108-1 at 10. Citing its rent payments to Union Pacific, Kinder Morgan

16  contends that Plaintiffs' request for "property and benefits" constitutes

17  nonrestitutionary disgorgement because Plaintiffs could only recover from Kinder

18  Morgan's gain, not the replacement of money or property. *See* Doc. 108-1 at 10.

19  Kinder Morgan ignores, however, the obvious fact that its wrongful conduct is

20  depriving Plaintiffs of their land and thus gives rise to a UCL claim, under which

21  Plaintiffs are entitled to recover. *See Korea Supply*, 29 Cal. 4th at 1149 ("restitution

22  is broad enough to allow a plaintiff to recover money or property in which he or she

23  has a vested interest."); *see also Juarez v. Arcadia Fin., Ltd.*, 152 Cal. App. 4th 889,

24  915 (2007) (same). Because Plaintiffs are entitled to recover the benefits of their real

25  property from Kinder Morgan, in addition to other restitutionary relief that will

26  likely be ascertained in discovery, Kinder Morgan's Motion regarding Plaintiffs'

27  UCL claim should be denied.

28      As for Union Pacific, it argues Plaintiffs are seeking nonrestitutionary

disgorgement because "Plaintiffs are not seeking return of money they allegedly paid for the subsurface rights of land at issue." Doc. 107-1 at 12. Union Pacific's faulty rationale disregards half the test set forth by the California Supreme Court. In *Korea Supply*, the California Supreme Court explained that "[t]he concept of restoration or restitution, as used in the UCL, is *not limited only* to the return of money or property that was once in the possession of that person." 29 Cal. 4th at 1149 (citing *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2000)). "Instead, restitution is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest." *Id.* In fact, both the Ninth Circuit and California Supreme Court hold that "[r]estitution in the UCL context . . . includes restoring money or property that was *not necessarily in the plaintiff's possession*." *Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718, 733 (9th Cir. 2007) (emphasis added) (citing *Juarez*, 152 Cal. App. 4th at 915 (citing *Korea Supply*, 29 Cal. 4th at 1149)). By arguing that Plaintiffs are not seeking the return of money paid for the subsurface, and by implying that Union Pacific has nothing to return to Plaintiffs, Union Pacific ignores Plaintiffs' clear allegations of their property interest in their land and impermissibly limits the holding in *Korea Supply*. Union Pacific took Plaintiffs' property and leased it to Kinder Morgan. Under *Korea Supply*, Plaintiffs have a vested property ownership interest in rent payments collected for the use of their land in addition to the return of their real property. *See People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 135 (2003) (holding that plaintiffs may recover unauthorized rents under the UCL).

Further, as far as a "vested interest" is concerned, Union Pacific argues Plaintiffs do not allege "that they expected to secure similar lease agreements or to profit from the transport of petroleum products." *See* Doc. 107-1 at 12. But Union Pacific relies upon cases involving lost expectancy interests, such as lost business opportunities. Doc. 107-1 at 11-12 (citing *Korea Supply*, 29 Cal. 4th 1134) (plaintiff's UCL action related to a lost business opportunity); *Luxpro Corp.*, 2011

WL 3566616 (same); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176 (S.D. Cal. 2012) (counter-plaintiff claimed lost business value, including lost profits, due to lost business opportunities); *Couch v. Morgan Stanley & Co. Inc.*, No. 14-CV-0010, 2014 WL 1577463 (E.D. Cal. Apr. 18, 2014) (plaintiff was seeking to recover future bonuses)). Union Pacific's authority is distinguishable considering Plaintiffs are fee owners of the land Union Pacific rented. *See Kennedy*, 111 Cal. App. 4th at 135 (following *Korea Supply* and affirming an award of unauthorized rents as remedy for a UCL claim).

For example, in *Korea Supply*, a plaintiff who alleged a lost business opportunity due to the unfair practices of a competitor sought to obtain disgorgement of the competitor's profits. 29 Cal. 4th at 1140. The plaintiff alleged that the defendant's unfair business practices caused a company the plaintiff represented to lose a contract with the Republic of Korea. *Id.* When the Republic of Korea awarded the contract to the defendant, the plaintiff lost the opportunity to obtain a commission it would have earned if the Republic of Korea had awarded the contract to the plaintiff's client. *Id.* The plaintiff then sought to obtain the profits the defendant gained from the contract with the Republic of Korea. *Id.* The California Supreme Court held that the plaintiff was not entitled to disgorgement of the defendant's profits under the UCL because the profits were neither money taken from the plaintiff nor funds in which the plaintiff had an ownership interest. *Id.* at 1149-50. Thus, the plaintiff's requested remedy was nonrestitutionary. *Id.* at 1140, 1149. The Court noted that "it [was] clear that plaintiff [was] not seeking the return of money or property that was once in its possession. [The plaintiff had] not given any money to [the defendant]; instead it was from the Republic of Korea that [the defendant] received its profits." *Id.* In light of these facts, the Court found that "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff." *Id.*

