1
Joseph Rebein, Admitted *Pro Hac Vice*
SHOOK, HARDY & BACON L.L.P.
2
2555 Grand Boulevard
Kansas City, Missouri 64108
3
Telephone: 816.474.6550
Facsimile: 816.421.5547
4
jrebein@shb.com

5
Tammy B. Webb, SBN 227593
John K. Sherk III, SBN 295838
6
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2700
7
San Francisco, California 94104
Telephone:  415-544-1900
8
Facsimile:   415-391-0281
tbwebb@shb.com
9
jsherk@shb.com

10
*Attorneys for Defendant*
Union Pacific Railroad Company

11

12                    UNITED STATES DISTRICT COURT

13                    CENTRAL DISTRICT OF CALIFORNIA

14

| In re SFPP Right-of-Way Claims | Case No. 8:15-cv-00718-JVS-DFM |
| --- | --- |
| | **DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED COMPLAINT** |
| | Date:        January 21, 2016<br>Time:        8:00 a.m.<br>Dept.:       Courtroom 10C – Santa Ana<br>Judge:       Hon. James V. Selna |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

ARGUMENT ..................................................................................................... 1

I. Union Pacific Has Not Injected Factual And Evidentiary Issues, Nor Should The Court Convert The Motion Into A Motion For Summary Judgment ...................... 1

II. Plaintiffs Lack Standing To Bring This Action Because They Fail To Adequately Invoke Or Plead Their Sole Basis For Article III Standing. ................................... 3

III. Plaintiffs' Inverse Condemnation Claims Should Be Dismissed. ........................ 6

IV. Plaintiffs' Accounting Claim Should Be Dismissed. ....................................... 9

V. Plaintiffs' UCL Claim Should Be Dismissed Regardless Of What Their Alleged Vested Interest Actually Is. ........................................................................... 10

VI. Plaintiffs' Quiet Title And Ejectment Claims Should Be Dismissed. ............... 12

CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Cent. Pacific Homeloans, Inc.*,
  No. 11-00100, 2011 WL 3439939 (D. Haw. Aug. 8, 2011) ..............................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................4, 10

*Bailey v. Outdoor Media Grp.*,
  155 Cal. App. 4th 778 (2007) ...........................................................................12

*Baker v. Burbank-Glendale-Pasadena Airport Authority* ............................................8

*Baugh v. Consumers Assocs., Ltd.*,
  241 Cal. App. 2d 672 (1966) .............................................................................12

*Breidert v. S. Pac. Co.*,
  61 Cal. 2d 659 (1964) .........................................................................................8

*City of Manhattan Beach v. Superior Court*,
  13 Cal. 4th 232 (1996) ........................................................................................8

*Delino v. Platinum Cmty.* Bank, 628 F. Supp.
2d 1226, 1237 (S.D. Cal. 2009) .........................................................................12

*Faus v. Nelson*,
  241 Cal. App. 2d 320 (1966) ...........................................................................4, 5

*Flowers v. Wells Fargo Bank, N.A.*,
  No. C-11-1315-PJH, 2011 WL 2748650 (N.D. Cal. July 13, 2011)....................9

*Fuzzysharp Techs. Inc. v. Nividia Corp.*,
  No. 12-CV-06375-JST, 2013 WL 4766877 (N.D. Cal. Sept. 4, 2013)..............13

*Kenneth Mebane Ranches v. Superior Court*,
  10 Cal. App. 4th 276 (1992) ...............................................................................6

*Kunza v. Gaskell*,
  91 Cal. App. 3d 201 (1979) (quotation omitted; citing cases, including
  *Millyard v. Faus*, 268 Cal. App. 2d 76, 82 (1968))..........................................12

*McPherson v. Empire Gas & Fuel Co.*
  122 Cal. App. 466 (1932) ....................................................................................9

*Millyard v. Faus,*
    268 Cal. App. 2d 76 (1968) ...........................................................................4, 5

*Neff v. Ernst,*
    48 Cal. 2d 628 (1957) ...................................................................................5

*Old Republic Ins. Co. v. Superior Court*
    66 Cal. App. 4th 128 (1998) .........................................................................9

