1   COOLEY LLP
    STEVEN M. STRAUSS (99153)
2   (SMS@COOLEY.COM)
    M. RAY HARTMAN III (211205)
3   (RHARTMAN@COOLEY.COM)
    SUMMER J. WYNN (240005)
4   (SWYNN@COOLEY.COM)
    CATHERINE J. O'CONNOR (275817)
5   (COCONNOR@COOLEY.COM)
    4401 Eastgate Mall
6   San Diego, CA  92121
    Telephone:   (858) 550-6000
7   Facsimile:   (858) 550-6420

8   Attorneys for Defendants
    SFPP, L.P., KINDER MORGAN OPERATING L.P. "D,"
9   and KINDER MORGAN G.P., INC.

10

                    **UNITED STATES DISTRICT COURT**
11
                    **CENTRAL DISTRICT OF CALIFORNIA**
12

13   In re SFPP Right-of-Way Claims          Case No.  8:15-CV-00718-JVS-DFM

14                                           **KINDER MORGAN'S BRIEF ON
                                             ISSUES RAISED BY PLAINTIFFS'
15                                           MOTION FOR PARTIAL DISMISSAL
                                             OF DEFENDANT UNION PACIFIC
16                                           RAILROAD COMPANY'S
                                             COUNTERCLAIMS**
17
                                             ***ORAL ARGUMENT REQUESTED***
18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM

# Table of Contents

**Page**

I.  INTRODUCTION ............................................................................................... 1

II.  THE COA OPINION ........................................................................................ 2

III.  UNION PACIFIC'S COUNTERCLAIMS ARE BARRED BY THE
DOCTRINE OF COLLATERAL ESTOPPEL. ................................................ 5

    A.  Legal Standards ..................................................................................... 5

    B.  The Elements Of Collateral Estoppel Are Satisfied. ............................ 6

    1.  Union Pacific's Property Interests Were Actually Litigated In The
Rent Action. .......................................................................................... 6

    2.  Union Pacific Had A Full And Fair Opportunity To Litigate Its
Property Interests Under The Congressional Acts. ............................... 9

    3.  The COA Opinion Is Final And On The Merits. ................................. 11

    C.  Policy Considerations Support Application of Collateral Estoppel. ...... 13

IV.  UNION PACIFIC'S COUNTERCLAIMS ARE BARRED BY THE
ROOKER-FELDMAN DOCTRINE. ............................................................. 16

V.  CONCLUSION .............................................................................................. 17

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

i.

**KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM**

# TABLE OF AUTHORITIES

**Cases**

*Asdar Grp. v. Pillsbury, Madison & Sutro,*
    99 F.3d 289 (9th Cir. 1996) .................................................................. 2

*Barker v. Hull,*
    191 Cal. App. 3d 221 (1987) ................................................................ 7

*Bell v. City of Boise,*
    709 F.3d 890 (9th Cir. 2013) .............................................................. 16

*Castillo v. City of L.A.,*
    92 Cal. App. 4th 477 (2001) ............................................... 6, 7, 9, 13, 14

*City of Long Beach v. Pac. Elec. R. Co.,*
    44 Cal.2d 599 (1955) ..................................................................... 15-16

*Cooper v. Ramos,*
    704 F.3d 772 (9th Cir. 2012) .............................................................. 16

*Direct Shopping Network, LLC v. James,*
    206 Cal. App. 4th 1551 (2012) ...................................................... 6, 10

*Dodd v. Hood River Cty.,*
    136 F.3d 1219 (9th Cir. 1998) .............................................................. 5

*Empl'ers Ins. Co. of Wausau v. Oakdale Heights Mgmt. Corp.,*
    No. CIV S 10-2006 KJM, 2012 WL 2160957 (E.D. Cal. June 13,
    2012) ............................................................................................. 8, 9, 12

*Flood v. Simpson,*
    45 Cal. App. 3d 644 (1975) ............................................................... 8, 9

*Gabriel v. Wells Fargo Bank, N.A.,*
    188 Cal. App. 4th 547 (2010) ............................................................... 5

*Geographic Expeditions Inc. v. Estate of Jason Lhotka,*
    No. C 08-04624 SI, 2010 WL 3516116 (N.D. Cal. Sept. 8, 2010) .............. 12, 13

*Grand Trunk R.R. Co. v. Richardson,*
    91 U.S. 454 (1875) ............................................................................. 15

*Home on the Range v. AT&T Corp.*,
   386 F. Supp. 2d 999 (S.D. Ind. 2005) ................................................ 15

*Kay v. City of Rancho Palos Verdes*,
   504 F.3d 803 (9th Cir. 2007) .......................................................... 12

*Kemper v. Cty. of San Diego*,
   242 Cal. App. 4th 1075 (2015) ........................................................ 10

*Lewis v. Upton*,
   151 Cal. App.3d 232 (1984) ............................................................ 12

*Littoral Dev. Co. v. S.F. Bay Conservation and Dev. Comm'n*,
   24 Cal. App. 4th 1050 (1994) (*Littoral I*) ...................................... 13

*Littoral Dev. Co. v. S.F. Bay Conservation and Dev. Comm'n*,
   33 Cal. App. 4th 211 (1995) (*Littoral II*) ................................. 12, 13

*Marvin M. Brandt Revocable Tr. v. United States*,
   134 S. Ct. 1257 (2014) ................................................................. 15

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
   465 U.S. 75 (1984) ......................................................................... 5

*Mooney v. Caspari*,
   138 Cal. App. 4th 704 (2006) ...................................................... 6, 14

