1  Joseph Rebein, (Admitted *Pro Hac Vice*)
2  SHOOK, HARDY & BACON L.L.P.
   2555 Grand Boulevard
3  Kansas City, Missouri 64108
   Telephone: 816-474-6550
4  Facsimile: 816-421-5547
5  jrebein@shb.com

6  Tammy B. Webb, SBN 227593
7  John K. Sherk III, SBN 295838
   SHOOK, HARDY & BACON L.L.P.
8  One Montgomery, Suite 2700
   San Francisco, California 94104
9  Telephone:   415-544-1900
10 Facsimile:   415-391-0281
   tbwebb@shb.com
11 jsherk@shb.com

12
   *Attorneys for Defendant*
13 Union Pacific Railroad Company

14
15                    UNITED STATES DISTRICT COURT

16                    CENTRAL DISTRICT OF CALIFORNIA

17 | In re SFPP Rights-of-Way Claims | Case No. 8:15-cv-00718-JVS-DFMx |

**UNION PACIFIC RAILROAD COMPANY'S RESPONSE TO KINDER MORGAN'S BRIEF ON ISSUES RAISED BY PLAINTIFFS' MOTION FOR PARTIAL DISMISSAL OF DEFENDANT UNION PACIFIC RAILROAD COMPANY'S COUNTERCLAIMS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 1

    A. Kinder Morgan Misstates the Holding of the Rents Decision. ........... 1

    B. Kinder Morgan Mischaracterizes the Trial Court Record. ................. 2

        1. The Congressional Acts Issue Was Not Actually Litigated in the Rents Case. ............................................................................. 2

        2. Union Pacific Was Denied a Full and Fair Opportunity and Motive to Litigate the Congressional Acts Issue in the Rents Case, Including Railroad Purposes. ............................................ 6

        3. No Final Decision on the Merits Has Been Reached in the Rents Case. ............................................................................... 9

    C. The Rooker-Feldman Doctrine is Inapplicable. ................................ 10

III. CONCLUSION ............................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Border Bus. Park, Inc. v. City of San Diego*,
   142 Cal. App. 4th 1538 (2006) ................................................................................ 10

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005) ............................................................................................ 10, 11

*Groves v. Peterson*,
   100 Cal. App. 4th 659 (2002), *as modified* (Aug. 9, 2002) ........................................ 6

*Lance v. Dennis*,
   546 U.S. 459 (2006) ................................................................................................. 11

*Lewis v. YouTube, LLC*,
   244 Cal. App. 4th 118 (2015) .................................................................................... 6

*Skinner v. Switzer*,
   562 U.S. 521 (2011) ................................................................................................. 10

*Trope v. Katz*,
   11 Cal. App. 4th 287 (1995) ...................................................................................... 7

*Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*,
   231 Cal. App. 4th 134 (2014) ....................................................................... 1, 6, 7, 8

*Yu v. Signet Bank*,
   103 Cal. App. 4th 298 (2002) .................................................................................... 9

**OTHER AUTHORITIES**

Restatement (Second) of Judgments § 13 (1982) ............................................................ 9

## I.  INTRODUCTION

After full briefing on Plaintiffs' Motion for Partial Dismissal of Defendant Union Pacific Railroad Company's Counterclaims, Kinder Morgan filed a Brief on the issues raised by Plaintiffs' Motion. (Doc. No. 151). Kinder Morgan, like the Plaintiffs, now seeks to preclude this Court at the pleadings stage from determining the threshold merits issue of the parties' respective rights under the pre-1871 and 1875 Congressional land grant statutes raised in Union Pacific's Counterclaim (Doc. No. 135, Counts I and II). Union Pacific files this response, because Kinder Morgan's Brief misstates the holding of the Rents Decision, mischaracterizes the underlying trial court record, and incorrectly seeks to invoke the *Rooker-Feldman* doctrine as an entirely new basis for dismissal.

## II.  ARGUMENT

The parties agree on the relevant law governing issue preclusion in California. The parties' disagree whether three elements of issue preclusion have been met—namely, whether (1) the Congressional Acts issue was *actually* litigated in the Rent action; (2) Union Pacific had a full and fair opportunity and motive to litigate the Congressional Acts issue in the Rents case; and (3) the Rents Decision is final and on the merits.

