UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 15-00718 JVS (DFMx) consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
| Title | In Re SFPP Right-of-Way Claims | | |

Present: The Honorable    James V. Selna

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS )  Order Granting in Part Plaintiffs' Sandra L. Hinshaw, Susan Wells and Martin Wells Motion to Dismiss Defendant Union Pacific's Counterclaim and Motion for More Definite Statement**

Plaintiffs/Counterclaim defendants Martin Wells and Susan Wells, as trustees of the Martin and Susan Wells Revocable Trust, and Sandra L. Hinshaw, as trustee of the Sandra L. Hinshaw Living Trust (collectively, "Plaintiffs"), move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the first and second counterclaims of Defendant/Counterclaim plaintiff Union Pacific Railroad Company ("Union Pacific"). (Mot. Partial Dismissal and Mot. More Definite Statement, Docket ("Dkt.") No. 139.) Plaintiffs also move pursuant to Federal Rule of Civil Procedure 12(e) for a more definite statement on Union Pacific's fifth counterclaim. (Id.) Union Pacific opposes. (Opp'n, Dkt. No. 148.) Plaintiffs have replied. (Reply, Dkt. No. 150.)

Defendants SFPP, L.P., Kinder Morgan Operating L.P. "D," and Kinder Morgan G.P., Inc. (collectively, "Kinder Morgan") submitted a brief for the Court's consideration in deciding Plaintiffs' motion to dismiss. (Kinder Morgan Br., Dkt. No. 151.) Union Pacific filed a response to Kinder Morgan's brief. (Resp. Kinder Morgan Br., Dkt. No. 156.)

Finally, Union Pacific submitted, as supplemental authority, certain "Rulings on Scope of Remand" by the Superior Court for the State of California for the County of Los Angeles in the matter of Union Pacific Railroad Company v. Santa Fe Pacific Pipelines Inc. et al., Case No. BC 319170 (May 10, 2016). (Dkt. No. 158.) Kinder Morgan filed a response. (Dkt. No. 160.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
| Title | In Re SFPP Right-of-Way Claims | | |

For the following reasons, the Court grants in part Plaintiffs' motion to dismiss the first and second counterclaims. Further, the Court grants Plaintiffs' motion for a more definite statement regarding Union Pacific's fifth counterclaim.

I.     Background

The general background of this dispute is recited in this Court's January 21, 2016 Order granting in part and denying in part Union Pacific's and Kinder Morgan's motions to dismiss. (Dkt. No. 116.) The remaining background is based on Union Pacific's Answer and Counterclaim and is therefore based solely on allegations.

Union Pacific and its predecessors acquired a "railroad right of way" adjacent to parcels allegedly owned by Plaintiffs by virtue of one or more Congressional land grant statutes enacted prior to 1871, or it acquired its right of way pursuant to the General Railroad Right-of-Way Act of 1875. (Union Pacific's Counterclaim ¶ 5, Dkt. No. 135.) Union Pacific may have also acquired small portions of its right of way by private conveyance. (Id.) Union Pacific constructed its railroad in the 19th century and has operated its railroad ever since; the railroad has not been abandoned. (Id. ¶¶ 6, 14.)

As early as the 1950s, Kinder Morgan began constructing, operating, and maintaining a pipeline within Union Pacific's right of way. (Id. ¶ 8.) Union Pacific has granted to Kinder Morgan an easement to construct, maintain, and operate Kinder Morgan's high pressure petroleum products pipeline and appurtenances within Union Pacific's right of way. (Id. ¶ 9.)

Union Pacific itself purportedly also made "substantial improvements" to "the property" at Union Pacific's expense. (See id. ¶¶ 51–53.)

II.    Legal Standards

   A.     Motion to Dismiss – 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
|---|---|---|---|
| Title | In Re SFPP Right-of-Way Claims | | |

A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

  B.  Motion for More Definite Statement – 12(e)

"A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her." San Bernardino Pub. Employees Ass'n v. Stout, 946 F. Supp. 790, 804 (C.D. Cal. 1996). A motion for a more definite statement must be considered in light of Rule 8's liberal pleading standards. See, e.g., Bureerong v. Uvawas, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996). Rule 8 requires only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Hence, "[m]otions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).

