1  Norman E. Siegel (admitted *pro hac vice*)
   siegel@stuevesiegel.com
2  STUEVE SIEGEL HANSON LLP
3  460 Nichols Road, Suite 200
   Kansas City, Missouri 64112
4  Phone: (816) 714-7100
5  Fax: (816) 714-7101

6  Plaintiffs' Co-Lead and Liaison Counsel

7  Thomas S. Stewart (admitted *pro hac vice*)
8  stewart@swm.legal
   STEWART, WALD & MCCULLEY, LLC
9  2100 Central, Suite 22
10 Kansas City, Missouri 64108
   Phone: (816) 303-1500
11 Fax: (816) 527-8068

12 Plaintiffs' Co-Lead Counsel

13 *[See Additional Counsel on Signature Page]*

14

15              **IN THE UNITED STATES DISTRICT COURT
                FOR THE CENTRAL DISTRICT OF CALIFORNIA**
16

17 In re SFPP Right-of-Way Claims          | CASE NO. SACV 15-00718 JVS
                                           | (DFMx)
18
                                           | **PLAINTIFFS' BRIEF REGARDING
19                                         | UNION PACIFIC'S REFUSAL TO
                                           | SEARCH FOR AND PRODUCE
20                                         | RELEVANT DISCOVERY**

21                                         | **JURY TRIAL DEMANDED**

22

23

24

25

26

27

28

Pursuant to this Court's request at the June 23, 2016, informal telephone conference, Plaintiffs submit this brief explaining how the relevance of their requested discovery far outweighs any burden on Union Pacific Railroad Company ("Union Pacific") to conduct a reasonable search and produce responsive documents. Plaintiffs thus respectfully request this Court to compel Union Pacific to produce documents responsive to Plaintiffs' Requests for Production Nos. 9 and 28, or alternatively, permit Plaintiffs the opportunity to inspect responsive documents in Union Pacific's possession, custody, or control.

## I.    INTRODUCTION

Union Pacific refuses to search for key documents Plaintiffs requested, instead complaining the burden of producing "decades-old" documents outweighs any "potential benefits." But apparently this generalized and unsupported alleged burden is not so great as to prevent Union Pacific from searching for and producing hundreds of historical letters and other documents spanning from at least the early 1960s that it believes support its claims and defenses. In light of Union Pacific's self-serving, selective searching for records, Union Pacific's complaints of undue and disproportional burden should be viewed with skepticism.

Nevertheless, even taking into account Union Pacific's purported burden of complying with its discovery obligations, the relevance and importance of the requested discovery necessitates its production. Further, considering the importance of the property rights at stake in this litigation, the hundreds of millions of dollars in controversy, that Defendants are the only entities with access to the requested discovery, and that Union Pacific is a multi-billion dollar, Fortune 200 company that can easily cover the costs associated with producing documents it has maintained, the proportionality analysis strongly favors the production of documents responsive to Requests 9 and 28.

PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTES
CASE NO. SACV 15-00718 JVS (DFMx)

## II.   FACTUAL BACKGROUND

This lawsuit is a putative class action alleging that Union Pacific illegally granted easements of the subsurface under its railroad right-of-way to Kinder Morgan to construct and operate a high-pressure petroleum pipeline, and has since collected millions of dollars in rent payments that Plaintiffs—adjacent landowners—claim is owed to them.[1] *See, e.g.*, Doc. 104 at ¶¶ 50 & 68. The original arrangements providing for rent payments from Kinder Morgan's predecessors to Union Pacific's predecessors occurred when both companies fell under the same corporate umbrella, meaning much of the Defendants' corporate history is interrelated. *Id.* at ¶ 27.

Plaintiffs allege that Union Pacific recognized it did not have sufficient property interests in its subsurface to grant easements for the construction and operation of a petroleum pipeline, but nevertheless granted such easements to its sister company at the time—the present day Kinder Morgan. Doc. 104 at ¶ 60. Plaintiffs further contend that Defendants operated in such a fashion as to conceal that they were trespassing on the adjoining landowners' property. *Id.* at ¶ 67. Union Pacific denies these allegations. *See* Doc. 135 at ¶¶ 60 & 67. Moreover, Defendants assert that Plaintiffs' claims are barred by, among other affirmative defenses, limitations and laches. *See* Doc. 133 at 31 & Doc. 135 at 21. Additionally, Union Pacific filed counterclaims seeking relief that it "has all rights and interests in its railroad right-of-way" under the 19th century congressional land grants. Doc. 182 at ¶¶ 23-24. But this Court dismissed with prejudice Union

---

[1] Union Pacific has filed multiple lawsuits against the Kinder Morgan defendants seeking an increase in rent payments for the use of the subsurface beneath its right-of-way for the operation of the pipeline. The latest lawsuit is referred to herein as the "Rent Action." The Rent Action culminated in a decision from the California Court of Appeal that held Union Pacific did not have sufficient property rights to lease the subsurface beneath its right-of-way. *See Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.*, 231 Cal. App. 4th 134 (2014).

PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTES
CASE NO. SACV 15-00718 JVS (DFMx)

Pacific's counterclaims because Union Pacific does not have sufficient property rights under the congressional acts to grant easements to Kinder Morgan. Doc. 175 at 14. Importantly, although Union Pacific's current pleading contains no allegations that the pipeline serves a railroad purpose by providing the railroad diesel fuel, this Court specifically found "even if Union Pacific had plead these facts, the Court would still conclude that its first and second counterclaims, to the extent Union Pacific relies on the 19th century congressional grants, fail as a matter of law." *Id.* at 13.

On February 12, 2016, Plaintiffs served their first requests for production; two of which seek documents relating to Union Pacific's title, and knowledge thereof, as well as, the value of the pipeline:

**REQUEST NO. 9:**
All documents showing or referencing negotiations between the Pipeline Defendants and the Railroad Defendant concerning the title records, agreements, contracts, easement agreements, documents, and court decrees requested in the preceding Request.[2]

**REQUEST NO. 28:**
All communications between the Pipeline Defendants and the Railroad Defendant concerning the value of the Pipeline or the value of the Line.

Union Pacific refuses to search for documents responsive to these requests. At the informal telephone conference before this Court, Union Pacific's counsel informed the Court that any responsive documents would likely be stored in hardcopy form in two offsite storage facilities in Omaha, Nebraska or possibly at an offsite storage facility in San Francisco, California and "are not readily accessible, if at all."

---

[2] Request 8 seeks documents showing how the Pipeline Defendants (Kinder Morgan and related companies) obtained their alleged interest in the railroad right-of-way at issue here.

PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTES
CASE NO. SACV 15-00718 JVS (DFMx)

# III.   ARGUMENT AND AUTHORITIES

## A.   LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Menell v. Rialto Unified Sch. Dist.*, No. EDCV152124VAPKKX, 2016 WL 3452920, at *2 (C.D. Cal. June 20, 2016) (citing Fed. R. Civ. P. 26(b)(1)). Relevant information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The Rules Committee has made clear in its Notes on the 2015 Amendments that "[t]he present amendment restores the proportionality factors to their original place in defining the scope of discovery" and "reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses or objections." *See* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment. The Committee further explained that "[r]estoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality." *Id.* Thus, while the language of the Rule has changed, the amended rule does not actually place a greater burden on the parties with respect to the discovery process, including the obligation to consider proportionality, than did the previous version of the Rule. *Dao v. Liberty Life Assurance Co. of Boston*, No. 14-CV-04749-SI (EDL), 2016 WL 796095, at *3 (N.D. Cal. Feb. 23, 2016); *see also Robertson v. People Magazine*, 14 Civ. 6759 (PAC), 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015) (noting that

PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTES
CASE NO. SACV 15-00718 JVS (DFMx)

1  proportionality has been a limit on discovery since the 1983 amendments to Rule

2  26).

3    Significantly, the burden of proof remains on the party resisting the

4  discovery—here, Union Pacific. *See Sater v. Chrysler Grp. LLC*, No. EDCV 14-

5  00700-VAP (DTBx), 2016 WL 3136196, at *1 (C.D. Cal. Mar. 4, 2016) ("The

6  party resisting discovery has the burden to show discovery should not be permitted

7  and has the burden of clarifying, explaining, and supporting its objections.") (citing

8  *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) and *Blankenship v.*

9  *Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Union Pacific cannot carry this

10  burden considering the requested discovery relates to central, hotly contested

11  issues, the large amount in controversy across this multi-state litigation, the

12  important issues at stake, and Union Pacific's inability to show that complying

13  with the requested discovery presents an *undue* burden or that the burden

14  outweighs the benefit.

