Norman E. Siegel (admitted *pro hac vice*)
siegel@stuevesiegel.com
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Phone: (816) 714-7100
Fax: (816) 714-7101

Plaintiffs' Co-Lead and Liaison Counsel

Thomas S. Stewart (admitted *pro hac vice*)
stewart@swm.legal
STEWART, WALD & McCULLEY, LLC
2100 Central, Suite 22
Kansas City, Missouri 64108
Phone: (816) 303-1500
Fax: (816) 527-8068

Plaintiffs' Co-Lead Counsel

*[See Additional Counsel on Signature Page]*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SFPP Right-of-Way Claims | CASE NO. SACV 15-00718 JVS (DFMx) |
| | **PLAINTIFFS' REPLY IN SUPPORT OF BRIEF REGARDING UNION PACIFIC'S REFUSAL TO SEARCH FOR AND PRODUCE RELEVANT DISCOVERY** |
| | **JURY TRIAL DEMANDED** |

Under the guise of "proportionality," Union Pacific claims essentially that it is immune from *any* discovery of its stored paper documents in *any* case. Why? Because it will take 25 years for it to review lots of disorganized boxes. That position has absolutely no support in law or common sense. Plaintiffs' requests here seek vital information in a large case that is available only from a party with vast resources and highly skilled counsel. The discovery sought is relevant and proportional to the needs of the case, and should be produced.

***First***, Union Pacific's complaint that Plaintiffs' requests potentially implicate "countless boxes of documents in various storage facilities" is not a basis for refusing discovery. Doc. 190 at 7-8. "[T]he fact that production of documents will be time consuming and expensive is not ordinarily a sufficient reason to refuse to produce material if the requested material is relevant and necessary to the discovery of admissible evidence." *Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015); *see also In re Toys "R" Us–Delaware, Inc. Litig.*, 2010 WL 4942645, *6 (C.D. Cal. July 29, 2010). Moreover, the proportionality factors—which are essentially unchanged under the new Rules—strongly weigh in favor of Union Pacific responding to the requested discovery. Fed. R. Civ. P. 26(b)(1).

Specifically, Union Pacific claims the requests are "extraordinarily broad." Doc. 190 at 6 & 8. Union Pacific contends Request 9 "would include documents concerning railroad crossings, engineering projects, pipeline relocations, the clean-up of environmental incidents, and the transportation of fuel." *Id.* at 7. Interestingly, Union Pacific was able to find the decades' old "transportation of fuel" documents that purportedly support its claims and defenses, while refusing to search for documents responsive to Plaintiffs' requests. *See, e.g.*, Docs. 189-5 through 189-10. In any event, Plaintiffs have previously offered to narrow the scope of Request 9, and formally do so now, to seek only responsive documents relating to the 1955, 1956, and 1983 master agreements and the 1994 AREA agreement. But according to Union

Pacific, it does not matter how narrow a request is; instead this is only a matter of "proportionality" and the railroad's version of proportionality relieves it from any duty to search for documents (which admittedly it has not done with respect to Requests 9 and 28).

*Second*, Union Pacific cannot shift the responsibility for its dysfunctional storage of documents onto Plaintiffs. Union Pacific postures that "[i]t would take a Herculean effort to slog through thousands of boxes" due to the "inaccurate or incomplete descriptions" of the boxes. Doc. 190 at 6 & 8. But the "defendant may not excuse itself from compliance with Rule 34 by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition. To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules." *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) (internal citation omitted) ("The defendant seeks to absolve itself of this responsibility by alleging the herculean effort which would be necessary to locate the documents"). Thus, Union Pacific's disorganized storage of its records cannot be a basis to avoid searching for and producing responsive documents.[1]