Unlike the facts in *Korea Supply*, where one business lost the opportunity to conduct business due to a different business's misconduct, Plaintiffs are entitled to the use and enjoyment of their land. As alleged in the Complaint, however, Union Pacific sold Plaintiffs' land rights to Kinder Morgan in exchange for rent payments. Compl. ¶ 57. Plaintiffs' UCL claim is not seeking disgorgement of Union Pacific's profits relating to other agreements Union Pacific may have with Kinder Morgan or other pipeline companies. *See id.* ¶¶ 162-65. Rather, Plaintiffs' UCL claim is seeking restitution of benefits and property traceable from Union Pacific's unauthorized collection of rent from the use of Plaintiffs' property. Because restitution tied to Defendants' unlawful conduct is recoverable under the UCL, Defendants' Motions regarding the UCL claim should be denied. *See, e.g.*, *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007) (following *Korea Supply* and holding that plaintiffs may recover restitution under the UCL so long as they can prove that their injury is traceable to defendants' misconduct); *Trew v. Volvo Cars of N. Am., LLC*, No. CIV-S-051379 DFLPAN, 2006 WL 306904, at *3 (E.D. Cal. Feb. 8, 2006) (denying a motion to dismiss a UCL claim because if, through car dealerships, car manufacturers "profited from class members who replace defective [parts] by purchasing new ones, then [class members] could recover that money from [manufacturers] under a theory of restitution").

**2. Kinder Morgan's Motion to Strike Should Be Denied as Procedurally Defective and Substantively Meritless**

As a matter of procedure, Kinder Morgan's motion to strike is a disguised attempt to seek dismissal of the UCL claim under Rule 12(b)(6). As the Ninth Circuit explained in *Whittlestone, Inc.*, were litigants allowed to use Rule 12(f) "as a means to dismiss some or all of a pleading," courts "would be creating redundancies within the Federal Rules of Civil Procedure because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves

such a purpose." 618 F.3d at 974. Such redundancies are not only unnecessary but also improper because a ruling on a Rule 12(b)(6) motion is subject to a *de novo* review while a ruling on a Rule 12(f) motion is subject to an abuse-of-discretion review. *Id.* Accordingly, "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Id.* at 974-75. For this reason alone, the Court should, as it did in *In re Toyota Motor Unintended Acceleration Marketing, Sales Practices, & Products Liability Litig.*, deny Kinder Morgan's motion to strike. *See* 754 F. Supp. 2d 1145, 1195 (C.D. Cal. 2010) (quoting *Whittlestone*, 618 F.3d at 971).

In any event, Kinder Morgan's motion to strike is without merit. In a failure to meet its burden to establish the applicability of Rule 12(f), *see Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1043 (C.D. Cal. 2002) (allocating the burden of proof to the movant under Rule 12(f)), Kinder Morgan does not even attempt to explain why Plaintiffs' request for restitution under the UCL constitutes a "redundant, immaterial, impertinent, or scandalous matter" within the meaning of Rule 12(f). *See* Doc. 108-1 at 11. In fact, Kinder Morgan cannot do so because, as discussed above, Plaintiffs' request for restitution falls squarely within the remedies permitted under the UCL and *Korea Supply*. *See also Whittlestone*, 618 F.3d at 974 (reversing an order striking plaintiff's claim for lost profits and consequential damages because they were not "redundant," "immaterial," "impertinent," or "scandalous"). Nor does Kinder Morgan show any prejudice by identifying any "expenditure of time and money that must arise from litigating spurious issues." *See id.* at 973. Because Rule 12(f)'s requirements are not met, the Court should deny Kinder Morgan's motion to strike Plaintiffs' request for restitution under the UCL.

Arguing the contrary, Kinder Morgan relies on a single district court decision, *Lovesy v. Armed Forces Benefit Association*, which was decided two years before *Whittlestone*. No. C 07-2745 SBA, 2008 WL 696991 (N.D. Cal. Mar. 13, 2008).

1  Even if *Lovesy* remains good law post-*Whittlestone*, *Lovesy* is distinguishable
2  because the court in *Lovesy* struck a request for "damages," which are indisputably
3  unavailable under the UCL. *Id*. at *6. In contrast, Plaintiffs here clearly request only
4  "restitution." Compl. ¶ 165. Kinder Morgan's reliance on *Lovesy* (which, notably,
5  actually denied a motion to dismiss the UCL claim) is thus misplaced. Kinder
6  Morgan's Motion must be denied.