*Oracle Am., Inc. v. Serv. Key, LLC,*
    No. 12-00790, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) ...........................10

*Pacific Bell Telephone Co. v. Southern California Edison Co.,*
    208 Cal. App. 4th 1400 (2012) .....................................................................7

*Patel v. Southern Pacific Water Co.,*
    97 Cal. App. 4th 841, 843-44 (2002).........................................................6, 8

*Peninsula Props. Co. v. Cnty. of Santa Cruz*
    34 Cal. 2d 626 (1950) .............................................................................9, 10

*Regan v. Qwest Commc'n Intern., Inc.,*
    No. 2:01-766, 2010 WL 3941471 (E.D. Cal. 2010)...........................................3

*Rhynes v. Stryker Corp.,*
    No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ......................11

*Roeder Co. v. Burlington N., Inc.,*
    716 P.2d 855 (Wash. 1986) ..........................................................................5

*Sammamish Homeowners v. Cnty. of King,*
    No. C15-284-MJP, 2015 WL 3561533 (W.D. Wash. June 5, 2015) ..............3, 6

*Starrh & Starrh Cotton Growers v. Aera Energy LLC,*
    153 Cal. App. 4th 583 (2007).......................................................................12

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003) .......................................................................2

**STATUTES**

Cal. Pub. Util. Code § 611 .................................................................................7, 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) ........................................................................ 2

Fed. R. Civ. P. 12(d) .........................................................................2, 3

Rule 12(b)(6) and Rule 12(c)............................................................... 2

Rule 56 ...................................................................................................... 3

## INTRODUCTION

Union Pacific Railroad Company submits its Reply Brief in response to Plaintiffs' Consolidated Opposition ("Pls.' Consol. Opp'n") and in further support of its Motion to Dismiss (Doc. #107). As previously explained, the Court should dismiss Plaintiffs' Consolidated Complaint on standing grounds or, alternatively, dismiss certain causes of action. Plaintiffs' Consolidated Opposition reaffirms why the Court should dismiss these cases on standing grounds: Without the benefit of the centerline presumption, Plaintiffs are unable to establish any ownership interest to the subsurface of Union Pacific's operating right-of-way, and therefore cannot plead an actual or even threated "injury in fact" sufficient to establish Article III standing. Alternatively, the Court should dismiss Counts III, IV, V, VII, and VIII with prejudice and without leave to amend, as these claims fail as a matter of law and/or have not been pleaded sufficiently.

## ARGUMENT

## I. Union Pacific Has Not Injected Factual and Evidentiary Issues, Nor Should the Court Convert the Motion into a Motion for Summary Judgment

Plaintiffs seek to represent "all landowners who own or have owned land in fee adjoining and underlying the railroad easement under which the pipeline is located within the State of California," *see* Pls.' Consol. Compl. ¶ 69. Plaintiffs concede that they must ultimately show, on an individual basis, ownership in the subsurface right-of-way by either: (1) relying on the centerline presumption or (2) chain of title evidence. Pls.' Consol. Opp'n. at 6. Despite this concession, Plaintiffs accuse Defendants of "inject[ing] factual and evidentiary issues well beyond the scope of a motion to dismiss," because Union Pacific argues that Plaintiffs are required to allege or attach evidence of their chains of title to their pleadings. *See id.* at 4. In essence, Plaintiffs invite the Court to sidestep threshold constitutional issues, ignore that Plaintiffs have failed to plead sufficient facts that would entitle them to any interest to the subsurface of Union Pacific's railroad right-of-way, and ultimately allow Plaintiffs

to conduct burdensome discovery on an issue Plaintiffs have not even sufficiently alleged.