*Murphy v. Murphy*,
   164 Cal. App. 4th 376 (2008) ......................................................... 14

*N. Pac. Ry. Co. v. Townsend*,
   190 U.S. 268 (1903) ....................................................................... 15

*Noel v. Hall*,
   341 F.3d 1148 (9th Cir. 2003) ......................................................... 16

*Parsons Steel, Inc. v. First Ala. Bank*,
   474 U.S. 518 (1986) ........................................................................ 5

*Reusser v. Wachovia Bank, N.A.*,
   525 F.3d 855 (9th Cir. 2008) ..................................................... 16, 17

*Robi v. Five Platters, Inc.*,
   838 F.2d 318 (9th Cir. 1988) ............................................................ 5

*Roos v. Red,*
   130 Cal. App. 4th 870 (2005)................................................................... 6, 14

*Sandoval v. Superior Court,*
   140 Cal. App. 3d 932 (1983)................................................................. 11, 12

*ScripsAmerica, Inc. v. Ironridge Glob. LLC,*
   56 F. Supp. 3d 1121 (C.D. Cal. 2014)........................................................ 17

*Sosa v. DIRECTV, Inc.,*
   437 F.3d 923 (9th Cir. 2006)...................................................................... 12

*United States v. Union Pac. R.R. Co.,*
   353 U.S. 112 (1957) .................................................................................. 15

*Yu v. Signet Bank/Virginia,*
   103 Cal. App. 4th 298 (2002)................................................................. 11, 13

**Statutes**

28 U.S.C. § 1257(a) .................................................................................... 11

28 U.S.C. § 1738............................................................................................ 5

12 Stat. 489 § 2 ............................................................................................ 15

14 Stat. 239 § 2 ............................................................................................ 15

14 Stat. 292 § 2 ............................................................................................ 15

16 Stat. 573 § 8 ............................................................................................ 15

**Other Authorities**

Restatement (Second) of Judgments § 13 cmt................................................ 12

Cooley LLP
Attorneys At Law
San Diego

iv.

Kinder Morgan's Brief Re:
Plaintiffs' MTD UP's Counterclaims
Case No. 8:15-cv-00718-Jvs-Dfm

1    Defendants SFPP, L.P., Kinder Morgan Operating L.P. "D," and Kinder
2    Morgan G.P., Inc. ("Kinder Morgan") respectfully submit this brief and exhibits for
3    the Court to consider when ruling on Plaintiffs' Motion for Partial Dismissal of
4    Defendant Union Pacific Railroad Company's ("Union Pacific") Counterclaims.

5    **I.    INTRODUCTION**

6        Union Pacific's Counterclaims seek to relitigate the issue of Union Pacific's
7    property interest derived from Congressional Acts enacted prior to 1871 (the "pre-
8    1871 Acts") and the General Railroad Right of Way Act of 1875 (the "1875 Act").
9    (Doc. No. 114 at ¶¶ 17-34.)  These issues have already been **conclusively decided**
10   **against Union Pacific** by the California Court of Appeal.  *See Union Pac. R.R. Co.*
11   *v. Santa Fe Pac. Pipelines, Inc*., 231 Cal. App. 4th 134 (2014), *reh'g denied* (Dec.
12   5, 2014), *review denied* (Jan. 21, 2015) (the "COA Opinion").

13       In a landmark 81-page, published opinion, the Court of Appeal held that
14   under the 1875 Act, Union Pacific received only an easement for railroad purposes
15   and that, under the pre-1871 Acts, Union Pacific "received all *surface* rights to the
16   right of way and all rights incident to a use *for railroad purposes*."  *Id.* at 160-66
17   (emphasis in original).  The Court of Appeal concluded that Union Pacific's grant
18   of subsurface pipeline easements to Kinder Morgan in order to generate revenue for
19   itself was not a "railroad purpose," and therefore not within the scope of Union
20   Pacific's rights under the Congressional Acts.  *Id.* at 166-70; 209.

21       Seeking another bite at the apple, Union Pacific asks this Court for a ruling
22   **directly at odds** with the COA Opinion.  Specifically, Union Pacific requests a
23   declaration that, inter alia: [1] "under the pre-1871 Acts, Union Pacific owns its
24   railroad right-of-way in 'limited fee' including all the rights inherent in ownership
25   of the property so long as the property is used for a railroad right-of-way; " [2]
26   "under the 1875 Act, Union Pacific has exclusive rights to use and occupy the
27   railroad right-of-way;" and [3] "permitting the pipeline easements for the continued
28   construction, maintenance and operation of the Pipeline's high pressure petroleum

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM

pipeline and appurtenances within Union Pacific's right-of-way is within Union Pacific's railroad right-of-way rights." (Dkt. No. 135 at ¶ 24; *see also id.* at ¶¶ 26-27, 32 (quiet title claim alleging Union Pacific has "all rights and interests in the railroad right-of-way by virtue of the pre-1871 Act, [and] the 1875 Act").)

Plaintiffs have moved for partial dismissal of Union Pacific's Counterclaim based on the doctrine of collateral estoppel. (*See* Dkt. No. 139.) Kinder Morgan submits this brief to offer relevant, supporting information on the issues raised. Kinder Morgan maintains that Plaintiffs do not have any viable claims against Defendants,[1] and that Plaintiffs cannot certify their claims as a class action.[2] However, the legal issue regarding the scope of Union Pacific's interests under the Congressional Acts has already been litigated and finally decided **against** Union Pacific. Union Pacific is thus trying to escape the COA Opinion by seeking a contrary ruling in federal court. Allowing Union Pacific to do so would undermine the integrity of the judicial system, encourage vexatious litigation, and potentially impact other litigation between Union Pacific and Kinder Morgan.