### A.  Kinder Morgan Misstates the Holding of the Rents Decision.

First, Kinder Morgan misstates the holding of the Rents Decision. The Rents case involved a private contractual dispute to determine the fair market value of rent due from Kinder Morgan to Union Pacific. Whether the Rents Decision is a "landmark opinion," as Kinder Morgan announces (Doc. No. 151 at 1), is at best an exaggeration and in any event irrelevant to the issues raised on Plaintiffs' Motion. On its face, the Rents Decision "merely hold[s] that . . . the pre-1871 and 1875 Congressional Acts, by themselves, did not convey a sufficient property interest to the Railroad to justify it collecting rent on the Pipeline's subsurface easements." *Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*, 231 Cal. App. 4th 134, 209 (2014). In the same breath, the Rents Decision expressly disclaims any ruling as to the validity of the easements granted as a whole. *Id.* As discussed below, Union Pacific disputes that even the limited issue whether the Congressional Acts provide Union

Pacific with sufficient rights to collect rent on the Pipeline easements actually was litigated in the Rents case. Kinder Morgan's argument to expand the scope of the Rent Decision to reach Union Pacific's rights to grant the Pipeline's easements in the first place (Doc. No. 151 at 9) has no basis in the Rents Decision or otherwise. The relief Union Pacific seeks in its claims for declaratory judgment and quiet title—a judicial determination of the rights and responsibilities of the parties of the real property in question and to quiet title in the real property in question—is outside the narrow scope of the Rents Decision.

### B.  Kinder Morgan Mischaracterizes the Trial Court Record.

#### 1.  The Congressional Acts Issue Was Not Actually Litigated in the Rents Case.

During the Rents case, Kinder Morgan expressly and repeatedly disclaimed any challenge to Union Pacific's right to collect rent from Kinder Morgan on easements on Congressional Act lands. *See, e.g.,* Doc. No. 148 at 9-10. The only "property interests" challenged by Kinder Morgan and litigated in the Rents case were: (1) whether Union Pacific's lack of full fee title should affect the fair market *valuation* of the rent due; (2) whether Union Pacific was able to reserve sufficient property interest on properties it had *sold* to third parties to allow it to continue to collect rent from Kinder Morgan for the pipeline easement; and (3) whether Union Pacific had produced sufficient evidence of its title to the properties through title cards and other evidence.

The filings cited by Kinder Morgan in its Brief unequivocally demonstrate that the issues raised in Union Pacific's Counterclaim were never raised, much less litigated, during the trial of the Rents case.[1] For example, many of the filings now relied upon by Kinder Morgan raised the issue of title imperfections only in the context of arguing that Union Pacific's lack of full fee title should lower the fair market value of the rent payable on such

---

[1] Kinder Morgan cites its Answer to Union Pacific's Petition for Rehearing and its Answer to Union Pacific's Petition for Review to the California Supreme Court (Exs. 12 and 14), which in turn cite various pleadings in the appellate record. Union Pacific cites to the actual pleadings referenced by Kinder Morgan and uses the same labeling system for ease of reference.

easements, while expressly disclaiming any challenge to Union Pacific's right to collect rent on those properties:

- Kinder Morgan cites 1SR-1-19 (attached as Ex. A), Union Pacific's Notice of Motion and Motion in Limine to Exclude Evidence Regarding Union Pacific's Title, in which Union Pacific sought to exclude evidence of title defects as irrelevant, and argued that there was no evidence that Union Pacific's title was anywhere insufficient to grant the easements. *Id.* at SR 8. Kinder Morgan fails to point out its response to that motion in which it disclaimed any effort to dispute Union Pacific's ability to charge some quantum of rent, and asserted that title defects were relevant only to the fair market valuation issue: **"SFPP is not arguing that it is absolved from paying rent because Union Pacific has defective title, and Union Pacific has of course not sued in this action for nonpayment of rent. Instead, the present case is a contractually agreed-to adversarial proceeding to set *fair market value going forward*. SFPP does not dispute that it has to pay some amount of rent to Union pacific; the issue being tried is what is *fair market rent*."** *Id.* at SR 13-14 (emphasis in original);