III.  Discussion - Motion to Dismiss

This motion seeks to determine whether 19th century Congressional land grants to Union Pacific and its predecessors conferred the right to Union Pacific to grant an easement to a third party to operate a petroleum pipeline in the subsurface under land

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
| Title | In Re SFPP Right-of-Way Claims | | |

over which its railroad right of way passes. This Court concludes, following binding precedent of the United States Supreme Court and the persuasive reasoning of the California Court of Appeal, that Union Pacific has subsurface rights in its railroad right of way only to the extent that it exercises those rights for a railroad purpose. Further, this Court concludes that, as a matter of law, profiting by renting an easement to a third party to operate an underground, high pressure petroleum pipeline does not constitute a railroad purpose under this analysis. Consequently, Union Pacific's first and second counterclaims for a declaratory judgment and for quiet title are dismissed with prejudice, to the extent that they rely on the 19th century Congressional land grants. These counterclaims are not dismissed to the extent they rely on the railroad having obtained its right of way by private conveyance.

In this order, the Court discusses the law and this case without regard to collateral estoppel. Here, the opinion in Union Pacific R.R. Co. v. Santa Fe Pac. Pipelines Inc., 231 Cal. App. 4th 134 (2014) ("Santa Fe Pacific Pipelines"), is cited for its persuasive value rather than its preclusive effect. In a subsequent order, the Court will discuss whether Union Pacific's first and second counterclaims are barred by issue preclusion collateral estoppel as well.

  A. Rights of Union Pacific Under the 19th Century Congressional Land Grants

This Court begins by separately analyzing both the land grants given to railroads prior to 1871, as well as land grants to railroads given by virtue of the General Railroad Right-of-Way Act of 1875. Most modern courts distinguish these lands grants in this manner. See, e.g., Marvin M. Brandt Revocable Trust v. United States, 134 S. Ct. 1257, 1260–62 (2014). This Court ultimately concludes that the similar holdings in Great Northern Railway Co. v. United States, 315 U.S. 262, 274 (1942) ("Great Northern"), and United States v. Union Pacific Railroad Co., 353 U.S. 112 (1957) ("Union Pacific Railroad"), strongly suggest that the result is the same in this case regardless of which act(s) granted to Union Pacific its railroad right of way.

  1. Pre-1871 Acts

In the midst of the Civil War, Congress passed a law titled "An Act to aid in the Construction of a Railroad and Telegraph Line from the Missouri River to the Pacific

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | <u>**SACV 15-00718 JVS (DFMx)**</u> consolidated with <br> <u>SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492</u> | Date | June 7, 2016 |
| Title | <u>In Re SFPP Right-of-Way Claims</u> | | |

Ocean, and to secure to the Government the Use of the same for Postal, Military, and Other Purposes." Pacific Railroad Act of 1862, Act of July 1, 1862, ch. 120, 12 Stat. 489. The Pacific Railroad Act of 1862 created a new corporation titled "The Union Pacific Railroad Company" and granted a right of way through public lands to the newly formed company "for the construction" of the intended railroad and telegraph line. <u>Id.</u> § 2. The Pacific Railroad Act of 1862 also granted substantial land in checkerboard formation on either side of the line of the railroad. <u>Id.</u> § 3. However, the railroads were not granted any rights in "mineral land." <u>Id.</u>[1] The Pacific Railroad Act of 1862 was followed by the Pacific Railroad Act of 1864. Act of July 2, 1864, ch. 216, 13 Stat. 356. The Pacific Railroad Act of 1864 expanded the land grants appurtenant to the railroad and excluded iron and coal from the definition of "mineral land." <u>Id.</u> § 4.

For this case, the only matter to be considered is what was granted by the conveyance of the right of way. The landmark case <u>Northern Pacific Railway v. Townsend</u>, 190 U.S. 267 (1903) partially answered that question. There, the Supreme Court held that, with respect to the right of way granted over the line of the railroad, these land grants were "of a **limited fee**, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted." <u>Id.</u> at 271 (emphasis added).