15  **B.  THE REQUESTED DISCOVERY IS PROPORTIONAL TO THE NEEDS OF THIS**
16    **MULTI-STATE CLASS ACTION LITIGATION[3]**

17    **1.  The Discovery is Highly Relevant to Plaintiffs' Claims**

18    Both disputed discovery requests seek information that goes to the heart of

19  Plaintiffs' claims. Request 9 seeks documents relating to the nature of Union

20  Pacific's subsurface property interest. Every claim and many defenses require a

21  determination as to whether the railroad has sufficient property rights to use the

22  subsurface of its right-of-way for a commercial petroleum pipeline. Further,

23  documents showing how the pipeline defendants obtained the alleged right to

24  construct a pipeline underneath the railroad's right-of-way are relevant because

---

25  [3] In addition to this lawsuit, related class action lawsuits are pending in Arizona,
26  New Mexico, and Nevada. The parties in the related cases reached an agreement
that documents produced in any of the actions would be treated as if produced in
27  all of the actions. *See* Doc. 123 at 7. This means Union Pacific's refusal to produce
relevant discovery in this lawsuit affects all four class actions.
28

1  Plaintiffs assert the pipeline defendants do not have a right to operate a pipeline on

2  their property. Likewise, Defendants' knowledge of the railroad's interest is

3  crucial, for example, to show Defendants are trespassing intentionally. Moreover,

4  any negotiations between Defendants will provide evidence regarding the value of

5  the pipeline and right-of-way, including the amount of rent payments demanded by

6  the railroad.

7      Additionally, Defendants' knowledge that the railroad had insufficient

8  property rights to grant the pipeline easements tends to show Defendants had a

9  motive to conceal their illegal use of the subsurface from the true owners of the

10  land (the adjacent landowners) which undercuts Defendants' limitations and laches

11  defenses. In fact, as to this point, there are at least three letters from the railroad's

12  in-house counsel that show the railroad knew it was giving away property rights it

13  did not own. Attached hereto as Exhibits A-C are letters indicating the railroad was

14  aware it had dubious or no legal right to construct the pipeline. These letters, which

15  are incompatible with Union Pacific's affirmative defense that its "conduct

16  conformed with all law based upon the state of knowledge at all relevant times,"

17  were not a product of discovery, but rather were found by Plaintiffs' counsel

18  combing the underlying record in the Rent Action. *See* Doc. 135 at 24-25. These

19  letters provide a reasonable basis to expect there are additional documents showing

20  Union Pacific's intent to deprive the adjoining landowners of their property

21  without compensation. Consequently, Union Pacific is simultaneously denying

22  Plaintiffs' claim that Union Pacific knew it did not have sufficient property rights

23  in its subsurface to operate, construct, and maintain the petroleum pipeline and at

24  the same time blocking the discovery to prove this claim—Union Pacific cannot

25  have it both ways. *See* Doc. 135 at ¶ 60.

26      Plaintiffs' Request 28 seeks communications between the Defendants

27  regarding the value of the pipeline and right-of-way. These documents also relate

28

to Union Pacific's property interests in the right-of-way and Plaintiffs' request for damages. With regard to damages, for example, Plaintiffs' inverse condemnation claim requires evidence of the value of property taken without just compensation. Similarly, rent payments and other benefits exchanged between Defendants relate to Plaintiffs' quasi contract claim. Perhaps most importantly, because Defendants' corporate history is linked, this request is tailored to uncover evidence that the railroad undercharged the pipeline companies for the use of the subsurface. This type of evidence is likely to be found in communications between the Defendants—not formal agreements. For example, if the railroad told the pipeline company that "these pipeline easements are worth a lot more than what you are paying," this communication would support Plaintiffs' claim for unjust enrichment damages because the pipeline companies were not paying fair market value for the use of Plaintiffs' and class members' land.

As a result, because these two requests seek highly relevant documents, the proportionality analysis strongly favors production of these responsive documents.

### 2. Union Pacific Acknowledges the Importance of the Issues at Stake

Defendants have taken Plaintiffs' and the Class's property without permission or compensation. The unjustified and uncompensated taking of vast amounts of real property across several western states is undoubtedly significant to the injured landowners and the public. Union Pacific agrees the issues raised in this lawsuit are important, as it recently told this Court the issues "raise policy concerns of broad national significance" and that an adverse decision against the railroad may impair "critical infrastructure" that "could inflict[] harm on the public" and "could have important consequences for the United States." Doc. 181-1 at 18-19; *see also* Doc. 148 (recognizing the "important issues" raised in this lawsuit). Therefore, there is no dispute the issues at stake in this lawsuit are important.

PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTES
CASE NO. SACV 15-00718 JVS (DFMx)

### 3.      The Amount in Controversy is Undisputably Large

Plaintiffs alleged they are entitled to recover actual damages, exemplary and/or punitive damages, restitution, costs, attorneys' fees, pre- and post-judgment interest, a declaration that they are the true owners of the property underneath Union Pacific's right-of-way and that Defendants cannot profit or collect rent from the land owned by Plaintiffs, quiet title in the subsurface real property in the Plaintiffs' names free and clear of any claimed interests of Defendants, and possession of their real property. While the computation of damages is premature, Plaintiffs are entitled to recover, among other things, the rent payments Union Pacific collected from Kinder Morgan for the illegal use of Plaintiffs' properties and other benefits and profits unjustly received and retained by Defendants. In this regard, Plaintiffs are entitled to their portion of the fair market value rent for the purported easements as determined by the trial court's judgment in the Rent Action—$14,080,487 annually in rent from January 1, 2004 to the present, and tens of millions of dollars in prejudgment interest. Moreover, the requested discovery is likely to uncover the monetary benefits and profits retained by Defendants, including the below market value rent that was charged to Kinder Morgan when Defendants were sister entities.

Furthermore, Kinder Morgan's expert in the underlying litigation opined that the alleged easements were valued at about $195 million on January 1, 2004. Like the wrongly retained rent payments, Plaintiffs would be entitled to recover a substantial share of this value as just compensation for the illegal taking of their land by Defendants. Union Pacific cannot dispute that this proportionality factor weighs in favor of production of the discovery sought.

### 4.      Only Defendants have Access to the Requested Discovery

The requested discovery seeks negotiations and communications between Defendants, and thus, only Defendants are likely to possess responsive documents.

Hence, this factor also supports compelling Union Pacific—who might be the only party with access to the requested information—to produce responsive documents.

### 5. Union Pacific has Sufficient Assets to Respond to the Discovery

According to its 2016 SEC filings, Union Pacific has over $50 billion in assets and takes in more than $20 billion in operating revenue annually. *See* Union Pacific Corporation 2016 Form 10-K http://www.up.com/cs/groups/public/@uprr/@investor/documents/investordocuments/pdf_up_10k_02062016.pdf at 22 (last visited July 11, 2016). Consequently, there is little question that Union Pacific has sufficient resources to comply with Plaintiffs' discovery requests, if it chooses (or is compelled) to do so. To date, Union Pacific has made absolutely no showing of any specific burden (either in terms of time or money) imposed by the requested discovery.

### 6. Any Burden and Expense is Far Outweighed By the Importance of the Discovery

Union Pacific has made no effort to search for communications between it and the pipeline defendants regarding Union Pacific's title and the value of the pipeline. Yet, Union Pacific expended the time and energy to unearth hundreds of letters and other correspondence from its archives spanning half a century to prove it is using diesel fuel from the pipeline. Union Pacific believes these records bolster its theory that leasing its subsurface for commercial profit could be a railroad purpose. *See, e.g.*, Doc. 148 at 7 and Doc. 181-1 at 13. A few examples of these letters and other documents Union Pacific dug up are attached hereto as Exhibits D-I.[4] What is good for the goose should be good for the gander, and thus,

---

[4] Counsel for Plaintiffs conferred with counsel for Union Pacific about Union Pacific withdrawing its "Confidential" designations for Exhibits D-I made pursuant to the Stipulated Protective Order. *See* Declaration of Ethan M. Lange at ¶ 4. Counsel for Union Pacific agreed and withdrew the confidential designations for Exhibits D-I. *See id.* Accordingly, no motion to file Exhibits D-I under seal is necessary.

1   Union Pacific should be required to put forth the same effort in searching its
2   records for the requested discovery as it did to recover the documents it believes
3   would support its claims and defenses.

4   Additionally, in this instance, narrowing the scope of the requests does not
5   impact Union Pacific's alleged burden. Again, Union Pacific is refusing to search
6   for responsive documents because it claims those documents are stored in
7   hardcopy format in boxes in offsite storage facilities. So, even if the scope of the
8   requests are narrowed, Union Pacific's purported burden remains unchanged, as it
9   would still be required to search through the same boxes to locate a narrower scope
10   of documents.