---

[1] Courts in the Ninth Circuit agree that a party cannot evade its discovery obligations based on its storage practices. *See, e.g.*, *Edwards v. Ford Motor Co.*, 2012 WL 553383, at *4 (S.D. Cal. Feb. 17, 2012) ("Defendant cannot escape its obligation to provide relevant documents because it has chosen to store those documents in a way that makes it difficult for Defendant to search for them"); *U.S. ex rel. Guardiola v. Renown Health*, 2015 WL 5056726, at *5 (D. Nev. Aug. 25, 2015) (noting that documents would not be reasonably inaccessible if a company "stored randomly hundreds of thousands of documents, no differently than if [it] had tossed files into banker's boxes without labels or organization [and] . . . then shipped those boxes to the warehouse for haphazard storage . . . [so that the] company employees themselves would have to go through each box, one at a time, to retrieve anything for discovery or businesses purposes."); *Pham v. Wal-Mart Stores, Inc.*, 2011 WL 5508832, at *3 (D.

1    The result is the same even if the disarray is the result of a merger where one
2    entity had "no control over the organization or maintenance" of the other entity's
3    documents. Doc. 190 at 6. Indeed, in *Brooks v. Macy's, Inc.*, "after several mergers,"
4    defendant was left with mountains of documents in a warehouse that were "not well
5    organized," "in shrink wrapped boxes," and "not labeled with precision." 2011 WL
6    1793345, at *1 & *4 (S.D.N.Y. May 6, 2011). The court stated that it was
7    "sympathetic to defendant's plight," however, "the burden that results from
8    disorganized record-keeping does not excuse a party from producing relevant
9    documents." *Id.* at *4. Ultimately, the court held "to the extent defendant is objecting
10   to producing document[s] on the ground that it would be unduly burdensome to
11   review the documents currently stored in its warehouse, its objection is overruled." *Id.*
12   Likewise Union Pacific cannot use its past merger as a means to escape discovery.

13       Turning to the real issue, a party refusing to search for responsive documents
14   has a "heavy burden" to justify its refusal. *Mancini v. Ins. Corp. of N.Y.*, 2009
15   WL1765295, *1 (S.D. Cal. June 18, 2009) (quoting *Blankenship v. Hearst Corp.*, 519
16   F.2d 418, 429 (9th Cir. 1975)). As a threshold matter, Union Pacific has a "duty under
17   Rule 34 to conduct a diligent search and reasonable inquiry in effort to obtain
18   responsive documents." *See Kaur v. Alameida*, 2007 WL 1449723, at *2 (E.D. Cal.
19   May 15, 2007). Additionally, revised Rule 34(b)(2)(C) provides, "[a]n objection must
20   state whether any responsive materials are being withheld on the basis of that
21   objection." Fed. R. Civ. P. 34(b)(2)(C). Instead, Union Pacific lodges boilerplate
22   objections, including about proportionality, and fails to state whether it is withholding
23   responsive documents. *See* Fed. R. Civ. P. 26 (2015 Advisory Comm. Notes) ("Nor is

24   _____

25   Nev. Nov. 9, 2011) (stating that "the fact that a responding party maintains records in
26   different locations, utilizes a filing system that does not directly correspond to the
     subjects set forth in Plaintiffs' interrogatory, or that responsive documents might be
27   voluminous does not suffice to sustain a claim of undue burden") (quoting *Thomas v.*
28   *Cate*, 715 F. Supp. 2d 1012, 1033 (E.D. Cal. 2010)).

1  the change intended to permit the opposing party to refuse discovery simply by
2  making a boilerplate objection that it is not proportional").

3      Instead of justification for its refusal to search for documents, Union Pacific
4  looks to more excuses, such as imploring the Court to require Plaintiffs to first review
5  the yet-to-be-produced Rent Action materials that may or may not contain responsive
6  documents.[2] *See* Doc. 190 at 5 & 10. But waiting for Union Pacific to produce
7  documents (that could have easily been provided months ago) prejudices Plaintiffs
8  because significant deadlines are rapidly approaching, including the designation of
9  Plaintiffs' class certification expert witnesses next month in the Arizona lawsuit, with
10 corresponding disclosures and class certification briefing in this Court shortly
11 thereafter.