7  **E.    Plaintiffs' Accounting Claim is Properly Pled**

8       Seeking dismissal of Plaintiffs' accounting claim, Defendants raise two
9  meritless arguments: (1) the dominant-servient estate relationship is insufficient to
10 support an accounting claim and (2) Plaintiffs allegedly do not assert why the
11 amounts owed to Plaintiffs must be ascertained through an accounting. *See* Docs.
12 107-1 at 13-15 & 108-1 at 11-12. Neither of Defendants' arguments preclude
13 Plaintiffs' claim for an accounting.

14      In regard to Plaintiffs' relationship, Plaintiffs allege that their land is
15 burdened by Union Pacific's surface easement for railroad purposes only. Compl. ¶
16 52. In a recent complaint for rescission against Union Pacific, Kinder Morgan
17 insinuates that it has prescriptive easements through Plaintiffs' property. *See SFPP,*
18 *L.P. v. Union Pac. R.R. Co., et al.*, No. BC 584518 (Sup. Ct. Los Angeles Cnty.
19 June 8, 2015), Complaint for Rescission, Restitution, Unjust Enrichment, Damages,
20 and Declaratory Relief at ¶ 30. To the extent Defendants possess or claim to possess
21 easements, Plaintiffs are the owners of the servient estates burdened by these
22 easements. Under California law, "[e]very easement includes the right to do such
23 things that are necessary for the full enjoyment of the easement itself. But this right
24 must be exercised in such a reasonable manner as to not injuriously increase the
25 burden on the servient estate." *Red Mountain, LLC v. Fallbrook Public Utility Dist.*,
26 143 Cal. App. 4th 333, 362 (2006). The nature of the relationship between the owner
27 of a dominant estate and the owner of the servient estate is the type of "special
28 relationship" that merits an accounting.

1        Moreover, there is precedent for a servient estate to receive an accounting

2 from a dominant estate as to benefits it has obtained from use of the servient estate.

3 *Frye v. Sibbitt*, 145 Neb. 600, 604 (1945). There is, likewise, authority under

4 California law for seeking an accounting for profits obtained by a trespassing

5 defendant for wrongful use of the subsurface mineral rights of a plaintiff's real

6 property. *See McPherson v. Empire Gas & Fuel Co*., 122 Cal. App. 466, 468 (1932)

7 (overturning judgment for the plaintiffs on technicality that the defendant was not a

8 trespasser under the terms of the lease agreement). Also, there is support for an

9 accounting with respect to unpaid rents. *Old Republic Ins. Co. v. Superior Court*, 66

10 Cal. App. 4th 128, 136, n. 14 (1998). Indeed, California cases regarding claims for

11 accounting focus not solely upon the nature of the parties' relationship, but upon the

12 complexity of the financial accounts or dealings between them. *See, e.g.*, *White v.

13 Lyons*, 42 Cal. 279, 280 (1871).

14        Here, Plaintiffs allege that Defendants have wrongfully obtained benefits

15 from the unlawful use of Plaintiffs' land for nearly six decades. Compl. ¶¶ 144, 148,

16 151, 155, 157, 167 & 171. Plaintiffs allege that Defendants were initially affiliated

17 companies, and that the negotiated rent payments were not the result of arm's-length

18 transactions. *Id.* ¶¶ 27-30 & 37. Plaintiffs allege Defendants have been enriched by

19 the collection of rents, in the railroad's case, but also by the pipeline companies'

20 "developing a commanding share of the oil and gas market through the use and

21 occupancy of the pipeline." *Id.* ¶ 173; *see also id.* ¶¶ 56 & 151-154. Plaintiffs further

22 allege that Defendants avoided the costs and obligations of legally acquiring the

23 rights to the use of the subject properties. *Id.* ¶¶ 56, 150, 153 & 174. Not only is the

24 nature of the benefits obtained by Defendants not easily susceptible to calculation,

25 Plaintiffs have alleged that Defendants concealed their conduct (including their

26 profits) from Plaintiffs. *Id.* ¶¶ 67 & 175. Accordingly, Plaintiffs have adequately

27 pled a claim for accounting.

28        A plaintiff properly states a claim for accounting under California law where

she alleges that she is the lawful owner of real property who seeks "an accounting of all rents, issues and profits" received by the defendant with respect to the use of the property. *Peninsula Props. Co. v. Cnty. of Santa Cruz*, 34 Cal. 2d 626, 629 (1950). Where a plaintiff seeks specific performance of a contract for the sale of real estate, as well as the proceeds of the wrongful sale of crops and lands, a cause of action for accounting is incidental to the property-based "real cause of action." *Grocers' Fruit Growing Union v. Kern Cnty. Land Co.*, 150 Cal. 466, 473 (1907).