As an initial matter, Union Pacific has not raised any factual or evidentiary issues that are not alleged or necessarily embraced by Plaintiffs' Consolidated Complaint. Rather, Union Pacific argues that Plaintiffs fail to plead sufficient facts that would entitle them to any interest to the subsurface of Union Pacific's right-of-way, and further, that Plaintiffs cannot avail themselves of the centerline presumption. U.P. Br. at 1-2. Plaintiffs ignore or misunderstand that Union Pacific raises these Article III standing arguments through Fed. R. Civ. P. 12(b)(1), consistent with Ninth Circuit precedent. As previously explained, Ninth Circuit precedent holds that standing arguments are properly raised in a Rule 12(b)(1) motion to dismiss: "It is appropriate to address the question of standing in deciding a motion to dismiss because '[t]he elements of standing are 'an indispensable part of the plaintiff's case,' and accordingly must be supported at each stage of the litigation in the same manner as any other essential element of the case.'" *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (citation omitted).

The only "factual and evidentiary issues" Plaintiffs accuse Union Pacific of injecting relate solely to Plaintiffs' failure to establish or allege the deeds necessary to support chain of title. However, in doing so, Union Pacific has not presented extrinsic materials nor has it asked the Court to rely on any, making conversion of the motion to dismiss into one for summary judgment improper. *See* Fed. R. Civ. P. 12(d) (only if court decides to consider extrinsic materials, should the motion be converted to a motion for summary judgment). Moreover, Plaintiffs' suggestion that the motion to dismiss be converted to a motion for summary judgment is inconsistent with the terms of Rule 12(d), which provide a mechanism for converting Rule 12(b)(6) and Rule 12(c) motions, but not for Rule 12(b)(1) motions. Fed. R. Civ. P. 12(d) ("If, on a motion *under Rule 12(b)(6) or 12(c),* matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary

1    judgment under Rule 56.") (emphasis added).[1]

2    Finally, Plaintiffs posit that the centerline presumption is an evidentiary rule

3    and that evidentiary standards or presumptions should not be applied at the pleading

4    stage. Pls.' Opp'n. at 5 (citing *Lauter v. Anoufrieva*, 642 F.Supp.2d 1060, 1085 n.33

5    (C.D. Cal. 2008) and *Albizio v. Wachovia Mortg.*, No. 2:11-CV-02991-KJN, 2012 WL

6    1413996, at *9 (E.D. Cal. Apr. 20, 2012)). These cases are readily distinguishable as

7    they involved defendants who invoked statutory and other presumptions as reasons to

8    grant motions to dismiss. Here, in contrast, Plaintiffs are the ones who rely on the

9    presumption in order to state a cause of action because, as they readily concede, that is

10   but one of only two methods in which they can try and create an ownership interest in

11   the subsurface of Union Pacific's right-of-way. Pls.' Consol. Opp'n. at 6

12   (acknowledging that to prove ownership they must rely on either the centerline

13   presumption or chain of title).

14   In sum, there is nothing in Union Pacific's papers that would require the Court

15   to convert the motion to dismiss into a motion for summary judgment or otherwise

16   defer resolution of the motion.

17   **II.    Plaintiffs Lack Standing to Bring this Action Because They Fail To**
18   **Adequately Invoke or Plead Their Sole Basis for Article III Standing.**

19   There is no dispute that absent an ownership interest in the subsurface of Union

20   Pacific's operating right-of-way, Plaintiffs lack Article III standing to challenge Union

21   Pacific's rights to the same property. *See, e.g.*, *Regan v. Qwest Commc'n Intern., Inc.*,

22   No. 2:01-766, 2010 WL 3941471, at *7 (E.D. Cal. 2010) (proof of ownership in

23   subject property required for standing); *see also Sammamish Homeowners v. Cnty. of*

24   *King*, No. C15-284-MJP, 2015 WL 3561533, at *2-3 (W.D. Wash. June 5, 2015)

25   (Plaintiffs lacked Article III standing because their alleged property interest in railroad

26   ─────────────

27   [1] Although Union Pacific also seeks dismissal under Rule 12(b)(6) on the grounds that certain causes of action were insufficiently pled or precluded by applicable California law, Plaintiffs have not identified any factual disputes in connection with the Rule
28   12(b)(6) motion that would require a Rule 12(d) conversion.