## II. THE COA OPINION

The COA Opinion was decided on appeal of an action to determine the amount of rent due to Union Pacific from Kinder Morgan for subsurface pipeline easements "within Union Pacific's right-of-way property." (Ex. 1, Compl. ¶¶ 10-11, 14) (the "Rent Action")[3]. Union Pacific's demand for rent is based on a

_____

[1] Plaintiffs' claims are barred by, among other things, waiver, consent, laches, the applicable statutes of limitations, superior rights, condemnation, adverse possession, and/or prescriptive easement. Kinder Morgan expressly reserves all available defenses to Plaintiffs' claims and the putative class allegations.

[2] Plaintiffs have not established their own standing, and Kinder Morgan believes that they will not be able to do so, or establish standing for putative class members on a representative basis. Kinder Morgan also maintains that Plaintiffs will not be able to establish the Federal Rule of Civil Procedure 23 certification requirements.

[3] The Court may consider the attached pleadings and records, because they are matters of public record. *See, e.g., Asdar Grp. v. Pillsbury, Madison & Sutro*, 99

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM

contract with Kinder Morgan, the Amended and Restated Easement Agreement ("AREA"). In the AREA, Union Pacific purported to grant Kinder Morgan pipeline easements "in, upon, along and across the property of Railroad" (Ex. 2, AREA § 1(a), 1(c), 1(f), 3-4), in exchange for rent. The AREA allows Union Pacific to seek an increase in the rent every ten years. (*Id.* § 2(b)((i)(A).) In 2004, Union Pacific filed the Rent Action, seeking that rental increase.

At trial, Union Pacific failed to prove the most fundamental element of its claim: ownership of the subsurface where the pipeline is located. Instead, Union Pacific claimed that it need not prove its interests, and that it "could collect the rent regardless of who owned the [subsurface]." *Union Pac. R.R. Co.*, 231 Cal. App. 4th at 153-55, 157-58. Kinder Morgan[4] repeatedly argued to the trial court that Union Pacific must prove its title in its right-of-way before it can collect rent by, among other things, motions for judgment, a cross-complaint, numerous other title motions, and the presentation of testimony, exhibits, and expert opinion, all disputing Union Pacific's title. (*See, e.g.*, Ex. 3-5; Ex. 12 at 2-3 & 19-21; Ex. 14 at 2, 5, 29-32)[5]; *see also Union Pac. R.R. Co.*, 231 Cal. App. 4th at 145, 153, 154. Union Pacific filed title motions as well. (*See id.*) The trial court ultimately rejected Kinder Morgan's arguments, and entered judgment for Union Pacific.

Kinder Morgan appealed from the judgment and "all orders and rulings subsumed therein." *Union Pac. R.R. Co.*, 231 Cal. App. 4th at 155. At oral argument, the Court of Appeal raised the nature of Union Pacific's property interests in the Congressional Acts, through which Union Pacific acquired much of its right-of-way. The Court of Appeal requested that the parties each file two

---

F.3d 289, 290 n.1 (9th Cir. 1996).

[4] In the Rent Action, Kinder Morgan is referred to as "SFPP" or the "Pipeline."

[5] In the interest of not burdening this Court with tens of thousands of pages of testimony, exhibits, and other documents that are not relevant to the issues in this case, Kinder Morgan is submitting a subset of relevant pleadings to demonstrate that the title issue was actually litigated.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3.

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM

supplemental briefs on this issue, which they did.  (*See* Exs. 6-10.)  Kinder Morgan also sought leave to supplement the record with additional exhibits and testimony relating to title.  *See Union Pac. R.R. Co.*, 231 Cal. App. 4th at 155 n. 8 (granting Kinder Morgan's request to augment the record).  Union Pacific did not.

In the COA Opinion, the Court of Appeal examined in detail the nature and extent of the property rights granted under the pre-1871 and 1875 Congressional Acts.  Union Pacific acquired its Congressional Act right-of-way for free from the United States government "to build and run a transcontinental railroad."  *Id.* at 160, 171.  After thoroughly analyzing the text, history, and purposes of the Congressional Acts and authorities discussing them, the Court of Appeal held that, under the 1875 Act, Union Pacific received only an easement.  *Id.* at 160-65.  The Court of Appeal rejected Union Pacific's argument that the 1875 Act allowed "all activities [in the] subsurface, whether derived from or furthering a railroad purpose or not."  *Id.* at 161.  Instead, under the 1875 Act, "the subsurface must be used to support the construction or operation of the railroad (i.e., for railroad purposes)."  *Id.* at 163; *see also id.* at 164-65 ("[T]he railroad's rights to the land underneath its rights-of-way granted by the 1875 Act were limited to what was necessary to support the railroad itself.")

The Court of Appeal also rejected Union Pacific's argument that, under the pre-1871 Acts, it received a "limited fee" such that it "could do whatever it wanted with the land, both surface and subsurface, as if it were owned in fee."  *Id.* at 165.  On the contrary, the Court of Appeal held that, under the pre-1871 Acts, railroads "received all *surface* rights to the right of way and all rights incident to a use *for railroad purposes*."  *Id.* at 166 (emphasis in original).