- Kinder Morgan cites 1SR 146-210 (attached as Exhibit B), Union Pacific's Notice of Motion and Motion to Strike Evidence Regarding Status of Union Pacific's Title in Subject Property, in which Union Pacific pointed out that its title, whether in fee or easements, was sufficient as a matter of law to grant the subject easements. *Id.* at 164-66. Kinder Morgan neglects to append its response to that Motion in which it agreed, and disclaimed any intention to challenge Union Pacific's right to charge rent for these easements: **"But the first portion of Union Pacific's argument proceeds from a fundamental misunderstanding of Defendant's title position. Defendants do not challenge Union Pacific's ability to grant easements on railroad land that it has not sold or otherwise transferred. Defendants rather contend that the hodge-podge of Union Pacific's title interests in its right-of-way– much of which is admittedly far less than full fee ownership–creates a material risk that depresses the fair market value of the subject property."** Defendant's Opposition to Union Pacific's Railroad Company's Motion to Strike Evidence Regarding Union Pacific's Inadequate Title, *Id.* at SR 169-193 at 182-83;

- Kinder Morgan cites SR211-233 (attached as Exhibit C), Defendant's Reply in Support of Motion for Judgment or, In the Alternative, to Strike the Expert Testimony of John Donahue and Randy Seale. But Kinder Morgan fails to direct this Court's attention to the part of its Reply in which it expressly disavows any challenge to Union Pacific's right to charge rent for the easements in issue: **"Defendants do not claim that Union Pacific lacked title to grant the easements (though that may well be true). Instead, we advance a simple proposition rooted both in common sense and California law: good (or poor) title affects the fair market value of property."** *Id.* at SR 217.

- Kinder Morgan's Exhibit 3 at p. 7: Kinder Morgan argued in its Opposition to Union Pacific Railroad Company's Motion in Limine to

3

Exclude Evidence Regarding Union Pacific's Title that evidence of Union Pacific's title was relevant only in determining the market value of rent due, not whether rent could be charged at all. But, Kinder Morgan omits the following sentence from the language it highlights: "**Evidence of Union Pacific's title interest is relevant to the market value of rent and should be allowed**."

Other filings now cited by Kinder Morgan address the issue of whether Union Pacific could continue to charge rent for easements on property it had sold or abandoned by reserving an easement on the alienated land:

- RA 154-199 (attached as Ex. D), Union Pacific's Motion for Judgment on Kinder Morgan's Cross Complaint, at RA 160 (arguing that the **"weight of the evidence shows that Union Pacific *is* entitled to collect rent for the small portions of the subject pipeline easement that have been sold or allegedly abandoned"**);

- AA 251-276 (attached as Ex. E), Revised Ruling on Union Pacific's Motion for Judgment on Kinder Morgan's Cross Complaint and Kinder Morgan's Motion Regarding Union Pacific's Reservations of Easements, at AA 252 ("**Kinder Morgan contends that whenever the Railroad transferred its ownership interest it thereby terminated its right to collect rents for easements occupied by the Pipeline."**);

- SR20-145 (attached as Ex. F), Kinder Morgan's Motion for Judgment, at SR 24 (arguing that "**there are many miles of the Pipeline's easement – totaling millions a year in demanded rents – where public documents affirmatively show that the Railroad has long since disposed of the land through which the easements run and thus did not own the servient estates as of the valuation date."**);

- SR 91-97 (attached as Ex. G), [Proposed] Cross Claim for Declaratory Relief, at SR 96 (**"Kinder Morgan desires a judicial determination of its rights and obligations to pay rent to Union Pacific for Kinder Morgan easements located on land that, as of January 1, 2004 or at any time thereafter, Union Pacific did not own, including any land transferred or abandoned by the Railroad."**);

- SR 234-88 (attached as Ex. H), Defendant's Opposition to Union Pacific's Motion for Judgment on Kinder Morgan's Cross Complaint, at SR 238 (**"Union Pacific appears to have finally realized that it cannot legally reserve an easement on an easement, i.e., cannot do the thing that many of its documents in fact do."**);

- RA 131-153 (attached as Ex. I), Defendant's Motion for a Determination That Union Pacific's Purported "Reservations" Of New Easements When Selling Subject Property Do Not Authorize It To Collect Rent From Defendants For Their Preexisting Easements.