The property rights were not solely limited in duration. Instead, the limited *quality* of the railroad's property rights in the right of way was further defined in <u>Union Pacific Railroad</u>, when the Supreme Court held that a grantee railroad was not free to do whatever it wished with the granted right of way. Specifically, railroads were not entitled solely by virtue of their right of way, to drill for oil and gas. Further, the Supreme Court seemed to find that the railroad's interest in the right of way went only so far as that interest furthered a "railroad purpose." The Supreme Court held that, "whatever may be the nature of [the railroad']s interest in the right of way, drilling for oil on or under it is not a railroad purpose within the meaning of s[ection] 2 of [the Pacific Railway Act of 1862]." <u>Union Pacific Railroad</u>, 353 U.S. at 114. Construing its earlier precedents, the Supreme Court in <u>Union Pacific Railroad</u> observed that its precedents had determined that all that was conferred by the grant of "limited fee" in the right of way was "all surface rights to the right of way and all rights incident to a use for **railroad purposes**."

---

[1] For a general background, <u>see</u> <u>Brandt</u>, 134 S. Ct. at 1261 and material cited therein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
|---|---|---|---|

| Title | In Re SFPP Right-of-Way Claims | | |

Id. at 119 (emphasis added). See also Energy Transp. Systems, Inc. v. Union Pac. R.R. Co., 619 F.2d 696, 697 (8th Cir. 1980) ("ETSI II") ("Several decisions have construed [section 2 of the Pacific Railroad Act of 1862] as limiting the nature of the right of way to something less than a fee simple absolute. By its terms, the statute explicitly grants the railroad only a 'right of way' in the land."); Energy Transp. Systems, Inc. v. Union Pac. R.R. Co., 606 F.2d 934, 936 (10th Cir. 1979) ("ETSI I") ("The 'limited fee' concept enunciated in Townsend was severely cut back in [Union Pacific Railroad]."); Wyoming v. Udall, 379 F.2d 635, 640 (10th Cir. 1967) ("we are not impressed with the labels supplied to the title of the railroads in their rights-of-way across the public lands of the United States . . . . [T]he need for the 'limited fee' label [has] disappeared."). By the language of Union Pacific Railroad, the Supreme Court has indicated that a railroad right of way provides rights to the subsurface only if such rights are incident to a use for a railroad purpose.

At the May 31, 2016 hearing on this matter, Union Pacific sought to limit the conclusions the Court drew from Union Pacific Railroad by arguing that the case was decided in the narrow and limited context of a "mineral rights" case. As noted above, Congress excluded "mineral lands" from certain of the land grants conveyed to railroads in the 19th century. However, this Court does not believe that the Supreme Court intended the principles it expressed in Union Pacific Railroad to apply only to issues of natural resource extraction. If the Supreme Court had been concerned solely with whether oil and gas rights, as natural resource extraction rights, had been specifically excluded from the right of way grant, it could have expressed such. Instead, the Supreme Court said that, "this right of way was granted Union Pacific for 'the construction of said railroad and telegraph line.' **That purpose is not fulfilled when the right of way is used for other purposes**." Id. at 114 (quoting Act of July 1, 1862, ch. 120, 12 Stat. 489) (emphasis added). Thus, Union Pacific Railroad cannot be characterized and dismissed as merely a mineral rights case.

Turning attention to the present case, Union Pacific seeks a judgment declaring that "permitting [] pipeline easements for the continued construction, maintenance and operation of the Pipeline's high pressure petroleum products pipeline appurtenances within Union Pacific's right of way is within Union Pacific's railroad right of way rights." (Union Pacific's Answer and Countercls. p. 30. See also id. p. 31, ¶ 30 (claiming "the pipeline easements granted by Union Pacific . . . within Union Pacific's right of way

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | <u>**SACV 15-00718 JVS (DFMx)**</u> consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
| Title | <u>In Re SFPP Right-of-Way Claims</u> | | |

is [sic] within Union Pacific's railroad right of way rights").) The Court finds that this position, with respect to rights granted by virtue of the pre-1871 Acts, fails as a matter of law.