11   Alternatively, Plaintiffs are willing to shoulder Union Pacific's purported
12   burden by searching the boxes that may have responsive materials. In other words,
13   instead of compelling Union Pacific to search for and produce responsive
14   documents, this Court could permit Plaintiffs to inspect the documents—then
15   Union Pacific's alleged burden would be alleviated. Under this scenario, Union
16   Pacific would not waive its ability to claw back documents it asserts are privileged.
17   *See* Doc. 127; *see also* Doc. 124. Therefore, Union Pacific's burden and expense
18   objections should not be a barrier to Plaintiffs obtaining this highly relevant
19   discovery.

20   ## IV.   CONCLUSION

21   For the reasons stated herein, Plaintiffs respectfully request that this Court
22   order Union Pacific to conduct a reasonable search of its records, as required by
23   the Federal Rules, and produce documents responsive to Plaintiffs' Requests 9 and
24   28, or alternatively, to permit Plaintiffs the opportunity to inspect documents in
25   Union Pacific's possession, custody, and control.

26
27
28

DATED:  July 12, 2016                     Respectfully submitted,

/s/ Barrett J. Vahle
Norman E. Siegel                          Thomas S. Stewart
(admitted *pro hac vice*)                 (admitted *pro hac vice*)
Barrett J. Vahle (admitted *pro hac vice*) Elizabeth G. McCulley
Ethan M. Lange (admitted *pro hac vice*)  (*pro hac vice forthcoming*)
STUEVE SIEGEL HANSON LLP                   STEWART, WALD & MCCULLEY, LLC
460 Nichols Road, Suite 200               2100 Central, Suite 22
Kansas City, Missouri 64112               Kansas City, Missouri 64108
Phone: (816) 714-7100                     Phone: (816) 303-1500
Fax: (816) 714-7101                       Fax: (816) 527-8068
*siegel@stuevesiegel.com*                 *stewart@swm.legal*
*vahle@stuevesiegel.com*                  *mcculley@swm.legal*
*lange@stuevesiegel.com*

Jason S. Hartley                          Steven M. Wald
STUEVE SIEGEL HANSON LLP                   (*pro hac vice forthcoming*)
550 West C Street, Suite 1750             STEWART, WALD & MCCULLEY, LLC
San Diego, California 92101               100 North Broadway, Suite 1580
Phone: (619) 400-5822                     St. Louis, Missouri 63102
Fax: (619) 400-5832                       Phone: (314) 720-6190
*hartley@stuevesiegel.com*                Fax: (314) 899-2925
                                          *wald@swm.legal*

**Plaintiffs Interim Co-Lead Class Counsel**

John W. Cowden                            Robert Ahdoot
(admitted *pro hac vice*)                 Tina Wolfson
Angela M. Higgins                         Theodore W. Maya
(admitted *pro hac vice*)                 Bradley K. King
BAKER STERCHI COWDEN & RICE,              AHDOOT & WOLFSON, PC
L.L.C.                                    1016 Palm Avenue
2400 Pershing Road, Suite 500             West Hollywood, California 90069
Kansas City, Missouri 64108               Phone: (310) 474-9111
Phone: (816) 471-2121                     Fax: (310) 474-8585
Fax: (816) 472-0288                       *rahdoot@ahdootwolfson.com*
*cowden@bscr-law.com*                     *twolfson@ahdootwolfson.com*
*higgins@bscr-law.com*                    *tmaya@ahdootwolfson.com*
                                          *bking@ahdootwolfson.com*

PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTES
CASE NO. SACV 15-00718 JVS (DFMx)

J. Robert Sears (admitted *pro hac vice*)
BAKER STERCHI COWDEN & RICE,
L.L.C.
1010 Market Street, Suite 950
St. Louis, Missouri 63101
Phone: (314) 231-2925
Fax: (314) 231-4857
*sears@bscr-law.com*
*tinsley@bscr-law.com*

Andrew G. Giacomini
John T. Cu
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, California 94105
Phone: (415) 777-3200
Fax: (415) 541-9366
*agiacomini@hansonbridgett.com*
*jcu@hansonbridgett.com*

Francis A. Bottini, Jr.
Albert Y. Chang
Yury A. Kolesnikov
BOTTINI & BOTTINI, INC.
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Phone: (858) 914-2001
Fax: (858) 914-2002
*fbottini@bottinilaw.com*
*achang@bottinilaw.com*
*ykolesnikov@bottinilaw.com*

***Additional Plaintiffs' Counsel***

PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTES
CASE NO. SACV 15-00718 JVS (DFMx)