12     Additionally, it is true that Union Pacific has agreed to conduct a reasonable
13 search for and produce responsive documents for many requests for production.
14 However, Union Pacific's current position—a blanket refusal to search for any
15 hardcopy documents in storage—calls into question whether it is making a reasonable
16 search at all (other than the Rent Action production, which it cannot say is complete).

17     Indeed, even the cases relied on by Union Pacific support Plaintiffs' request to
18 compel production. Doc. 190 at 7-8. In *Cabasug v. Crane Co.*, the defendant searched
19 its "documents extensively" and plaintiffs' counsel (and other plaintiffs' counsel) had

---

20 [2] Curiously, Union Pacific is arguing vehemently to this Court that the railroad's title,
21 except in a few narrow instances, was not at issue in the Rent Action. Doc. 148 at 16
22 (arguing the trial court "'*decided not to decide* what the 'property of the railroad' was'
23 and instead assumed that Union Pacific had an interest sufficient to collect rent on
24 subsurface easements.") (emphasis in original). If title was not raised in the Rent
Action, as Union Pacific claims, then Union Pacific's speculation that documents
25 relating to its title "may very well come from . . . the ongoing Rent [Action]
26 production" is entitled to little to no weight. *See, e.g.*, *Sprint Commc'ns Co., L.P. v.*
*Comcast Cable Commc'ns, LLC*, 2014 WL 1794552, at *4 (D. Kan. May 6, 2014)
27 (observing that "Sprint provides no support or foundation for its position that its
proposed discovery plan will capture most, if not all, of the documents in its
28 possession responsive to defendants' document requests").

PLAINTIFFS' REPLY BRIEF REGARDING DISCOVERY DISPUTES
CASE NO. SACV 15-00718 JVS (DFMx)

1  already conducted a review of the documents. *See* 2013 WL 4679130, at *2-3 (D.

2  Haw. Aug. 30, 2013). Unlike in *Cabasug*, Union Pacific has neither searched its

3  documents nor permitted Plaintiffs the option to search its records. Furthermore,

4  Union Pacific's citation to *Miller v. York Risk Servs. Group* is strange considering the

5  *Miller* court noted the defendant *did not attempt to search for responsive documents*

6  and then ordered the defendant to conduct a search. 2015 WL 3490031, at *4 (D. Ariz.

7  June 3, 2015). Like the defendant in *Miller*, Union Pacific has not attempted to search

8  for responsive documents, and should now be compelled to conduct a search.

9        Instead of searching for responsive documents, Union Pacific is searching for a

10  free ride, by requesting cost-sharing.[3] But "a responding party ordinarily bears the

11  costs of responding." Fed. R. Civ. P. 26 (2015 Advisory Comm. Notes). More

12  importantly, cost-sharing is not proper in light of Plaintiffs' offer to inspect the

13  documents at Union Pacific's off-site storage facilities. *See Martinelli v. Petland, Inc.*,

14  2010 WL 3947526, at *6 & *10 (D. Kan. Oct. 7, 2010) (noting third-party "did not

15  establish an undue burden or expense in light of plaintiffs' offer to inspect and copy

16  the requested documents"). Union Pacific does not come close to meeting its high

17  burden to prove that cost-shifting is justified. *See, e.g.*, *Nehad v. Browder*, 2016 WL

18  3769807, at *3 (S.D. Cal. July 15, 2016) (stating that "cost-shifting should only be

19  considered when electronic discovery imposes an 'undue burden or expense' on the

20  responding party" and questioning whether a cost-shifting analysis even applies "to

21  documents in binders, DVDs and compact discs").

22  ───────────────

[3] Union Pacific asserts it would take *more than 24 years* for a person working full 8-
23  hour days, including holidays and weekends, to retrieve and review the identified

24  files. Doc. 190-1 at ¶ 16. This inflated figure strains credulity. *See, e.g.*, *Pham*, 2011
WL 5508832, at *5 (D. Nev. Nov. 9, 2011) ("The actual time required to locate and

25  produce relevant documents will probably not be as great as Defendants' counsel

26  claims."); *Cate*, 715 F. Supp. 2d at 1034 n. 13 ("The Court questions the credibility of
Remy's estimation, because as discussed below in response to the Governor's

27  objection to Interrogatory No. 9, portions of Remy's declaration exaggerate the

28  amount of time necessary to comply with Petitioner's discovery requests.").