**F.     Alternatively, Plaintiffs Request Leave to Amend**

For all the reasons described above, Plaintiffs' Complaint is supported with the requisite factual allegations showing that they have a plausible chance of success on their claims. Nonetheless, should the Court believe that Plaintiffs' Complaint is somehow deficient, the appropriate remedy is to afford Plaintiffs time to file a Motion for Leave to Amend their Complaint to cure any deficiencies identified by the Court.

**IV.     CONCLUSION**

Defendants' Motions to Dismiss (Docs. 107 & 108) are without merit. Accordingly, Plaintiffs respectfully request that this Court deny Defendants' Motions. Alternatively, Plaintiffs request leave to amend their Complaint. Plaintiffs further respectfully request all other relief that the Court deems just and proper.

DATED: December 28, 2015                    Respectfully submitted,

/s/ Norman E. Siegel

Norman E. Siegel (admitted *pro hac vice*)                    Thomas S. Stewart (admitted *pro hac vice*)

Barrett J. Vahle (admitted *pro hac vice*)                    Elizabeth G. McCulley

Ethan M. Lange (admitted *pro hac vice*)                    (*pro hac vice forthcoming*)

STUEVE SIEGEL HANSON LLP                    STEWART, WALD & MCCULLEY, LLC

460 Nichols Road, Suite 200                    9200 Ward Parkway, Suite 550

Kansas City, Missouri 64112                    Kansas City, Missouri 64114

Phone: (816) 714-7100                    Phone: (816) 303-1500

Fax: (816) 714-7101                    Fax: (816) 527-8068

*siegel@stuevesiegel.com*                    *stewart@swm.legal*

*vahle@stuevesiegel.com*                    *mcculley@swm.legal*

*lange@stuevesiegel.com*

CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

1 | Jason S. Hartley
2 | STUEVE SIEGEL HANSON LLP
  | 550 West C Street, Suite 1750
3 | San Diego, CA 92101
  | Phone: (619) 400-5822
4 | Fax: (619) 400-5832
5 | *hartley@stuevesiegel.com*

Steven M. Wald
(*pro hac vice forthcoming*)
STEWART, WALD & McCULLEY, LLC
100 North Broadway, Suite 1580
St. Louis, Missouri 63102
Phone: (314) 720-6190
Fax: (314) 899-2925
*wald@swm.legal*

6 | ***Plaintiffs Interim Co-Lead Class Counsel***

7
8 | John W. Cowden
  | (admitted *pro hac vice*)
9 | Angela M. Higgins
  | (admitted *pro hac vice*)
10 | BAKER STERCHI COWDEN & RICE, L.L.C.
   | 2400 Pershing Road, Suite 500
11 | Kansas City, MO 64108
   | Phone: (816) 471-2121
12 | Fax: (816) 472-0288
13 | *cowden@bscr-law.com*
   | *higgins@bscr-law.com*
14
15 | J. Robert Sears (admitted *pro hac vice*)
   | BAKER STERCHI COWDEN & RICE, L.L.C.
16 | 1010 Market Street, Suite 950
   | St. Louis, MO 63101
17 | Phone: (314) 231-2925
   | Fax: (314) 231-4857
18 | *sears@bscr-law.com*
   | *tinsley@bscr-law.com*
19
20 | Andrew G. Giacomini
   | John T. Cu
21 | HANSON BRIDGETT LLP
   | 425 Market Street, 26th Floor
22 | San Francisco, California 94105
   | Phone: (415) 777-3200
23 | Fax: (415) 541-9366
24 | *agiacomini@hansonbridgett.com*
   | *jcu@hansonbridgett.com*

Robert Ahdoot
Tina Wolfson
Theodore W. Maya
Bradley K. King
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, California 90069
Phone: (310) 474-9111
Fax: (310) 474-8585
*rahdoot@ahdootwolfson.com*
*twolfson@ahdootwolfson.com*
*tmaya@ahdootwolfson.com*
*bking@ahdootwolfson.com*

Francis A. Bottini, Jr.
Albert Y. Chang
Yury A. Kolesnikov
BOTTINI & BOTTINI, INC.
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Phone: (858) 914-2001
Fax: (858) 914-2002
*fbottini@bottinilaw.com*
*achang@bottinilaw.com*
*ykolesnikov@bottinilaw.com*

25 | ***Additional Plaintiffs' Counsel***
26
27
28