corridor was insufficient). Plaintiffs acknowledge that their ownership interests depend on either the centerline presumption or chain of title evidence, but argue that dismissal is not warranted because they have pled "facts" that give rise to a reasonable inference that they have an ownership interest in the subsurface of the right-of-way. For example, Plaintiffs say they have "allege[d] the history of the Congressional acts and the nature of the rights given (and not given) to the railroads under those acts." *See* Pls.' Consol. Opp'n at 3 (citing Pls.' Consol. Compl. ¶¶ 12-55). But merely arguing that Union Pacific does not have certain rights does not somehow give Plaintiffs those same rights. These so-called "facts" are nothing more than unsubstantiated "legal conclusion[s] couched as factual allegations[,]" and the Court should not accept them as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ultimately, Plaintiffs concede that they must show, on an individual basis, ownership in the subsurface right-of-way by either: (1) relying on the centerline presumption or (2) chain of title evidence. Pls.' Consol. Opp'n. at 6. However, neither of these two avenues is available to Plaintiffs based upon their Consolidated Complaint.

First, the centerline presumption does not automatically apply simply because property is located adjacent to a right-of-way. *See Millyard v. Faus*, 268 Cal. App. 2d 76, 83 (1968) ("[m]erely because a property abuts any railway easement does not . . . give rise to a presumption that they own to the center of the easement."); *see also Faus v. Nelson*, 241 Cal. App. 2d 320, 324 (1966) (noting that centerline presumption, which was developed for road and highway easements, also applies to railroad corridor created by means of an easement). More importantly, Plaintiffs are not entitled to rely on the centerline presumption because they have not alleged, much less shown, that the initial grantor of their properties owned the fee underlying Union Pacific's right-of-way. As Union Pacific previously explained:

> The presumption that the grantor intended to convey title to the center of the right of way is inapplicable where the adjoining landowner presents

no evidence of having received his or her property from the owner of the right of way. A property owner receives no interest in a railroad right of way simply through ownership of abutting land.

U.P. Br. at 4-5; *Roeder Co. v. Burlington N., Inc.*, 716 P.2d 855, 862 (Wash. 1986) (en banc)). Stated differently, the centerline presumption is applicable only if the adjacent landowner can trace title to the owner of the fee underlying that right-of-way. *See id.* at 862 ("[T]o say that a person acquiring title to an abutting lot thereby acquires a fee in the [right of way], even though his grantor could not have conveyed such fee, would have the effect of taking property from one owner and giving it to another.") (quoting *Standard Oil Co. v. Milner*, 152 So.2d 431 (Ala. 1962)).

Nor are Plaintiffs entitled to the centerline presumption simply because Plaintiffs contend their deeds do not contain metes and bounds descriptions. In this regard, the authority relied upon by Plaintiffs simply reflects that the rule creates a presumption and that when a right-of-way is used as a boundary marker in a deed, the grantor is intended to have conveyed the property extending to the centerline of the right-of-way. *See, e.g.*, *Faus*, 241 Cal. App. 2d 320; *Neff v. Ernst*, 48 Cal. 2d 628, 635 (1957). Critically, however, this very same authority recognizes that the centerline presumption can *only* be applied where the grantor owns or has rights to the monument designated in the deed. *Faus*, 241 Cal. App. at 324 ("A private grant is to be interpreted in favor of the grantee, and, *if the grantor is the owner of the monument or boundary designated in his grant, his conveyance will be held to extend to the middle line or central point of such monument or boundary*.") (emphasis added; quoting *Freeman v. Bellegarde*, 108 Cal. 179, 184-85 (1895)).

Here, Plaintiffs cannot claim the benefit of the centerline presumption because they make no allegations in their Consolidated Complaint establishing their title back to the original grantor of the property. The deeds submitted also are insufficient for that purpose or as chain of title evidence. In short, Plaintiffs are unable to properly allege *facts* that, even if accepted as true, would entitle them to pursue any ownership interest in the subsurface of Union Pacific's operating right-of-way, and therefore

cannot plead an actual or even threated "injury in fact" sufficient to establish Article III standing. *See Sammamish Homeowners*, 2015 WL 3561533, at *2.