After determining these interests, the Court of Appeal held that Union Pacific's purported grant of subsurface pipeline easements to Kinder Morgan was **not** within the scope of Union Pacific's rights under the pre-1871 and 1875 Congressional Acts.  *See id.* at 160, 165-178, 190.  Although Union Pacific argued

Cooley LLP
Attorneys At Law
San Diego

4.

Kinder Morgan's Brief Re:
Plaintiffs' MTD UP's Counterclaims
Case No. 8:15-cv-00718-Jvs-Dfm

to the Court of Appeal that its use of fuel from Kinder Morgan's pipeline constitutes a railroad purpose, the Court of Appeal **assumed** Union Pacific used the fuel, and held that there still was no railroad purpose. *Id.* at 166-70. The Court of Appeal concluded that "sinking a pipeline under the Railroad's right-of-way in order to generate revenue for itself" is not a railroad purpose, even if Union Pacific "may ultimately use" the fuel from the pipelines. *Id.* at 167, 170.

Union Pacific petitioned for rehearing of the COA Opinion, and petitioned for California Supreme Court review, both of which were summarily denied. The Court of Appeal issued the remittitur on January 26, 2015.

## III. UNION PACIFIC'S COUNTERCLAIMS ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL.

### A. Legal Standards

Under the Full Faith and Credit Act, "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986); 28 U.S.C. § 1738. The COA Opinion is a California state court judgment. Thus, this Court must look to California law to determine the collateral estoppel effect of the COA Opinion. *See, e.g.*, *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) ("we apply California law of res judicata to the California judgment"); *Dodd v. Hood River Cty.*, 136 F.3d 1219, 1225 (9th Cir. 1998) ("Federal courts must give state court judgments the same preclusive effect as they would be given by courts of that state.").

Collateral estoppel, or issue preclusion, "precludes relitigation of issues argued and decided in prior proceedings." *Gabriel v. Wells Fargo Bank, N.A.*, 188 Cal. App. 4th 547, 556 (2010). "The purpose of collateral estoppel is to prevent a

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM

party," like Union Pacific here, "from repeatedly litigating an issue in order to secure a different result." *Direct Shopping Network, LLC v. James*, 206 Cal. App. 4th 1551, 1562 (2012); *see also Mooney v. Caspari*, 138 Cal. App. 4th 704, 717 (2006) (collateral estoppel "rests upon the ground that the party to be affected…has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent").

Under California law, the threshold elements of collateral estoppel are: "(1) the issue is identical to that decided in the former proceeding, (2) the issue was actually litigated in the former proceeding, (3) the issue was necessarily decided in the former proceeding, (4) the decision in the former proceeding is final and on the merits, and (5) preclusion is sought against a person who was a party or in privity with a party to the former proceeding." *Castillo v. City of L.A.*, 92 Cal. App. 4th 477, 481 (2001). Union Pacific does not dispute that the "identical issues," "necessarily decided," or "same party" requirements are met here.

In addition to the threshold factors, courts weigh public policy considerations, including "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Castillo*, 92 Cal. App. 4th at 481. Courts also look to whether the party being estopped had "a full and fair opportunity to litigate the issue." *Roos v. Red,* 130 Cal. App. 4th 870, 880 (2005).

## B.   The Elements Of Collateral Estoppel Are Satisfied.

### 1.   Union Pacific's Property Interests Were Actually Litigated In The Rent Action.

Union Pacific's first attempt to avoid collateral estoppel is based on a complete fiction – that its ownership interests under the Congressional Acts were not "actually litigated" in the Rent Action. Not so. "An issue is actually litigated when it is *properly raised,* by the pleadings or otherwise, and is submitted for

Cooley LLP
Attorneys At Law
San Diego

6.

Kinder Morgan's Brief Re:
Plaintiffs' MTD UP's Counterclaims
Case No. 8:15-cv-00718-Jvs-Dfm

determination, and is *determined*." *Castillo*, 92 Cal. App. 4th at 482 (emphasis in original).   The party urging collateral estoppel "need not establish that any particular type of evidence, such as oral testimony, was presented." *Barker v. Hull*, 191 Cal. App. 3d 221, 226 (1987) (no requirement that an "exhaustive adversarial hearing" be held).

Here, both Union Pacific's complaint and the AREA raised Union Pacific's property interests. *See Union Pac. R.R. Co.*, 231 Cal. App. 4th at 156-57; (Ex. 1, Compl. ¶¶ 10-11, 14 (alleging that easements are "within Union Pacific's right-of-way property"); Ex. 2, AREA §§ 1(a), 1(c), 1(f), 3-4) (stating that easements are "in, upon, along and across the property of the Railroad").   In addition, Kinder Morgan explicitly argued in various motions that Union Pacific must prove its property interests in its right-of-way before it can collect rent from Kinder Morgan. Union Pacific filed title motions as well. (*See* Ex. 12 at 2-3, 19-21; Ex. 14 at 2, 5, 29-32); *Union Pac. R.R. Co.*, 231 Cal. App. 4th at 145 ("whether [Union Pacific] had sufficient interest in the land beneath its rights-of-way to grant the subsurface easements and collect rent for their use" was "raised [] in the instant case" and "extensively litigated"); *id.* at 153 ("a substantial amount of testimony was [] heard and documentary evidence was received [at trial] regarding the nature of the Railroad's ownership interest of the land"), *id.* at 154 ("In various motions and pleadings, the Pipeline challenged the Railroad's title to the land through which its easements ran.").