- Kinder Morgan's Exhibit 4 at p. 1: In Kinder Morgan's Motion for Judgment, it sought judgment not on the basis that Union Pacific had failed to prove that the Congressional Acts provided it with sufficient

4
UNION PACIFIC'S RESPONSE TO KINDER MORGAN'S BRIEF
CASE NO. 8:15-cv-00718-JVS

986323

interests to grant easements to the Pipeline, but only on the basis that Union Pacific could not charge rent for easements in land it had abandoned or alienated/sold to third parties. "**As we show below, there are many miles of the Pipeline's easement . . . where public documents affirmatively show that the Railroad has long since disposed of the land through which the easements run and this did not own the servient estates as of the valuation date.**"

Kinder Morgan also cites to the filings in support of its Renewed Motion for Judgment. Doc. No. 151 at 8. But these filings demonstrate that Kinder Morgan disclaimed at the trial court level any argument that the Congressional Acts failed to provide Union Pacific with sufficient property rights to collect rent on the pipeline easements:

- Kinder Morgan's Exhibit 5: In Kinder Morgan's Motion for Judgment, or, Alternatively to Strike Testimony of Union Pacific's Appraisers, Kinder Morgan never argued that Union Pacific lacked adequate rights to grant easements, but merely pointed out in a footnote that some authorities indicate that grants to railroads convey a mere easement rather than a possessory interest. Instead, Kinder Morgan contended that Union Pacific had failed to provide sufficient evidence of its title, or in the alternative, that the Court should strike Union Pacific's appraisal experts who, Kinder Morgan argued, had assumed Union Pacific owned each parcel in fee;

- RA75-97 (attached as Ex. J): In its Opposition, Union Pacific argued, among other issues, that the easements conferred by the Acts of Congress were as a matter of law sufficient to grant the subject leases, whether it owned the parcels in fee or not. *Id.* at RA 91-93;

- SR 211-233 (Ex. C): In its Reply, Kinder Morgan not only failed to dispute Union Pacific's assertion of its rights under the Acts of Congress, but specifically disclaimed any such argument: "**Defendants do not contend that Union Pacific did not have sufficient title to grant the subject easements. Rather Defendants only advance the common sense proposition, supported by California law, that the quality of title can negatively affect the fair market value of property.**" *Id.* at SR 230.

- The trial court denied Kinder Morgan's Motion without ever reaching the issue of what rights were conferred by the Congressional land grants. Instead the trial court rejected the assertion that Union Pacific was required to prove title to every parcel of land in issue, found that Union Pacific had offered adequate evidence of its ownership, and rejected Kinder Morgan's assertion that lack of fee title affected the fair market value of rent due. *See* Ruling on Kinder Morgan's Motion for Judgment, or Alternatively, to Strike Testimony of Union Pacific's Appraisers, and on Union Pacific's Motion to Strike Evidence Regarding its Title (attached as Ex. K).

986323

1  In its Brief, Kinder Morgan also inexplicably cites to its Motion for New Trial and its
2  Motion to Vacate the Judgment. AA 509-550 (attached as Ex. L). However, neither of these
3  documents claims error based on Union Pacific charging rent on Pipeline easements on
4  Congressional Act land, because this issue was never challenged or litigated.

5  Any notion that Union Pacific's title was briefed "extensively" on appeal also is
6  wrong. *See* Doc. No. 151 at 8. As Union Pacific noted in its Opposition to Plaintiffs'
7  Motion, the court of appeal allowed only limited briefing after oral argument and no
8  opportunity to supplement the record. *See* Doc. No. 148 at 4, citing Ex. B. Each party was
9  allowed 15 double-spaced pages to address the court of appeal's post-argument questions,
10 and 10 double-spaced pages in reply. And while Kinder Morgan was granted leave to
11 supplement the record with certain letters from Southern Pacific railroad lawyers from the
12 1950s to 1970s that had been referenced but not necessarily all admitted during the trial, *see*
13 *Union Pac. R.R. Co.*, 231 Cal. App. 4th at 155 n.8, Union Pacific could not augment the
14 record with additional evidence, for example, of the pipeline furthering a railroad purpose,
15 because railroad purpose was not an issue during the trial below. *See Lewis v. YouTube,*
16 *LLC*, 244 Cal. App. 4th 118, 123 (2015) ("Augmentation does not function to supplement
17 the record with material not before the trial court."). Nor was Union Pacific required to seek
18 leave to do so in order to defeat the application of issue preclusion. *See Groves v. Peterson*,
19 100 Cal. App. 4th 659, 688-89 (2002), *as modified* (Aug. 9, 2002).