      In a lengthy, well-researched, and thoughtful opinion, the California Court of Appeal has already squarely addressed whether deriving rent from an easement to the pipeline can be considered a railroad purpose and therefore within Union Pacific's railroad right of way rights. There, the California Court of Appeal surveyed federal and state court precedents and came to the conclusion that Union Pacific's rental of the subsurface to a third party for private gain "cannot reasonably be considered a railroad purpose." <u>Santa Fe Pacific Pipelines</u>, 231 Cal. App. 4th at 170. This Court agrees. Most persuasively, this Court agrees with the California Court of Appeal that the situation in the instant case is not unlike the case the Supreme Court decided in <u>Union Pacific Railroad</u>.

      In <u>Union Pacific Railroad</u>, the railroad had argued that it was entitled to drill for oil and gas on its right of way granted by virtue of the pre-1871 acts, but the Supreme Court disagreed with the railroad. The Court found that the railroad's interest in its right of way, being that the right of way was granted "for the construction of" a railroad and telegraph line was a lesser property right than the interests that the railroad had in the property granted to it by virtue of the lavish grants of land granted appurtenant to the railroad right of way. <u>Union Pacific Railroad</u>, 353 U.S. at 114. Essentially, the railroad's property rights in the right of way granted by virtue of the pre-1871 acts were limited to what the railroad required for railroad purposes, and, as drilling for oil and gas was not a railroad purpose, the United States was entitled to seek an injunction preventing the railroad from drilling for oil underneath the right of way. The railroad had simply not acquired, by virtue of the pre-1871 acts, any property rights entitling it to conduct non-railroad activities on the land composing its right of way. Those rights were retained by the United States. See <u>ETSI II</u>, 519 F.2d at 697 (affirming district court's finding that under the acts of 1862 and 1864, the servient estate burdened by the right of way remained in the possession of the United States and could be transferred by the United States).

      The court in <u>Santa Fe Pacific Pipelines</u> held that the railroad's lease of the portions of the subsurface of the servient estate is a use essentially no different than the use of extracting oil and gas. In both instances, the <u>Santa Fe Pacific Pipelines</u> court has said,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
|---|---|---|---|
| Title | In Re SFPP Right-of-Way Claims | | |

Union Pacific "is seeking value from the use of the servient estate, an estate in which its property rights were limited under the [pre-1871 Acts]." Santa Fe Pacific Pipelines, 231 Cal. App. 4th at 168. Because the pre-1871 Acts did not convey to the railroad the right to use of the subsurface for non-railroad purposes, that right did not inure to Union Pacific by virtue of the pre-1871 Acts. This Court fully agrees with the analysis of the Santa Fe Pacific Pipelines court.

No case or other authority cited by Union Pacific compels a different conclusion. The only binding authority cited by Union Pacific is Brandt. But Brandt is a case solely about the railroad's interest in land granted to the railroad under the General Railroad Right-of-Way Act of 1875, see Section III.A.2, *infra*. See Brandt, 134 S. Ct. At 1268 ("This case turns on what kind of interest Congress granted to railroads in their rights of way in 1875"). Moreover, the Brandt Court's characterization of railroad property with an implied reversionary interest as a "fee" does not meaningfully explain the scope of the railroad's "fee."

Even if the right of way is a "fee" under the pre-1871 Acts, the scope of that fee is limited. Townsend, 190 U.S. at 271 (using the term "limited fee"); Union Pac. Railroad, 353 U.S. at 114 (limited fee does not include the right to drill for oil and gas). See also Wyoming v. Udall, 379 F.2d at 640 (the mere use of the term "limited fee" does not convey information about the scope of the railroad's property rights). ETSI I, ETSI II, and Union Pacific Railroad all indicate that the railroad's right to grant an easement to operate a pipeline underneath the railroad right of way is suspect. Union Pacific presents no authority construing the pre-1871 acts grant of the right-of-way in the manner that it urges the Court to adopt. Union Pacific's argument that the Santa Fe Pacific Pipelines case "squarely conflicts with decisions of the Supreme Court" simply lacks citation to those purported decisions of the Supreme Court. (Opp'n p. 5.)