DATED:  July 19, 2016                    Respectfully submitted,

/s/ Barrett J. Vahle
Norman E. Siegel                         Thomas S. Stewart
(admitted *pro hac vice*)                (admitted *pro hac vice*)
Barrett J. Vahle (admitted *pro hac vice*)   Elizabeth G. McCulley
Ethan M. Lange (admitted *pro hac vice*)     (admitted *pro hac vice*)
STUEVE SIEGEL HANSON LLP                  STEWART, WALD & MCCULLEY, LLC
460 Nichols Road, Suite 200              2100 Central, Suite 22
Kansas City, Missouri 64112              Kansas City, Missouri 64108
Phone: (816) 714-7100                    Phone: (816) 303-1500
Fax: (816) 714-7101                      Fax: (816) 527-8068
*siegel@stuevesiegel.com*                *stewart@swm.legal*
*vahle@stuevesiegel.com*                 *mcculley@swm.legal*
*lange@stuevesiegel.com*

                                         Steven M. Wald
Jason S. Hartley                         (admitted *pro hac vice*)
STUEVE SIEGEL HANSON LLP                  STEWART, WALD & MCCULLEY, LLC
550 West C Street, Suite 1750            100 North Broadway, Suite 1580
San Diego, California 92101              St. Louis, Missouri 63102
Phone: (619) 400-5822                    Phone: (314) 720-6190
Fax: (619) 400-5832                      Fax: (314) 899-2925
*hartley@stuevesiegel.com*               *wald@swm.legal*

### *Plaintiffs Interim Co-Lead Class Counsel*

John W. Cowden                           Robert Ahdoot
(admitted *pro hac vice*)                Tina Wolfson
Angela M. Higgins                        Theodore W. Maya
(admitted *pro hac vice*)                Bradley K. King
BAKER STERCHI COWDEN & RICE,             AHDOOT & WOLFSON, PC
L.L.C.                                   1016 Palm Avenue
2400 Pershing Road, Suite 500            West Hollywood, California 90069
Kansas City, Missouri 64108             Phone: (310) 474-9111
Phone: (816) 471-2121                    Fax: (310) 474-8585
Fax: (816) 472-0288                      *rahdoot@ahdootwolfson.com*
*cowden@bscr-law.com*                    *twolfson@ahdootwolfson.com*
*higgins@bscr-law.com*                   *tmaya@ahdootwolfson.com*
                                         *bking@ahdootwolfson.com*

PLAINTIFFS' REPLY BRIEF REGARDING DISCOVERY DISPUTES
CASE NO. SACV 15-00718 JVS (DFMx)

J. Robert Sears (admitted *pro hac vice*)
BAKER STERCHI COWDEN & RICE,
L.L.C.
1010 Market Street, Suite 950
St. Louis, Missouri 63101
Phone: (314) 231-2925
Fax: (314) 231-4857
*sears@bscr-law.com*
*tinsley@bscr-law.com*

Andrew G. Giacomini
John T. Cu
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, California 94105
Phone: (415) 777-3200
Fax: (415) 541-9366
*agiacomini@hansonbridgett.com*
*jcu@hansonbridgett.com*

Francis A. Bottini, Jr.
Albert Y. Chang
Yury A. Kolesnikov
BOTTINI & BOTTINI, INC.
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Phone: (858) 914-2001
Fax: (858) 914-2002
*fbottini@bottinilaw.com*
*achang@bottinilaw.com*
*ykolesnikov@bottinilaw.com*

***Additional Plaintiffs' Counsel***

PLAINTIFFS' REPLY BRIEF REGARDING DISCOVERY DISPUTES
CASE NO. SACV 15-00718 JVS (DFMx)