## III.  Plaintiffs' Inverse Condemnation Claims Should be Dismissed.

Plaintiffs fail to address the *Kenneth Mebane* case Union Pacific discusses at length. *See* U.P. Br. at 9. That case was dismissed, *on the pleadings*, because a condemnation action cannot proceed where the purpose for condemning land exceeds the scope of a party's eminent-domain power. *See Kenneth Mebane Ranches v. Superior Court*, 10 Cal. App. 4th 276 (1992). This is essentially the flaw present in Plaintiffs' allegations here—they seek to maintain an inverse-condemnation claim against Union Pacific yet at the same time fail to allege (and in fact dispute) that the purpose for condemning land falls within Union Pacific's eminent-domain power. The fact that the claim dismissed in *Kenneth Mebane* was one for condemnation, rather than inverse-condemnation, is of no consequence, as the two are functionally the same. *See* U.P. Br. at 10. The instant dispute should thus produce the same result: Plaintiffs' claim should be dismissed.

Instead of addressing *Kenneth Mebane*, Plaintiffs contend that "the most analogous case" is *Patel v. Southern Pacific Water Co.*, a case not dealing with a challenge to the sufficiency of a pleading (let alone one under federal pleading standards). *See* 97 Cal. App. 4th 841, 843-44 (2002). The defendant water company in *Patel* held power of eminent domain "to take private property for a variety of water-related activities." *Id.* at 844. The use challenged, however, did not fall within that umbrella, thus reducing the action to one for "trespass, not inverse condemnation." *Id.* at 846. In short, as Plaintiffs' opposition puts it:

> Because the water company did not have the power of eminent domain in this instance, ultimately, the court of appeal affirmed the trial court's finding that the private landowners could not maintain a claim for inverse condemnation against the water company.

Pls.' Consol. Opp'n at 14.

For the same reason, the inverse-condemnation claim against Union Pacific should be dismissed. Plaintiffs appear to argue that to dispose of this claim, Union Pacific would have to take the position that the pipeline easements are *not* for a railroad purpose. *See* Pls.' Consol. Opp'n at 14. On the contrary, the construction, operation, and maintenance of the pipeline *is* (and always has been) for a railroad purpose, and thus within the scope of its eminent-domain power. Plaintiffs must agree with that position in order to state their inverse-condemnation claim against Union Pacific. But they do not: Plaintiffs' Consolidated Complaint repeatedly disputes that the installation, maintenance, and use of the pipeline was for a railroad purpose. *See, e.g.*, Pls.' Consol. Compl., ¶¶ 63, 48, 83. These allegations should end the analysis, since they dispute that the very code section Plaintiffs rely upon to assert their inverse-condemnation claim applies to Plaintiffs' claims. *See* Cal. Pub. Util. Code § 611 (limiting railroad corporation's eminent-domain power to condemning "property necessary for the construction and maintenance of its railroad."). In short, Plaintiffs cannot maintain their contrary position on this issue and at the same time plausibly allege that Union Pacific had the power of eminent domain to condemn this property.

Finally, Plaintiffs argue that even if Union Pacific lacked authority to condemn their property, it should still be liable for inverse condemnation under a joint-actor theory purportedly established in *Pacific Bell Telephone Co. v. Southern California Edison Co.*, 208 Cal. App. 4th 1400, 1405 (2012). This argument also fails. The *Cal. Edison* case involved a single defendant that argued a privately owned public utility must jointly participate with a government entity to be subject to liability for inverse condemnation. *Id.* at 1404-05. The court rejected that argument, *id.*, but that is not the argument Union Pacific asserts here (indeed, Union Pacific's moving papers never argue that participation with a government entity is required, *see* U.P. Br. at 8). Instead, Union Pacific's argument is that it cannot be subject to liability for inverse condemnation when its eminent-domain power is strictly limited to a use Plaintiffs fail to allege.