Trying to avoid the fact that title was litigated, Union Pacific cherry picks select quotations from certain pleadings.   However, Union Pacific is wrong that Kinder Morgan's title arguments were limited to "non-Congressional Act lands sold to third parties."   (Opposition to Motion for Partial Dismissal ("Opp.") at 9:19-20.) The instances where Union Pacific had disposed of the land through which the easements run by sale, abandonment, or assignment to others were raised by Kinder Morgan as representing only a "subset" of Union Pacific's many and varied title

Cooley LLP
Attorneys At Law
San Diego

7.

Kinder Morgan's Brief Re:
Plaintiffs' MTD UP's Counterclaims
Case No. 8:15-cv-00718-Jvs-DFM

problems.  (Ex. 4 at 1-2.)  Kinder Morgan specifically raised the issue of Union Pacific's title under the Congressional Acts, arguing that "**where Union Pacific holds an easement interest under Congressional grants, its title interest in such properties may be insufficient to grant an easement to [Kinder Morgan] for pipeline use.**"  (Ex. 3 at 6:-7; *see also, e.g.*, Ex. 4 at 1-2 (noting the "many and varied ways that the Railroad has acquired its wide variety of real property interests since the mid-nineteenth century"); Ex. 5 at 6 & n. 4 (arguing that "rights-of-way granted pursuant to some of the various Congressional Acts – including the [1875 Act] [are only] easements" which are a "nonpossessory interest" that cannot serve as the servient tenement to Kinder Morgan's easement)); *Union Pac. R.R. Co.*, 231 Cal. App. 4th at 160 n. 1 ("The record is replete with pleadings, motions, and arguments addressing the nature of the Railroad's rights-of-way as granted by the Congressional Acts."); *id.* at 174 n. 21 (citing testimony on railroad purpose).

That the trial court ultimately rejected Kinder Morgan's arguments is of no moment.  (*See* Opp. at 10:4-5)  The point is that title was raised, repeatedly, to the trial court, and all title rulings adverse to Kinder Morgan were encompassed within Kinder Morgan's notice of appeal.  *See Union Pac. R.R. Co.*, 231 Cal. App. 4th at 160 n. 11.  The parties also briefed title extensively on appeal.  (*See* Exs. 7-10); *Union Pac. R.R. Co.*, 231 Cal. App. 4th at 155.  The Court of Appeal dedicated the majority of its 81-page opinion to the issue of Union Pacific's property interests, under the Congressional Acts.  *See Flood v. Simpson*, 45 Cal. App. 3d 644, 650-51 (1975) (issue decided by appellate court bars relitigation of such issues); *Empl'ers Ins. Co. of Wausau v. Oakdale Heights Mgmt. Corp.*, No. CIV S 10-2006 KJM, 2012 WL 2160957, at *6 (E.D. Cal. June 13, 2012) (evidence of party's complaint and the court's ruling were sufficient to satisfy burden of showing issue was actually litigated) (applying California law).

In sum, the issue of Union Pacific's property interests, including its interests under the Congressional Acts, was raised, repeatedly, by the pleadings, submitted

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

8.

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM

for determination, and determined by the Court of Appeal.  No more is required.
*See, e.g.*, *Castillo*, 92 Cal. App. 4th at 482; *Flood*, 45 Cal. App. 3d at 650-51;
*Empl'ers Ins. Co. of Wausau*, 2012 WL 2160957, at *6.

> **2.     Union Pacific Had A Full And Fair Opportunity To Litigate Its Property Interests Under The Congressional Acts.**

Despite the fact that title was raised and litigated by both parties, Union Pacific contends that it was "denied a full and fair opportunity and motive" to litigate its title under the Congressional Acts because the issue was "not presented either at trial or on appeal."  The Court of Appeal already rejected these arguments:

> Contrary to the Railroad's contention, **we do not raise these questions sua sponte**, nor has the Pipeline waived its claims regarding this issue. **Challenges to the Railroad's property rights were raised again and again at trial by the Pipeline.**  The record is replete with pleadings, motions, and arguments addressing the nature of the Railroad's rights-of-way as granted by the Congressional Acts. The trial court's conclusions regarding title are reflected in its multiple rulings and its statement of decision, which are encompassed by the Pipeline's notice of appeal.

*Union Pac. R.R. Co.*, 231 Cal. App. 4th at 160 n. 11 (emphasis added).  Further, to both the Court of Appeal and the California Supreme Court, Union Pacific argued that the Court of Appeal raised issues "sua sponte" and that it was deprived of due process.  These arguments were **rejected** each time.  *Union Pac. R.R. Co.*, 231 Cal. App. 4th at 160 n.11, 116 n.17; (Ex. 11 at 33-35; Ex. 13 at 30-35.)

Contrary to Union Pacific's argument, Union Pacific **did** have an opportunity to submit "railroad purpose" evidence in the Rent Action.  As discussed above, Union Pacific knew that its title was in dispute throughout trial, and had the opportunity to (and did) put on title evidence. (*Supra* § III.B.1.)  Nothing prevented Union Pacific from offering its alleged evidence regarding fuel usage and depth of the pipeline in the Rent Action.  Instead of offering this evidence, however, Union Pacific argued that railroad purpose is "whatever the Railroad determines beneficial

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

9.

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM

for its operations" and providing revenue to "enhance the value of the shareholders."
*Union Pac. R.R. Co.*, 231 Cal. App. 4th at 174 & n.21.