20 **2. Union Pacific Was Denied a Full and Fair Opportunity and Motive to Litigate the Congressional Acts Issue in the Rents Case, Including Railroad Purposes.**
21

22 Union Pacific was denied a full and fair opportunity and motive to litigate the
23 Congressional Acts issue in the Rents case, because this issue was not raised, much less
24 litigated, there. In its Brief, Kinder Morgan argues that Union Pacific's property rights under
25 the Congressional Acts were not raised *sua sponte* by the court of appeal, however, it is
26 uncontroverted that the trial court did not address even the limited issue whether the
27 Congressional Acts provide Union Pacific with sufficient property rights to collect rent from
28

Kinder Morgan. As noted above, Kinder Morgan at most argued that Union Pacific had not offered adequate evidence of its title to support its case. *See* Ex. F at SR 102. The question of Union Pacific's right to collect rent on easements on Congressional Acts property unsurprisingly was not appealed and neither party was prepared to address it when the court of appeal first broached the issue at oral argument. 231 Cal. App. 4th at 155 (noting that "counsel for either side did not appear fully prepared to respond to this inquiry.").[2]

Similarly, Union Pacific never was afforded the opportunity to submit evidence demonstrating how the pipeline–as actually used by Union Pacific to provide fuel to its locomotives–furthers a railroad purpose under the Congressional Acts. At trial, Union Pacific had no means of knowing that this was an issue requiring evidence. Kinder Morgan now asserts that Union Pacific knew its title was in dispute throughout the trial. Doc. No. 151 at 9. But this is demonstrably false, as shown above, because Kinder Morgan expressly disavowed any challenge to Union Pacific's right to collect rent for easements on Congressional Act lands. As the trial court explained, there was "no evidence disputing that the Railroad's title to virtually all of the subject property." 231 Cal. App. 4th 189.

The sole example of testimony on "railroad purpose" identified by the court of appeal is testimony by one witness (Mr. Oakman) who testified that anything that enhanced value for Union Pacific's shareholders is a railroad purpose. *Id.* at 174 n.21. Contrary to Kinder Morgan's assertion, Union Pacific did not call a witness to testify about "railroad purpose." Mr. Oakman was called by Kinder Morgan and the portions of his testimony that were cited in the Rents Decision came in as part of Kinder Morgan's efforts to lay foundation for its expert theory that less than fee title affects the fair market value of the easements. *See*

---

[2] Kinder Morgan attempts to assign significance to the denial of Union Pacific's Petition for Rehearing to the court of appeal and Petition for Review to the California Supreme Court. However, the California Supreme Court has held that the denial of Rehearing and/or Review is not afforded any legal significance. *E.g.*, *Trope v. Katz*, 11 Cal. App. 4th 287, 288 n.1 (1995) ("It is well established that 'our refusal to grant a hearing in a particular case is to be given no weight insofar as it might be deemed that we have acquiesced in the law as enunciated in a published opinion of a Court of appeal when such opinion is in conflict with the law as stated by this court.'").

1  Defendants' Reply in Support of Motion for Judgment, or, In the Alternative, to Strike the
2  Expert Testimony of John Donahue and Randy Seale at SR 219, 220 (citing Mr. Oakman's
3  testimony in support of Kinder Morgan's valuation argument) (Ex. C).  The trial court
4  rejected this theory, however, putting the issue to rest without ever having to consider
5  whether or not the subject pipelines constituted a "railroad purpose."  *See* 2AA443:21-444:1
6  (attached as Ex. M).