Further, Union Pacific's cites to a 1989 letter[2] of the Department of the Interior.[3]

---

[2] U.S. Dep't of Interior, Office of the Solicitor, Memo. on Proposed Installation of MCI Fiber Optic Communications Line Within Southern Pacific Transportation Co.'s Railroad Right-of-Way, M-36964, (Jan. 5, 1989) 96 Interior Dec. 439. Available at Dkt. No. 148-3.

[3] The Court notes that Union Pacific does not provide the Court with any basis to take judicial notice of the letter. Nevertheless, the Court discusses the letters persuasiveness and reasoning.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
| Title | In Re SFPP Right-of-Way Claims | | |

The letter is unpersuasive. In the portion of the letter cited by Union Pacific for the proposition that the pre-1871 Acts right of ways "inherently encompasses surface and subsurface rights," the letter cites primarily to Justice Frankfurter's dissenting opinion in Union Pacific Railroad, not binding authority on the subject. See 96 Interior Dec. 439, 446. Where the letter indicates that the railroads possess "a fee interest in its pre-1871 rights-of-way," the letter largely ignores the language of the majority opinion in Union Pacific Railroad. indicating that the railroad's interest in its right of way is not greater than what is a "railroad purpose within the meaning of s[ection] 2 of [the Pacific Railway Act of 1862]." Union Pacific Railroad, 353 U.S. at 114. Ultimately, the 1989 Department of Interior letter largely ignores the fact that there were limitations to the scope of a railroad's right of way that were contemplated by the pre-1871 Acts: limitations that are found in the text of those acts[4] and in the Supreme Court precedents interpreting those acts.[5]

For the foregoing reasons, the Court concludes, just as the California Court of Appeal has, that the pre-1871 Acts grant property rights in the right of way only to the extent that those rights further a "railroad purpose." Union Pacific's contention that it owns its railroad right of way in a manner limited only in duration and subject to reversion only if the railroad ceases operation of a railroad is not supported by the text of the pre-1871 Acts nor the applicable precedent interpreting those acts. Consequently, for

---

[4] To be precise, the text of the 1862 Act read: ". . . be it further enacted, That the right of way through the public lands be, and the same is hereby granted to [the Union Pacific Railroad Company] **for the construction of** [the] **railroad and telegraph line**; . . . including all necessary grounds for stations, buildings, workshops, and depots, machine shops, switches side tracks, turntables, and water stations." ch. 120, 12 Stat. 489, § 3.

[5] One further point about the 1989 letter bears mentioning. Some portion of the 1989 letter has been abrogated by a 2011 letter of the Department of the Interior ("M-37025"). Union Pacific argues that the Department of Interior, with respect to the issues related to pre-1871 Acts, "reaffirmed the conclusions of the 1989 Opinion." That is not quite accurate. Footnote 13 of M-37025 specifically says that "we do not disagree with the conclusions articulated by Opinion M-36964 with respect to the pre-1871 grants at issue there, **but note that courts have found certain other pre-1871 grants to convey lesser interests**." M-37025 p. 6 n.13 (emphasis added) (citing ETSI I, ETSI II which in turn cite certain pre-1871 Acts that are at issue in this litigation).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
|---|---|---|---|
| Title | In Re SFPP Right-of-Way Claims | | |

Union Pacific's first and second counterclaims to succeed on grounds that it is entitled to lease an easement in the pipeline by virtue of the pre-1871 Acts, it must be able to show a railroad purpose in its lease of the pipeline to Kinder Morgan.