Thus, Plaintiffs reliance on *Cal. Edison* is misplaced; the "joint" liability recognized there, as seen also by the case it relies on, relates to participation with a government entity. *See Breidert v. S. Pac. Co.*, 61 Cal. 2d 659, 662 (1964) (private entity could not escape liability because it jointly participated with the City of Los Angeles); *see also City of Manhattan Beach v. Superior Court*, 13 Cal. 4th 232, 266 (1996) (California Supreme Court subsequently describing its *Breidert* holding as finding that "a railroad can be liable in inverse condemnation when it acts alongside *the state* to cause an interest in land to be condemned"; emphasis added). Plaintiffs' stray reference to *Baker v. Burbank-Glendale-Pasadena Airport Authority* is likewise inapposite: the court was dealing there with a *government-owned* public entity and explained its leniency in allowing an inverse-condemnation claim to go forward by noting that what was necessary was "to show that the damage resulted from an exercise of *governmental power....*" 39 Cal. 3d 862, 865, 867 (1985). That situation is not present here, where the public utility is *privately owned*, as evidenced even by the *Patel* case, which Plaintiffs see as analogous. *See also* 7 Miller & Starr, Cal. Real Est. § 23:1 (4th ed. 2015) (property owners have no action for inverse condemnation "against a *private entity* that does not have the power of eminent domain"; emphasis added).

That defendant Kinder Morgan's eminent-domain power is defined differently does not change the fact that Union Pacific could not have condemned Plaintiffs' property if not for a railroad purpose. The *Patel* case supports this conclusion, too. The trial court in that case "determined that the actions of the water company *and wireless companies* constituted a 'mere trespass,' rather than acts sufficient to establish a claim for inverse condemnation[.]" *Patel*, 97 Cal. App. 4th at 844 (emphasis added). In affirming dismissal of the inverse-condemnation claim against the water company, the court remarked that it "need not decide" whether the wireless companies held eminent-domain power. *Id.* at 845. Such an inquiry was unnecessary because the answer would not have mattered: The water company's eminent-domain

power did not extend to the challenged property use, meaning that the plaintiffs could not maintain a claim for inverse condemnation against the water company. Accepting as true Plaintiffs' allegations that the easements challenged here lacked a railroad purpose, then the same conclusion reached in *Patel*, that an inverse-condemnation claim cannot be maintained, should be reached here.

In summary, Plaintiffs' allegations cite the correct code provision (Cal. Pub. Util. Code § 611), but they do not allege how that section possibly could apply. To maintain their inverse condemnation claim, they must allege, consistent with the confines of that code section, that Union Pacific could have condemned the property at issue as "necessary for the construction and maintenance of its railroad." *See id.* The claim otherwise should be dismissed.

## IV. Plaintiffs' Accounting Claim Should be Dismissed.

Plaintiffs do not dispute that, to state a cause of action for an accounting, they must set forth allegations of a fiduciary relationship (or other similar type). *See Flowers v. Wells Fargo Bank, N.A.*, No. C-11-1315-PJH, 2011 WL 2748650, at *7 (N.D. Cal. July 13, 2011) (citing *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179-80 (2009)). Instead, Plaintiffs contend the nature of the relationship between the owner of a dominant estate and the owner of the servient estate is the type of "special relationship" that supports an accounting claim under California law. Pls.' Consol. Opp'n at 22-23. Plaintiffs' argument is meritless.

In support of this "special relationship," Plaintiffs cite several inapposite California cases, none of which suggest, much less hold, that an accounting claim may arise under the circumstances alleged in this case. *McPherson v. Empire Gas & Fuel Co.*, was a civil case between two corporations involving rights under an oil and gas lease and the ultimate issue was whether a party can waive the right to declare forfeiture for breach of contract. 122 Cal. App. 466 (1932). *Old Republic Ins. Co. v. Superior Court*, involved an insurance coverage dispute between contracting parties. 66 Cal. App. 4th 128 (1998). And *Peninsula Props. Co. v. Cnty. of Santa Cruz*,

involved an action contesting the validity of tax deeds and a cross-action pursuant to the Revenue and Taxation Code, under which the State of California had the exclusive power to rent tax-deeded property and to receive all proceeds from such rentals through an accounting for rents and profits illegally obtained.  34 Cal. 2d 626 (1950). If anything, these cases show that a valid contractual agreement between the parties may create a sufficient relationship to support an accounting claim—an allegation that is noticeably missing in Plaintiffs' Consolidated Complaint.