Now Union Pacific seeks to present more railroad purpose evidence than it marshaled during the trial of Rent Action.  "It is precisely this second bite at the apple that collateral estoppel is designed to bar." *Direct Shopping Network*, 206 Cal. App. 4th at 1562; *see also Kemper v. Cty. of San Diego*, 242 Cal. App. 4th 1075, 1089 (2015) (collateral estoppel applies "even if some factual matters or legal theories that could have been presented with respect to that issue were not presented").  A party is unable to "escape the bar of the prior decision[ ] by asserting that … [it has] other evidence which was not introduced in the earlier proceedings." *Direct Shopping Network*, 206 Cal. App. 4th at 1559.  "Otherwise, there would be no end to litigation." *Id.* at 1562.

Further, Union Pacific made its fuel usage argument to the Court of Appeal. Union Pacific argued in its supplemental appellate briefs that the pipelines serve a railroad purpose because "[o]ver the ten-year period at issue here, [Union Pacific] has used hundreds of millions of gallons of fuel transported through the SFPP system to power its locomotives."  (Ex. 8 at 6; *see also id.* at 7 ("[e]fficient shipment of diesel fuel for use in [Union Pacific's] locomotives is … essential to the operation of a railroad"); *id.* at 8 ("[a] buried pipeline used to supply fuel for railroad locomotives is no less a proper 'railroad purpose' than a buried cable used to supply telecommunications services"); Ex. 10 at 6 ("[a]ccess to fuel transported through this pipeline system substantially lowers [Union Pacific's] operating costs and increases the efficiency of its rail operations.").)

Even though Union Pacific did not offer any such evidence at trial, the Court of Appeal assumed that Union Pacific uses fuel from the pipelines, and held that **"even if true, the mere fact that the Railroad used fuel from the pipelines in its locomotives would not mean the pipeline easements themselves served a railroad purpose."** *Union Pac. R.R. Co.*, 231 Cal. App. 4th at 166-67 (emphasis

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM

added).  Union Pacific itself has acknowledged that the Court of Appeal "accept[ed] that the Railroad uses the pipeline to supply fuel for its operations, [but] held that…this use cannot further a 'railroad purpose' as a matter of law."  (Ex. 11 at 1.) Union Pacific had a fair and full opportunity to present its evidence and arguments on title in the Rent Action, including its "railroad purpose" evidence.

### 3.    The COA Opinion Is Final And On The Merits.

Lastly, Union Pacific contends that the COA Opinion is not final because the Rent Action has been "remanded for further proceedings." (Opp. at 13:13-14.) Union Pacific ignores, however, that the COA Opinion's determinations on the scope of Union Pacific's interests under the Congressional Acts are now law of the case, and **binding** on remand.  *See, e.g.*, *Yu v. Signet Bank/Virginia*, 103 Cal. App. 4th 298, 309 (2002) ("The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.")   The doctrine of law of the case prevents Union Pacific from relitigating on remand – or in any subsequent appeal – points of law already decided by the COA Opinion.  *Id.*

Kinder Morgan disagrees that Union Pacific could not have sought U.S. Supreme Court review under any of the categories outlined in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975).  But in any event, whether the COA Opinion constitutes a "final judgment[] or decree[]" for U.S. Supreme Court review (Opp. at 11:14-22 (citing 28 U.S.C. § 1257(a)), is a completely separate issue from the question of finality for purposes of collateral estoppel.  *See Sandoval v. Superior Court*, 140 Cal. App. 3d 932, 936 (1983) (the "requirement of finality of judgment is interpreted strictly…when considered for purposes of appellate review"; "issue preclusion, however, is a different matter").  A strict interpretation of "finality" for collateral estoppel could "involve hardship," for example, "needless duplication of

1    effort and expense in the second action to decide the same issue." *Id.* (quoting

2    RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. g (Am. Law Inst. 1982)).

3        For collateral estoppel to apply, the judgment sought to be invoked must be

4    the "'last word' of the *rendering court*." *Sandoval*, 140 Cal. App. 3d at 936

5    (emphasis in original).  "**[D]espite the pendency of a cert petition [to the U.S.**

6    **Supreme Court] from the state courts' final judgment, [] federal court[s] may**

7    **be bound to recognize the…issue-preclusive effects of a state-court judgment**

8    **[and] and state law determines…principles of preclusion**." *Geographic*

9    *Expeditions Inc. v. Estate of Jason Lhotka*, No. C 08-04624 SI, 2010 WL 3516116,

10   at *4 (N.D. Cal. Sept. 8, 2010) (emphasis added).

11       Here, California law provides that the COA Opinion is now final.  Union

12   Pacific petitioned for rehearing of the COA Opinion, and petitioned for California

13   Supreme Court review; both petitions were summarily denied.  The Court of

14   Appeal issued the remittitur on January 26, 2015.  The appellate court's issuance of

15   a remittitur "indicates that the appellate process, including a potential petition for

16   review to the California Supreme Court has been exhausted – **and thus the**

17   **decision has become final**." *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803,

18   808-09 (9th Cir. 2007) (emphasis added) (applying California law); *Empl'ers Ins.*

19   *Co. of Wausau*, 2012 WL 2160957, at *5 ("In California, a case is final upon

20   issuance of remittitur."); *Littoral Dev. Co. v. S.F. Bay Conservation and Dev.*

21   *Comm'n* (*Littoral II*), 33 Cal. App. 4th 211, 215 (1995) (prior decision "became

22   binding on the parties by virtue of res judicata and collateral estoppel" after

23   appellate court "denied rehearing, and our Supreme Court denied review"); *see also*

24   *Lewis v. Upton*, 151 Cal. App.3d 232, 235 (1984) (prior appellate decision became

25   final upon issuance of the remittitur); *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 928

26   (9th Cir. 2006) (judgment is final once "there has been a decision on appeal as well

27   as a denial of review by the California Supreme Court") (applying California law).