7       There is simply no support for Kinder Morgan's suggested expansive reading of the
8  court of appeal's analysis of the railroad purpose issue.  At no point did the court of appeal
9  hold *as a matter of law* that under no factual scenario could the pipeline further a railroad
10 purpose; rather, it merely stated that, even if true, "the mere fact that the Railroad used fuel
11 from the Pipeline in its locomotives would not mean the pipeline easements themselves
12 served a railroad purpose."  *Id.* at 166-67.  The court of appeal made no ruling beyond this
13 "mere fact," and Union Pacific should be allowed in this case to submit evidence beyond this
14 "mere fact," including evidence on the extent to which Union Pacific relies on fuel provided
15 by the pipeline via dedicated facilities and the impact of that fuel on its operational costs and
16 logistics.

17      Nor is there any merit to Kinder Morgan's assertion that the court of appeal
18 "assumed" whatever facts Union Pacific might have been able to put into evidence on the
19 issue of railroad purpose.  Union Pacific represented to the court of appeal that "[i]f given
20 the opportunity to present the evidence . . . not only would Union Pacific be able to show
21 that it receives enormous volumes of fuel from the pipelines at facilities on its rights-of-way,
22 but also that receipt of that fuel is necessary to the operation of the railroad and results in
23 substantial efficiencies for the railroad, among other facts supportive of the 'railroad
24 purpose' of the pipeline."  Petition for Rehearing at p. 32 (attached as Ex. N).  Instead of
25 giving Union Pacific that opportunity, the court of appeal simply concluded that Union
26 Pacific's representations about the use of the fuel would be consistent with the railroad
27 purchasing fuel from offsite terminals like any member of the general public—which would
28

8

be insufficient as a matter of law in the court of appeal's view. 231 Cal. App. 4th at 166-67. In short, the court of appeal's conclusion on the railroad purpose issue is based upon a hypothetical set of facts that is simply incorrect.

### 3. No Final Decision on the Merits Has Been Reached in the Rents Case.

Kinder Morgan also argues that the Rents Decision is a final determination on the merits because its pronouncements are now law of the case and therefore binding on remand. However, law of the case has no bearing on whether the Rents Decision is a final decision on the merits for purposes of determining issue preclusion. Indeed, the law of the case doctrine provides that a court of appeal's determination of an issue of law is conclusive in subsequent proceedings in the same case, unless new evidence is adduced on retrial, while issue preclusion operates to bar relitigation of an issue of ultimate fact that was determined by a valid and final judgment in a previous lawsuit. *Yu v. Signet Bank*, 103 Cal. App. 4th 298, 309 (2002).

Kinder Morgan relies on distinguishable authority in arguing that the Rents Decision is final under issue preclusion. The authority relied upon by Kinder Morgan involves cases where the court of appeal reviewed and issued an opinion (and remittitur) that ended the litigation. *See* Doc. No. 151 at 11-13. None of the cases relied upon by Kinder Morgan suggest that finality has been satisfied where an appeal court reverses and remands for further proceedings, particularly where the trial court is expressly authorized to receive additional evidence on retrial. None of the cases relied upon by Kinder Morgan addresses a situation, like this one, in which a litigant has not yet had an opportunity to seek *any* federal review of important issues of federal law, because there is not yet any final judgment from the state courts sufficient to give the Supreme Court jurisdiction. Important issues of federal law and policy cannot be decided, nationwide, by an interlocutory state court decision that is not yet subject to federal review—particularly when the Department of the Interior, which

9

UNION PACIFIC'S RESPONSE TO KINDER MORGAN'S BRIEF
CASE NO. 8:15-cv-00718-JVS

986323

has articulated a precisely opposite understanding of the law in formal opinions going back decades, has not been consulted.

A judgment is final for purposes of issue preclusion only where it "represents the completion of all steps in adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication." The Restatement (Second) of Judgments § 13 (1982). For purposes of issue preclusion, a final judgment includes prior adjudication of an issue in another action "that is determined to be sufficiently firm to be accorded conclusive effect." *Border Bus. Park, Inc. v. City of San Diego*, 142 Cal. App. 4th 1538, 1564 (2006) (quoting Restatement (Second) of Judgments § 13 (1982)). To determine whether a judgment is "sufficiently firm" California courts have looked to certain factors in determining finality, including: (1) whether the parties were fully heard, (2) whether the court supported its decision with a reasoned opinion, and (3) whether the decision was subject to appeal or was reviewed on appeal. *See id.* at 1565.