       2.      Grants Pursuant to the General Railroad Right-of-Way Act of 1875

      In 1875, Congress passed the General Railroad Right-of-Way Act. Act of March 3, 1875, ch. 152, 18 Stat. 482. As described by the United States Supreme Court, the General Railroad Right-of-Way Act of 1875 reflected a change in national policy where the "lavish" grants of land made to the railroads to incentivize the creation of the railroad were ceased and a new national policy granting the railroads much more limited rights in exchange for the creation of the railway system. See generally Great Northern Ry. Co. v. United States ("Great Northern"), 315 U.S. 262, 274 (1942) ("After 1871 outright grants of public lands to private railroad companies seem to have discontinued. But, to encourage development of the Western vastnesses, Congress had to grant rights to lay track across the public domain, rights which could not be secured against the sovereign by eminent domain proceedings or adverse user.").

      The Supreme Court has made it abundantly clear that the railroad's property interest in the right of way secured by virtue of the General Railroad Right-of-Way Act of 1875 is that of an easement and not a fee. See Great Northern, 315 U.S. at 277 ("That [railroad] has only an easement in its rights of way acquired under the Act of 1875 is therefore clear from the language of the act, its legislative history, its early administrative interpretation and the construction placed upon it by Congress in subsequent enactments.") See also Brandt, 134 S. Ct at 1265 ("the [Great Northern] Court specifically rejected the notion that the right of way conferred even a 'limited fee.'") However, courts recognize that a railroad right of way acquired under the 1875 Act is substantially more than a common law easement. See Santa Fe Pacific Pipelines, 231 Cal. App. 4th 134 at 162–163 (citing cases). The case to best explain the difference between the common law easement and the railroad's right of way is possibly Kansas City Southern Railway Co. v. Arkansas Louisiana Gas Co., 473 F.2d 829 (10th Cir. 1973) (Kansas City).

      There, the Kansas City court stated that,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
| Title | In Re SFPP Right-of-Way Claims | | |

> "a railroad company which acquires a right of way over and through lands of another acquires more than the mere right of passage over such lands. It acquires the right to excavate drainage ditches; to construct beneath the surface supports for bridges and other structures; to erect and maintain telegraph lines and supporting poles with part of the poles beneath the surface; to construct passenger and freight depots, using portions of the land below them for foundations; to construct signals; to make fills and cuts to decrease the grades of their rail lines, and to use material from the land covered by the right of way to make such fills; and to construct a roadbed and lay its ties and rails thereon. Hence, it has substantial surface and subsurface rights, which it is entitled to have protected."

473 F.2d at 834–835. This is a non-exhaustive list of possible railroad purposes. However, it gives a sense of the type of rights granted in both the surface and the subsurface of a railroad right of way under the 1875 Act: rights necessary "for the purpose of constructing and running the railroad itself." Santa Fe Pacific Pipelines, 231 Cal. App. 4th at 163. See also M-37025 pp. 9–11 ("any activity undertaken or authorized by a railroad on public lands within an 1875 Act [right of way] that does not derive from or further a railroad purpose would require authorization from the Department [of the Interior].")

Union Pacific suggests that a different legal doctrine comes into play when analyzing the scope of a railroad's rights under the 1875 Act—the "incidental use doctrine." (Opp'n pp. 6–7 n.5, n.6 (citing Grand Trunk R.R. Co. v. Richardson, 91 U.S. 454 (1875) (lease of structures on right of way for railroad's use, as well as the use of others); City of Long Beach v. Pac. Elec. Ry. Co., 44 Cal. 2d 599 (1955) (lease to a lumber company); Mellon v. S. Pac. Transport Co., 750 F. Supp. 226 (W.D. Tex. 1990) (lease of subsurface easements for underground telecommunication cables); Int'l Paper v. MCI Worldcom Network, 202 F. Supp. 2d 895 (W.D. Ark. 2002) (same).) The Court acknowledges that this doctrine is in some tension with the precedential authority cited by the California Court of Appeal in Santa Fe Pacific Pipelines, but concludes that the authority cited by the California Court of Appeal is the appropriate authority to apply here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
|---|---|---|---|
| Title | In Re SFPP Right-of-Way Claims | | |