While Plaintiffs generally allege that a "special relationship" exists between them and Union Pacific, *see* Pls.' Consol. Opp'n at 22-23; Pls.' Consol. Compl. ¶¶ 168-169, Plaintiffs have failed to identify any controlling or even persuasive California authority that would support an accounting claim under the alleged facts. Plaintiffs' allegations are therefore insufficient to establish the relationship necessary to state a cause of action for accounting. *See Anderson v. Cent. Pacific Homeloans, Inc.*, No. 11-00100, 2011 WL 3439939 (D. Haw. Aug. 8, 2011) ("Simply stating that Defendants 'breached their fiduciary duties to [Plaintiff],' is insufficient to establish the existence of a fiduciary duty."); *see also Oracle Am., Inc. v. Serv. Key, LLC*, No. 12-00790, 2012 WL 6019580, at *1, 11 (N.D. Cal. Dec. 3, 2012) (allegations that defendant took and distributed plaintiff's property without any agreement to do so failed to allege sufficient to withstand dismissal of accounting claim); *Iqbal*, 556 U.S. at 681 (allegations that are conclusory in nature are not entitled to be assumed true). Plaintiffs' accounting claim should be dismissed with prejudice.

## V.  Plaintiffs' UCL Claim Should Be Dismissed Regardless of What Their Alleged Vested Interest Actually Is.

Plaintiffs' UCL claim alleges that Union Pacific was required to provide compensation for their "use and occupancy" of Plaintiffs' alleged land through negotiated transactions with proposed class members or by condemnation. *See* Pls.' Consol. Compl.  ¶ 163. As a result, Union Pacific moved to dismiss this claim on the basis that Plaintiffs' request for rental payments and alleged ill-gotten monies

improperly seeks non-restitutionary disgorgement of funds attributable to lease agreements in which Plaintiffs have no vested interest. If the lease agreements are the focus of Plaintiffs' claimed vested interest, then that interest is contingent upon a number of uncertain assumptions, including that Plaintiffs would have (and would have been able to) secure similar lease agreements that Plaintiffs not only fail to allege but must know it would be futile to do so. It is far from the type of unconditional and absolute interest that qualifies for purposes of recovery of restitution under the UCL, and is closely analogous to the expectation interest found insufficient in *Korea Supply*, where the plaintiffs alleged a "vested" interest in securing a contract awarded to the defendant. Under this analysis, Plaintiffs' UCL claim should be dismissed for the same reasons detailed in Union Pacific's moving papers. *See* U.P. Br. at 11-13.

Plaintiffs' opposition implies a potential shift in what they consider their vested interest that may alter the Court's analysis but not the end result. Specifically, parts of Plaintiffs' opposition support the premise already addressed by Union Pacific—that the vested interest claimed is in the allegedly unlawful lease agreements. Plaintiffs claim, for example, a "vested ownership interest" in the rents Union Pacific charged. *See* Pls.' Consol. Opp'n at 16; *see similarly id.* at 18 ("Union Pacific took Plaintiffs' property and leased it to Kinder Morgan"). Yet other parts of Plaintiffs' opposition appear to refer to alleged interests in the land itself, and merely traceable interests to the alleged ill-gotten monies they seek. *See, e.g.*, *id.* at 20 ("Plaintiffs are entitled to use and enjoyment of their land."), 20, 16, 17 (all referring to tracing of funds to property). The actual claimed vested interest—whether in the lease agreements, or in the land itself supplemented by a tracing argument—is not made explicit, and it would be helpful if it were, but the result should be the same.

The reason this potential shift should not save their claim is simple. The UCL provides only equitable remedies, and a plaintiff seeking equitable relief must establish that there is no adequate remedy at law available. *See Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *3 (N.D. Cal. May 31, 2011) (citations

omitted). Yet the monetary relief Plaintiffs seek is available in the form of legal relief as an item of *damages* under their trespass claim. *See Bailey v. Outdoor Media Grp.,* 155 Cal. App. 4th 778, 787-88 (2007); *Starrh & Starrh Cotton Growers v. Aera Energy LLC*, 153 Cal. App. 4th 583, 603-06 (2007). Thus, here, where Plaintiffs' pleading concedes there is an adequate remedy at law, Plaintiffs' equitable claim fails no matter the claimed vested interest. In short, according to Plaintiffs, the claimed vested interest is either in the lease agreements or is in the land itself, or both; that is no better than having two seats on the Titanic. The claim fails under either analysis and should be dismissed.