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM

For example, in *Littoral Dev. Co. v. S.F. Bay Conservation and Dev. Comm'n* (*Littoral I*), 24 Cal. App. 4th 1050 (1994), the California Court of Appeal affirmed the trial court's holding that a parcel of land was salt marsh within the jurisdiction of the San Francisco Bay Conservation and Development Commission ("BCDC"), and remanded the case to the trial court. *Id.* at 1066.  Subsequently, in *Littoral II*, the Court of Appeal found that res judicata barred developers from asserting that a portion of the parcel did not fall within jurisdiction of the BCDC, in light of the prior decision in *Littoral I*.  33 Cal. App. 4th at 216-17. The Court of Appeal stated: "[w]e denied rehearing, and our Supreme Court denied review. **The *Littoral I* decision, thus, became binding on the parties by virtue of res judicata, collateral estoppel, and as a directly relevant precedent.**" *Id.* at 215 (emphasis added).

Likewise, the COA Opinion's determination of Union Pacific's property interests, under the Congressional Acts, became final once the Court of Appeal denied Union Pacific's petition for rehearing, the California Supreme Court denied its petition for review, and the remittitur issued.  That determination is now law of the case and cannot be relitigated.  *See, e.g.*, *Yu*, 103 Cal. App. 4th at 309. Moreover, Union Pacific's belief that the COA Opinion misapplied "important issues of federal law," is unavailing.  That a claim raises federal issues "does not bar issue preclusion in federal court stemming from a prior state judgment." *Geographic Expeditions Inc.*, 2010 WL 3516116, at *4 (citation omitted).

**C.    Policy Considerations Support Application of Collateral Estoppel.**

As discussed above, each of the threshold requirements for collateral estoppel are met here.  Further, the integrity of the judicial system would be served, judicial economy promoted, and vexatious litigation avoided by giving collateral estoppel effect of the COA Opinion.  *See Castillo*, 92 Cal. App. 4th at 481. Application of collateral estoppel in this case would give credit to express findings made by the California Court of Appeal, acting within the scope of its jurisdiction,

Cooley LLP
Attorneys At Law
San Diego

13.

Kinder Morgan's Brief Re:
Plaintiffs' MTD UP's Counterclaims
Case No. 8:15-cv-00718-Jvs-DFM

1  in a forum where Union Pacific had a full and fair opportunity to litigate the issue,

2  and appellate review of adverse rulings was available.

3        On the other hand, permitting Union Pacific to relitigate the question of its

4  property interests under the Congressional Acts could result in a judgment

5  inconsistent with the COA Opinion, which would undermine the integrity of the

6  judicial system.  Relitigation of these issues would also be harassing and would not

7  serve judicial economy because Union Pacific already had an opportunity in the

8  Rent Action to litigate its property interests under the Congressional Acts.  *See*

9  *Castillo*, 92 Cal. App. 4th at 483-84; *Mooney*, 138 Cal. App. 4th at 717 ("Public

10  policy and the interest of litigants alike require that there be an end to litigation.").

11  Union Pacific's attempt to relitigate issues that have already been decided against it

12  in order to receive a more favorable outcome is plainly gamesmanship.

13        Additionally, Union Pacific's policy arguments miss the mark.  Union Pacific

14  does not explain *how* the fact that this action and the Rent Action have different

15  purposes impacts the collateral estoppel analysis, and it does not.  Union Pacific

16  cites *Lucido v. Superior Court*, where the court found that integrity of the judicial

17  system would not be undermined by allowing the same criminal charge to be

18  litigated in both a probation revocation hearing and a criminal trial because the

19  public had separate interests in the two proceedings.  51 Cal. 3d 335, 348-49

20  (1990).  Here, by contrast, the public has the same interest in both this case and the

21  Rent Action: seeing that Union Pacific does not wrongfully exploit its

22  Congressional Act right-of-way for its own monetary gain.

23        Union Pacific contends that the Court should decline to apply collateral

24  estoppel because of Union Pacific's belief that the COA Opinion was incorrectly

25  decided.  (Opp. at 16:3-10.)  But collateral estoppel may apply even where the issue

26  was wrongly decided in the first action.  *Murphy v. Murphy*, 164 Cal. App. 4th 376,

27  407 (2008).  "An erroneous judgment is as conclusive as a correct one."  *Roos*, 130

28  Cal. App. 4th at 887.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM

1    In any event, Union Pacific is incorrect that the COA Opinion is the "only

2    case in over a century of caselaw to find that the pre-1871 Acts require a railroad

3    purpose." (Opp. at 16:5-6; 5:3-6:8.)   Under the pre-1871 Acts, Union Pacific

4    received a right-of-way "for the construction of said railroad and telegraph line."

5    12 Stat. 489 § 2; 14 Stat. 239 § 2; 14 Stat. 292 § 2; 16 Stat. 573 § 8.   The U.S.