As shown above, Union Pacific did not receive a full opportunity to be heard on its interests in the Congressional Act issues nor did it receive a full opportunity to present evidence in support of the pipeline furthering a railroad purpose. Moreover, because the Rents case has been remanded for further proceedings and additional evidence in the discretion of the trial judge, Union Pacific will have further opportunities to appeal to both the California Supreme Court and the United States Supreme Court, if necessary. Because Union Pacific's direct appeals have not been exhausted, the Rents Decision is hardly "sufficiently firm to be accorded conclusive effect." *See id.*

### C. The Rooker-Feldman Doctrine is Inapplicable.

The *Rooker-Feldman* doctrine, which Kinder Morgan raises in its Brief, is inapplicable to Plaintiff's Motion, because Union Pacific's Counterclaim is not a *de facto* appeal of the Rents Decision. Kinder Morgan misinterprets the *Rooker-Feldman* doctrine. The *Rooker–Feldman* doctrine precludes a losing party in state court who complains of injury caused by the state-court judgments from bringing a case seeking review and rejection

of that judgment in federal court. *See, e.g., Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005); *see also Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (emphasizing that the *Rooker–Feldman* doctrine is limited to cases "brought by state-court losers . . . inviting district court review and rejection of the state court's judgments.") (internal quotation marks, alteration, and citation omitted).

First, the court of appeal remanded the Rents case to the trial court for further proceedings. Therefore, there is no final judgment which Union Pacific is seeking a federal court to review and overturn. *See Exxon Mobil Corp.*, 544 U.S. at 291-92 (explaining that *Rooker-Feldman* doctrine is appropriate in very few cases, and only when the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state court judgment and seeking review and rejection of that judgment).

Moreover, Union Pacific's Counterclaim does not constitute a *de facto* appeal of the Rents Decision. Contrary to Kinder Morgan's contention, Union Pacific is not seeking any relief from this Court that would operate to overturn the Rents Decision. *Exxon Mobil Corp.*, 544 U.S. at 291-92 (*Rooker-Feldman* doctrine is limited to circumstances where the loser in state court proceeding was seeking to have the federal court overturn that judgment). Instead, Union Pacific is seeking federal declaratory relief on issues that were not litigated in the Rents case that is consistent with centuries of federal and state caselaw interpreting Congressional land grant statutes, and the longstanding views of the Department of the Interior, which are entitled to deference. That Union Pacific is asking this Court to reach a different conclusion regarding the interpretation of a federal issue than Kinder Morgan would like to read into the Rents Decision is hardly the same thing as asking this Court to overturn the California court of appeal.

Finally, Kinder Morgan's argument "erroneously conflates preclusion law with *Rooker-Feldman* [but]. . . *Rooker-Feldman* is not simply preclusion by another name." *Lance v. Dennis*, 546 U.S. 459, 466 (2006). Attempts to relitigate an issue purportedly determined by a state case are properly analyzed under issue or claim preclusion principles

11

rather than *Rooker-Feldman*. As explained by the Supreme Court, Congress has directed federal courts to look principally at state law in deciding what effect to give state-court judgments. *Id.* "Incorporation of preclusion principles into *Rooker-Feldman* risks turning that limited doctrine into a uniform federal rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." *Id.*

## III. CONCLUSION

Plaintiffs' Motion for Partial Dismissal of Defendant Union Pacific Railroad Company's Counterclaims and for a More Definite Statement (Doc. No. 139) should be denied.

Dated: May 9, 2016

Respectfully submitted,

s/ *Tammy B. Webb*
Joseph Rebein, (Admitted *Pro Hac Vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
jrebein@shb.com

Tammy B. Webb
John K. Sherk, III
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2700
San Francisco, California 94104
Telephone: 415-544-1900
Facsimile: 415-391-0281
jsherk@shb.com
tbwebb@shb.com

Attorneys for Defendant
Union Pacific Railroad Company

986323