The California Court of Appeal based much of its reasoning on Great Northern. In Great Northern, the railroad sought to drill for and remove gas, oil and other minerals underneath its right of way, obtained under the 1875 Act. The Supreme Court made clear, however, that this use would exceed the property rights granted by virtue of the 1875 Act, because (as stated above) the railroad's right of way under the 1875 Act "is but an easement." Great Northern, 315 U.S. at 279. Additionally, this easement under the 1875 Act must be construed according to the canon of construction that dictates that "any ambiguity in a grant is to be resolved favorably to a sovereign grantor" Id. at 272 (citing Caldwell v. United States, 250 U.S. 14, 20 (1919)). Rights to use of the subsurface, not necessary for the construction and operation of the railroad, were retained by the United States when rights of way were granted by virtue of the 1875 Act.

In contrast, the cases cited by Union Pacific for the incidental use doctrine are inapplicable and distinguishable because none of those cases concerned Congressional land grants, let alone the specific Congressional land grants under the General Railroad Right-of-Way Act of 1875. As far as this Court is aware, there is no binding or persuasive authority applying the incidental use doctrine to railroad rights of way secured by virtue of the General Railroad Right-of-Way Act of 1875.

For the foregoing reasons, the Court concludes that grants to railroads by virtue of the General Railroad Right-of-Way Act of 1875 grant to the railroad property rights in the right of way only to the extent that those rights further a "railroad purpose."

### 3. Railroad Purpose

The Court has concluded that Union Pacific has the right to lease an easement for use of a pipeline under its right of way pursuant to the 19th century Congressional grants only if Union Pacific can show that the lease furthers a "railroad purpose." The Court also concludes that, as a matter of law appropriate for disposition on a motion to dismiss, Union Pacific cannot show such a "railroad purpose" in the lease of the subsurface to Kinder Morgan.

First, pursuant to the appropriate standard of review of a 12(b)(6) motion to dismiss, the Court takes as true all factual allegations contained in Union Pacific's counterclaim. Union Pacific's counterclaims do not contain a single factual allegation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
|---|---|---|---|
| Title | In Re SFPP Right-of-Way Claims | | |

about the lease of the subsurface to Kinder Morgan that would permit the court to infer that the lease furthers a railroad purpose. (See generally Union Pacific's Counterclaims ¶¶ 1–16.) In Union Pacific's opposition it complains that it was not afforded the opportunity in the California state court action to "prove the extent to which Union Pacific relies on fuel provided by the pipeline via dedicated facilities and the impact of that fuel on its operational costs and logistics." (Opp'n p. 12.) But Union Pacific does not, in fact, plead *any* facts on this topic in its counterclaims in the present case.

However, even if Union Pacific had plead these facts, the Court would still conclude that its first and second counterclaims, to the extent Union Pacific relies on the 19th century congressional grants, fail as a matter of law. The Supreme Court dealt with a similar situation in Great Northern. There, the railroad "proposed to drill three separate oil wells—the oil from the first to be sold commercially, that from the second to be refined, the more volatile parts to be sold and the residue to be used on petitioner's locomotives, and that from the third to be used in its entirety by petitioner as fuel." Great Northern, 315 U.S. at 270. In spite of these latter two wells, which in a broad sense would be beneficial for a railroad, the Supreme Court enjoined the railroad from drilling for the oil. The Supreme Court found that even if the oil is useful for the operation of a railroad, the railroad "has no right to the underlying oil" beneath its right of way, solely by virtue of its right of way. Id. at 279. See also Chicago & N.W. Ry. Co. v. Continental Oil Co., 253 F.2d 468, 473 (10th Cir. 1958) ("[the railroad] asserts the right to produce and use the oil and gas under the right of way for railroad purposes. . . . [but] we do not regard the production of oil on the right of way an appropriate incident to the operation of a railroad, even though the refined product thereof might eventually be used for diesel fuel or other related uses.") The decision in Union Pacific Railroad regarding pre-1871 Acts is in accord. The Supreme Court did not say that certain drilling was or was not permissible depending on whether or not the end-product was used in a railroad, but rather the Supreme Court held that "drilling for oil on or under" the right of way was not a railroad purpose within the meaning of the 1862 Pacific Railroad Act. Union Pacific Railroad, 353 U.S. at 114.