## VI.   Plaintiffs' Quiet Title and Ejectment Claims Should be Dismissed.

"Few principles [in California] law are more 'fundamental (than) that a party who would quiet his title must prevail, if at all, on the strength of his own title and not on the weakness of the claims of an adversary.'" *Kunza v. Gaskell*, 91 Cal. App. 3d 201, 207 (1979) (quotation omitted; citing cases, including *Millyard v. Faus*, 268 Cal. App. 2d 76, 82 (1968)). As Union Pacific previously explained, to state a claim for both quiet title and ejectment plaintiffs must allege that they have title and the basis for said title. U.P. Br. at 7-8; *See Delino v. Platinum Cmty.* Bank, 628 F. Supp. 2d 1226, 1237 (S.D. Cal. 2009) (quiet title); 5 Witkins, Cal. Proc. 5th (2008) Pleading, § 635, pp. 67-68; *Baugh v. Consumers Assocs., Ltd.*, 241 Cal. App. 2d 672, 675 (1966) (ejectment).

Plaintiffs argue that they have sufficiently pled both claims, as they "specifically plead they 'are the fee title holders of the land under [Union Pacific's] right-of-way. . . .'" Pls.' Consol. Opp'n at 10. Yet Plaintiffs do not dispute that their claims are predicated entirely on their interpretation of a non-final, non-binding intermediate appellate decision by the California Court of Appeals in a case to determine the amount of rent Kinder Morgan should pay Union Pacific for its use of the railroad right-of-way. *See* Pls.' Consol. Opp'n at 3 ("A proper starting point to the question of ownership is the fact that California has conclusively determined that

Union Pacific had no legal right to construct or operate a pipeline in the subsurface of its rights-of-way with respect to lands granted under any federal Congressional Act.").[2] Thus, even assuming Plaintiffs' conclusory legal assertions are sufficient, Plaintiffs' claims in this case—and any supposed property interests—arise out of and necessarily depend upon a purported weakness in Union Pacific's interest in the subsurface of its right-of-way, rather than any allegations supporting the strength of Plaintiffs' title. No amount of discovery will change this failing, thus differentiating this case from the limited cases cited by Plaintiffs. *See* Pls.' Consol. Opp'n at 10-11. The Court should dismiss Plaintiffs' quiet title and ejectment claims with prejudice.

## CONCLUSION

For the reasons discussed above, and for those set forth in Union Pacific's Brief in Support of its Motion to Dismiss the Consolidated Complaint, Plaintiffs' claims should be dismissed in their entirety. Alternatively, the Court should dismiss Counts III, IV, V, and VII and VIII of Plaintiffs' Consolidated Complaint without leave to amend. The Court has broad discretion to deny leave to amend where, as here, Plaintiffs have previously amended the Complaint. *Fuzzysharp Techs. Inc. v. Nividia Corp.*, No. 12-CV-06375-JST, 2013 WL 4766877, at *1 (N.D. Cal. Sept. 4, 2013) (citing *Ascon Properties, Inc. v. Mobile Oil Co.*, 866 F.2d 1449, 1160 (9th Cir. 1989)). Here, since last year, Plaintiffs collectively have filed nine Complaints in California. Accordingly, Union Pacific respectfully requests that the Court deny Plaintiffs further leave to amend.

---

[2] Union Pacific denies and the Court need not accept as true Plaintiffs' incorrect conclusions of law related to the Congressional Acts—namely that the Congressional Acts did not provide Union Pacific with sufficient rights in the subsurface of its right-of-way to grant easements to the Pipeline Defendants. *See e.g.*, Pls.' Consol. Compl. ¶ 50. Union Pacific specifically reserves the right to challenge Plaintiffs' allegations and legal conclusions concerning the rights granted under the Congressional Acts.

1  Dated: January 11, 2016

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:    /s/ Tammy B. Webb
        TAMMY B. WEBB
Attorneys for Defendant
UNION PACIFIC RAILROAD COMPANY