6    Supreme Court has held that, under the pre-1871 Acts, railroads received "all

7    surface rights to the right of way and **all rights incident to a use for railroad**

8    **purposes**."   *United States v. Union Pac. R.R. Co.,* 353 U.S. 112, 119 (1957)

9    (emphasis added); *see also id.* at 114 ("drilling for oil on or under [the right of way]

10   is not a railroad purpose"); *Home on the Range v. AT&T Corp.*, 386 F. Supp. 2d

11   999, 1024 (S.D. Ind. 2005) ("clear implication of *Union Pacific* is that purposes

12   that are **not incidental to or do not facilitate the operation** of the railroad are

13   beyond the pre-1871 grants") (emphasis added).[6]   Moreover, *Brandt* is an **1875 Act**

14   case; it does **not** hold that Union Pacific has a "fee" interest under the pre-1871

15   Acts.   (Opp. at 5:16-20 (citing *Marvin M. Brandt Revocable Tr. v. United States*,

16   134 S. Ct. 1257, 1268 (2014)).)   The COA Opinion correctly applied cases that

17   actually interpret the pre-1871 Acts.

18      As for the 1875 Act, Union Pacific is wrong that the "incidental use" doctrine

19   is relevant, or in conflict with the COA Opinion.   (Opp. at 16:7-8; 6:9-19 & n.5)

20   The incidental use doctrine developed in common law cases interpreting non-

21   Congressional Act right-of-way, and is not applied in Congressional Act cases.

22   Union Pacific cites *Grand Trunk*, but that case involved a charter from the State of

23   Vermont, not Congressional Acts.   *Grand Trunk R.R. Co. v. Richardson*, 91 U.S.

24   454, 455 (1875).   It also involved surface use of the right-of-way, as opposed to the

25   subsurface pipeline here.   *Id.* at 468-69.   Similarly, *City of Long Beach* involved a

26

27   _____

[6] Union Pacific's own authority recognizes this.   *See N. Pac. Ry. Co. v. Townsend*,

28   190 U.S. 268, 271 (1903) (grant "explicitly stated to be for a designated purpose").

Cooley LLP
Attorneys At Law
San Diego

15.

Kinder Morgan's Brief Re:
Plaintiffs' MTD UP's Counterclaims
Case No. 8:15-cv-00718-Jvs-DFM

private deed, not Congressional Acts, and surface uses.  *City of Long Beach v. Pac. Elec. R. Co.*, 44 Cal.2d 599, 600-02 (1955).  This is an important distinction: "[t]he Railroad needs to control the surface in order to operate," and indeed, "trains run on the surface," and "stations and terminals are above ground." *Union Pac. R.R. Co.*, 231 Cal. App. 4th at 176.  The same is not true for the subsurface.  *Id.* at 177.  Moreover, the Department of Interior opinions Union Pacific touts are not law, and are in conflict with U.S. Supreme Court and Circuit Court precedent.

There is no "unfairness" in applying the COA Opinion, which is well-reasoned, and binding on Union Pacific.  The COA Opinion is also consistent with the text, history, and purposes of the Congressional Acts and authorities citing them.

## IV. UNION PACIFIC'S COUNTERCLAIMS ARE BARRED BY THE ROOKER-FELDMAN DOCTRINE.

In addition to collateral estoppel, Union Pacific's attempt to relitigate issues already decided by the COA Opinion is barred by the *Rooker-Feldman* doctrine.  The *Rooker-Feldman* doctrine is a jurisdictional rule that prohibits federal courts from exercising appellate review over final state court judgments.  *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858-59 (9th Cir. 2008).  The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the "*de facto* equivalent" of such an appeal.  *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003).

"To determine whether an action functions as a *de facto* appeal, [courts] pay 'close attention to the relief sought by the federal-court plaintiff.'"  *Cooper v. Ramos*, 704 F.3d 772, 777-78 (9th Cir. 2012).  A *de facto* appeal exists when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision."  *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013).

Union Pacific's Counterclaim constitutes a *de facto* appeal of the COA Opinion because Union Pacific alleges legal error by the Court of Appeal, and

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

16.

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM

seeks relief from this Court by asking for a declaratory judgment directly contrary to the COA Opinion, and to prevent nationwide application of the COA Opinion. (*See* Dkt. No. 135 at ¶¶ 24, 26-27, 32; Opp. at 11:17-19 (arguing that the COA Opinion "wrongly interpreted the Congressional Acts"); *id.* at 4:10-11 ("[n]o deference [to the COA Opinion] also is appropriate, because the Rents Decision is entirely wrong on the law"); *id.* at 13:10-12 ("Union Pacific cannot be bound, nationwide, by a state court's interlocutory misunderstanding of important issues of federal law").) As such, this Court lacks jurisdiction over Union Pacific's Counterclaims. *See Reusser*, 525 F.3d at 859-60 (district court lacked jurisdiction to review claim of extrinsic fraud that was separately litigated and rejected by state court); *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 56 F. Supp. 3d 1121, 1141 (C.D. Cal. 2014) (declaratory relief claim that was the "equivalent to a request that the court declare the state court order … void" was "precisely the type of claim that is barred by *Rooker-Feldman*").

## V.   CONCLUSION

For the foregoing reasons, this Court should rule that Union Pacific may not relitigate the COA Opinion's determination of Union Pacific's property interests, under the pre-1871 Acts and 1875 Act.

Dated:   May 2, 2016

COOLEY LLP
STEVEN M. STRAUSS (99153)
M. RAY HARTMAN III (211205)
SUMMER J. WYNN (240005)
CATHERINE J. O'CONNOR (275817)


*/s/ Summer J. Wynn*
Summer J. Wynn (240005)

Attorneys for Defendants
SFPP, L.P., KINDER MORGAN OPERATING L.P. "D," and KINDER MORGAN G.P., INC.

130950637

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

17.

KINDER MORGAN'S BRIEF RE:
PLAINTIFFS' MTD UP'S COUNTERCLAIMS
CASE NO. 8:15-CV-00718-JVS-DFM