Leasing use of the subsurface easement of the right of way to a third party for operation of a pipeline is not so dissimilar from drilling for oil and gas that an alternate conclusion is warranted on this motion to dismiss. Instead, both actions—drilling for oil and gas, and leasing a part of the subsurface—involve generally profiting from the use of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
|---|---|---|---|
| Title | In Re SFPP Right-of-Way Claims | | |

the servient estate for which the railroads do not have the applicable property rights sufficient to grant the easement by virtue of the 19th century Congressional acts. This Court concludes that, as a matter of law pursuant to Great Northern and Union Pacific R.R., the lease of the subsurface to a third party to operate a pipeline for private gain cannot be considered a railroad purpose pursuant to either the pre-1871 Acts or the 1875 Act. See also Santa Fe Pacific Pipelines, 231 Cal. App. 4th 134, 166–170. This is so even if the pipeline, like the third oil well in Great Northern, supplies fuel for the railroad.

     For the foregoing reasons, the Court grants, in part, Plaintiffs' motion to dismiss Union Pacific's first and second counterclaims. Union Pacific, however, also alleges that it "may have also acquired small portions of its railroad right of way adjacent to the Alleged Plaintiff Parcels by private conveyance(s)." This Order does not dismiss Union Pacific's quiet title claim for those parcels of the right of way acquired by private conveyance. Union Pacific also has separate counterclaims for quiet title by virtue of adverse possession and prescriptive easement, which are not affected by this ruling. (See Union Pacific's Answer and Countercls. ¶¶ 35–49.)

     B.     Conclusion - Motion to Dismiss 12(b)(6)

     The Court dismisses Union Pacific's first counterclaim and second counterclaim, to the extent that those counterclaims rely on the 19th century Congressional acts. The Court denies the motion to the extent Union Pacific relies on purported private conveyances.

IV.     Discussion - Motion for More Definite Statement

     Simultaneously with the Plaintiffs' motion to dismiss counterclaims one and two, Plaintiffs also seek a more definite statement as to counterclaim five. Plaintiffs request the Court order Union Pacific to file a more definite statement setting forth what "improvements" and "benefits" conferred by Union Pacific allegedly unjustly enriched the Plaintiffs.

     The Court agrees that Union Pacific's unjust enrichment claim should be made to include more detail. Union Pacific need not specify precisely the exact improvements made to the Plaintiffs' property, but Union Pacific should provide the Plaintiffs with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 15-00718 JVS (DFMx)** consolidated with SACV 15-00986; SACV 15-01362 JVS; and CV 15-7492 | Date | June 7, 2016 |
| Title | In Re SFPP Right-of-Way Claims | | |

some information such that Plaintiffs can intelligibly respond to Union Pacific's counterclaims.

This is particularly the case because in other portions of Union Pacific's counterclaims, Union Pacific alleges that Kinder Morgan is the entity responsible for "constructing, operating, and maintaining a pipeline within Union Pacific's right-of-way." (Union Pacific's Counterclaim ¶ 8.) To the extent that Union Pacific alleges that the pipeline is the "improvement," Union Pacific must be much clearer as to what improvements it is responsible for and could be entitled to recover for under a theory of unjust enrichment. To the extent something other than the pipeline is the improvement, Union Pacific must actually allege the facts that would permit the Plaintiffs to understand what those improvements and benefits actually are, such that Plaintiffs can intelligibly answer Union Pacific's pleading.

V. Conclusion

For all of the foregoing reasons, Plaintiffs' motion is granted in part. Plaintiffs motion to dismiss is granted insofar as Union Pacific relies on 19th century Congressional acts as the basis for its quiet title and declaratory judgment causes of action. Plaintiffs motion is denied as to portions of Union Pacific's right of way acquired by private conveyance.

Plaintiffs' motion for a more definite statement is granted.

IT IS SO ORDERED.

0 : 0

Initials of Preparer    kjt